KENNETH J. FALCON, ESQ.
MOISH E. PELTZ, ESQ.
STEVEN C. BERLOWITZ, ESQ.
FALCON RAPPAPORT & BERKMAN PLLC
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
Telephone: (516) 599-0888
Facsimile: (516) 599-0889
Counsel for Plaintiff FREE HOLDINGS INC.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
FREE HOLDINGS INC.,

        Plaintiff,

    - against –

KEVIN McCOY, SOTHEBY'S INC., NAMELESS
CORPORATION, AND ALEX AMSEL
A/K/A SILLYTUNA

        Defendants.
---------------------------------------------------------X

**COMPLAINT**

Plaintiff Free Holdings Inc., by its attorneys Falcon Rappaport & Berkman LLC, for its Complaint alleges:

**NATURE OF THE CASE**

1. Non-fungible token ("NFT") technologies promise "indelible provenance and ownership of digital images."[1] While the blockchain records are self-evident, such records cannot defend themselves in the face of concerted efforts by a formative artist and auction house to establish a false narrative concerning what is presumed to be the first NFT. This action seeks

---

[1] https://www.mccoyspace.com/project/125/

to correct that record, and in doing so establish Defendants' slander of title, deceptive and unlawful trade practices, and commercial disparagement which arises out of their false and misleading marketing, promotion, advertisement, and sale of that certain NFT titled "Quantum" which is credited as being the world's first known NFT.

2. In 2014, artist Kevin McCoy ("McCoy") created the Quantum NFT on the Namecoin blockchain.

3. McCoy subsequently let the record for the Namecoin blockchain containing Quantum expire. This left the Quantum Namecoin record free to claim, and a cryptocurrency wallet controlled by Free Holdings, Inc. ("Free Holdings") did so on or around April 5, 2021.

4. In 2021, McCoy, through Sotheby's Inc. ("Sotheby's) began marketing and promoting the sale of an Ethereum-based NFT called "Quantum," which they falsely claimed was "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[2]

5. In a condition report, produced by nameless Corporation ("nameless"), Sotheby's and McCoy further stated that Quantum on the Namecoin blockchain had been "burned" or otherwise removed from the Namecoin blockchain. This is false. A Namecoin blockchain record cannot be "removed," and the blockchain record for Quantum has not been "removed" or "burned." Rather, the Namecoin blockchain record for Quantum remains active and under the control of Free Holdings.

6. Upon learning of the auction, Free Holdings repeatedly contacted McCoy to inform him that Free Holdings owned the Quantum Namecoin record, and that the marketing and

---

[2] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

promotions were false and misleading. Despite Free Holdings' diligent communication attempts, McCoy ignored Free Holdings. Sotheby's and McCoy continued to market and promote the auction, using Quantum to help draw bidders interested in purchasing the first NFT ever minted. Indeed, in using false and misleading marketing and promotion, McCoy, through Sotheby's, successful sold the newly re-minted Ethereum-based Quantum for a reported sum of $1,472,000.

7.     As set forth below, Sotheby's and McCoy unjustly profited from the false and misleading marketing of their Ethereum-based NFT, which they deceitfully and intentionally promoted as having previously been "burned" or "removed" from the Namecoin blockchain. Despite notice to McCoy that their representations were false, Sotheby's and McCoy improperly orchestrated the marketing, promotion, and sale of their NFT, all while causing damage to Free Holdings, the true owner of the original Quantum NFT.

## THE PARTIES

8.     Plaintiff Free Holdings Inc. is a Canadian corporation with its principal place of business in the Province of Ontario, Canada.

9.     Upon information and belief, defendant Kevin McCoy is an individual residing in New York.

10.    Upon information and belief, Sotheby's Inc. is New York corporation with its principal place of business in New York.

11.    Upon Information and belief, nameless Corporation is a Wyoming corporation with its principal place of business in Colorado.

12.     Upon information and belief, defendant Alex Amsel, also known as SillyTuna (for example, via Twitter at https://twitter.com/sillytuna) is an individual residing in London, England.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1132 because there is complete diversity of citizenship between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and cost.

14.     Venue is proper within this district pursuant to 28 U.S.C. § 1391 because (i) at least one of the Defendants resides in this judicial district; and (ii) a substantial part of the acts and/or omissions giving rise to these claims occurred within this judicial district.

## THE FACTS

**The Quantum NFT**

15.     A blockchain is a decentralized digital public ledger maintained on computer systems and consisting of sequential records called 'blocks.' Blockchains are known for their roles in cryptocurrency systems, and are valued for their ability to maintain secure and decentralized records of transactions. NFTs are pieces of digital content linked to the blockchain. Whereas cryptocurrencies are fungible, NFTs are non-fungible, which means that each NFT is unique. Blockchain's record keeping and authentication technology serve to provide public certificates of authenticity or proof of ownership of NFTs. NFTs can take the form of GIFS, tweets, images of physical objects, and more.

16. The non-fungible nature of NFTs, combined with the authentication power of the blockchain, have given rise to a burgeoning NFT art and collectibles market. NFT sales reached record numbers in 2021, approaching $25 billion in sales.[3]

17. The Namecoin blockchain was originally created in 2011 as a "fork" of the Bitcoin blockchain. Unlike the Bitcoin blockchain, each Namecoin record can contain values in its metadata, which allows Namecoin records to be used like domain names, or to contain other values such as metadata which allows them to act as NFTs.

18. In 2014, an NFT titled "Quantum" was originally created by the artist Kevin McCoy on the Namecoin blockchain, and is generally considered the first NFT ever created.

19. The Quantum blockchain record contain the following entry in its on-chain metadata description:

> I assert title to the file at the URL http://static.mccoyspace.com/gifs/quantum.gif with the creator's public announcement of it's publishing at the URL https://twitter.com/mccoyspace/status/462320426719641600 The file whose SHA256 hash is d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a is taken to be the file in question. **Title transfers to whoever controls this blockchain entry**.[4]

(emphasis added).

20. The Quantum blockchain record was the first known blockchain record to explicitly link to an external work of art (namely the quantum.gif file hosted on mccoyspace.com), which definitionally means that the Quantum blockchain record is presumably the first known NFT.

---

[3] https://www.reuters.com/markets/europe/nft-sales-hit-25-billion-2021-growth-shows-signs-slowing-2022-01-10/
[4] https://namebrow.se/name/d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a/

21. The Namecoin blockchain requires a user who controls a Namecoin blockchain database record to periodically update their records every 35,999 blocks. This period amounts to approximately 200-250 days.

22. If a user fails to update their records, control of that particular block record expires and can be claimed by another user.

23. On or around January 2015, McCoy failed to update Quantum's Namecoin blockchain record, rendering the record free to claim.

24. On or around April 5, 2021, Free Holdings claimed the Quantum blockchain record on Namecoin.

25. The title to the Namecoin Quantum NFT is currently held by Free Holdings.

**FREE HOLDINGS ATTEMPTS TO CONTACT McCOY**

26. EarlyNFT is a pseudonym for Free Holding's sole member. The Twitter handle @EarlyNFT is operated by Free Holdings.

27. Beginning around April 2021, Free Holdings began to repeatedly contact McCoy to discuss Quantum, but received no communications in response.

28. Free Holdings first attempted to contact McCoy regarding Quantum on April 6, 2021 using the Twitter handle @EarlyNFT:



29. Free Holdings again reached out to McCoy on Twitter on April 12, 2021 in order to discuss Quantum:



30. Free Holdings made two further attempts to contact McCoy on April 30, 2021:



31. Four days later, on May 3, 2021, Free Holdings again wrote to McCoy:



32. McCoy never responded to Free Holdings' Twitter messages.

**The Sotheby's Auction**

33. In or around May 2021, Sotheby's began marketing an art auction titled "Natively Digital: A Curated NFT Sale" scheduled for a June 2021 auction.

34. The purpose of "Natively Digital: A Curated NFT Sale" was to market for sale "some of the earliest" NFTs. Sotheby's included "Quantum by Kevin McCoy" as part of its auction, and positioned and marketed the work as one of the earliest NFTs ever created.

35. On May 5, 2021, Free Holdings learned that Sotheby's was holding an auction that included Quantum.

36. On May 6, 2021, Free Holdings made its sixth attempt to contact McCoy about Quantum:

8



37.  McCoy did not respond to Free Holdings' May 6, 2021 Twitter message.

38.  Leading up to and throughout the course of the auction, Sotheby's, McCoy, and nameless materially misrepresented the ownership status of the Quantum NFT, as well as other factual statements concerning its condition.

39.  The Sotheby's "condition report" on Quantum, written by nameless™, states that "this specific Namecoin entry was removed from the system after not being renewed, and was effectively burned from the chain."[5]  This statement is false.

40.  A Namecoin blockchain record cannot be "removed," and the blockchain record for Quantum has not been "removed" or "burned."

41.  The blockchain record for Quantum remains active and under the control of Free Holdings.

42.  The name record for Quantum's Namecoin blockchain record states "[t]his original NFT, entitled 'Quantum' by Kevin McCoy and minted on May 2, 2014, is currently held by the person who controls the Twitter handle @EarlyNFT."[6]

43.  As part of its auction, Sotheby's included a "new version of Quantum," minted by McCoy on the Ethereum blockchain.

---

[5] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum
[6] https://namebrow.se/name/d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a/

44. Despite notice that Free Holdings controlled the Namecoin blockchain record containing Quantum, Sotheby's and McCoy continued to market the original Quantum NFT as having been "burned."

45. Sotheby's and McCoy falsely represented that the NFT it was selling was the same one claimed by Free Holdings in 2014. Specifically, Sotheby's described the NFT as "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[7] This is a false and misleading statement because Quantum is still extant on the Namecoin blockchain and requires no "preservation."

46. On June 1, 2021, Free Holdings made the first of six separate attempts to contact McCoy by email, alerting McCoy that Free Holdings owned the Namecoin Quantum record and asking to discuss the NFT.

47. Sotheby's began its auction on June 3, 2021.

48. On June 7, 2021, Free Holdings updated the Namecoin blockchain record for Quantum, and included the message that "[a]n authorized *print* of this original NFT, entitled 'Quantum' by Kevin McCoy, is currently being auctioned off by Sotheby's. Good luck to all the bidders." (emphasis added).

49. Sotheby's ended its auction on June 10, 2021.

50. On June 17, 2021, Sotheby's Senior Vice President, Caroline Moustakis ("Moustakis"), spoke with Free Holdings about Quantum on a phone call. During that call, Free Holdings told Moustakis that the description that Sotheby's posted of its Ethereum-based Quantum NFT was inaccurate and misleading because the Namecoin record had not been

---

[7] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

"burned," but was still active and controlled by Free Holdings. Free Holdings requested that Sotheby's make public statements to correct the record, including making a statement that the Quantum Namecoin record remains active and in private hands, was not listed for sale as part of Sotheby's auction, and that the item Sotheby's auctioned was in fact an authorized print of the original Quantum token.

51. Free Holdings sent an email to Moustakis on June 18, 2021 to memorialize their phone conversation and reiterate his request that Sotheby's correct the public record concerning Free Holdings' ownership of Quantum.

52. Neither Moustakis, nor any other Sotheby's representative, responded to Free Holdings' June 18, 2021 email.

53. Sotheby's never complied with Free Holdings' request to issue a statement to correct the public record concerning Quantum.

54. On August 23, 2021, McCoy, through Sotheby's, sold the newly re-minted Ethereum-based Quantum to Twitter-user @Sillytuna for a reported sum of $1,472,000.

55. @SillyTuna is the Twitter account used and controlled by Alex Amsel.

56. On August 23, 2021, Amsel tweeted that he had purchased Quantum, writing "First ever crypto art nft – Quantum has arrived chez Sillytuna. Take that VISA!":



57. The Plaintiff's Quantum NFT has significant value due to its status as the "first" NFT and such value is being significantly diminished by the false and inaccurate statements made by Defendants.

## FIRST CAUSE OF ACTION
### Slander of Title Against Sotheby's, McCoy, nameless™, and Amsel

58. Free Holdings repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

59. Nameless™ wrote a condition report on the Quantum NFT, which it provided to Sotheby's to assist with the marketing and promotion of Sotheby's auction, including the marketing and promotion of Quantum.

60. The nameless™ condition report falsely describes Quantum as having been "removed from the [Namecoin blockchain] system after not being renewed, and was effectively burned from the chain."[8]

---

[8] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

61. Sotheby's, McCoy, and nameless™ have falsely stated that the Namecoin Quantum NFT was destroyed or burned, or have falsely or misleadingly stated that the Ethereum-based Quantum NFT they were offering for sale was "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[9]

62. Sotheby's, McCoy, and nameless™ repeatedly and falsely marketed the original Quantum NFT on the Namecoin blockchain as having been "burned."

63. The Quantum NFT on the Namecoin blockchain has not been "burned," and is currently controlled and owned by Free Holdings.

64. Free Holdings notified McCoy that Free Holdings, and not McCoy, controlled the Quantum NFT on the Namecoin blockchain, and that the Quantum NFT on the Namecoin blockchain had not been "burned."

65. McCoy ignored Free Holdings' communications, and proceeded to market the sale of the NFT as one of the first known NFTs.

66. Amsel issued a false and misleading public statement that he purchased Quantum, the first ever NFT, tweeting: "First ever crypto art nft – Quantum has arrived chez Sillytuna. Take that VISA!"

67. Sotheby's, McCoy, nameless™, and Amsel's statements were intended to establish the validity of the NFT they were marketing, selling, and/or purchasing as one of the first NFTs ever created, although the NFT sold at auction was not created until 2021.

---

[9] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

68.     Sotheby's, McCoy, nameless™, and Amsel's statements were intended to cast doubt on to the validity of the claim that Free Holdings controlled and had title to the original Quantum NFT on the Namecoin blockchain.

69.     Because McCoy was told by Free Holdings that Free Holdings controlled the Namecoin blockchain record containing Quantum, Sotheby's and McCoy's statements concerning the sale of their NFT was reasonably calculated to cause harm to Free Holdings.

70.     Nameless™'s statement in its condition report that the Namecoin blockchain record containing Quantum had been "burned from the chain" was also reasonably calculated to cause harm to any person or entity claiming to hold title to the Namecoin blockchain record on which Quantum resides, including Free Holdings.

71.     Amsel's statement that he purchased the "first ever crypto art nft" was reasonably calculated to cause harm to any person or entity claiming to hold title to the Namecoin blockchain record on which Quantum resides, including Free Holdings.

72.     Sotheby's and McCoy reportedly sold their NFT for $1,472,000 to Amsel.

73.     The value of the Quantum NFT owned by Free Holdings has been significantly damaged as result of all Defendants' statements and conduct.

### SECOND CAUSE OF ACTION
**Deceptive and Unlawful Trade Practices GBL § 349 Against Sotheby's, McCoy, and nameless™**

74.     Free Holdings repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

75.     Sotheby's, McCoy, and nameless™ engaged in consumer-oriented conduct by marketing for sale and selling their NFT.

76. Nameless™ wrote a condition report on the Quantum NFT, which it provided to Sotheby's to assist with the marketing and promotion of Sotheby's auction, including the marketing and promotion of Quantum.

77. The nameless™ condition report falsely describes Quantum as having been "removed from the [Namecoin blockchain] system after not being renewed, and was effectively burned from the chain."[10]

78. Sotheby's, McCoy, and nameless™ have falsely stated that the Namecoin Quantum NFT was destroyed or burned, or have falsely or misleadingly stated that the new Ethereum-based Quantum NFT they were offering for sale was "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[11]

79. Sotheby's, McCoy, and nameless™ repeatedly and falsely marketed the original Quantum NFT as having been "burned."

80. Sotheby's and McCoy's statements concerning their NFT was materially misleading. The NFT they were marketing for sale had not been "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and [then] *preserved* on a token minted on May 28, 2021 by the artist." (emphasis added).

81. The Quantum NFT on the Namecoin blockchain has not been "burned," and is currently controlled and owned by Free Holdings.

---

[10] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum
[11] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

82. Free Holdings notified Sotheby's and McCoy that Free Holdings, and not McCoy, controlled the Quantum NFT on the Namecoin blockchain, and that the original Quantum had not been "burned."

83. Sotheby's and McCoy ignored Free Holdings communications, and proceeded to market the sale of Quantum as one of the first known NFTs, and have otherwise not corrected their .

84. Sotheby's, McCoy, and nameless™'s statements were intended to establish the validity of the NFT they were selling as one of the first NFTs ever created.

85. Sotheby's and McCoy sold their NFT for $1,472,000.

86. If the defendant acted willfully or knowingly, punitive damages may be awarded. Treble damages are available where a defendant's actions were intentionally fraudulent.

87. The value of the Quantum NFT owned by Free Holdings has been significantly damaged as result of all Defendants' statements and conduct.

## THIRD CAUSE OF ACTION
**Commercial Disparagement Against Sotheby's, McCoy, nameless™, and Amsel**

88. Free Holdings repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

89. Sotheby's, McCoy, and nameless™ have falsely stated that the Namecoin Quantum NFT was destroyed or burned, or have falsely or misleadingly stated that the new Ethereum-based Quantum NFT they were offering for sale was "[o]riginally minted on May 3,

2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[12]

90. Sotheby's, McCoy, and nameless™ repeatedly and falsely marketed the original Quantum NFT as having been "burned."

91. Sotheby's, McCoy, and nameless™'s statements concerning the Ethereum-based NFT was materially misleading. The NFT they were marketing for sale had not been "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and [then] preserved on a token minted on May 28, 2021 by the artist" and had not been "burned."

92. Free Holdings notified McCoy that Free Holdings, and not McCoy, controlled the Quantum NFT on the Namecoin blockchain, and that the original Quantum had not been "burned."

93. McCoy ignored Free Holdings communications, and proceeded to market the sale of Quantum as one of the first known NFTs.

94. Because Free Holdings notified McCoy that Free Holdings was the true owner of Quantum on the Namecoin blockchain, Sotheby's and McCoy made their statements concerning their NFT knowing that they were untrue.

95. Amsel issued a public statement that he purchased Quantum, the first ever NFT, tweeting: "First ever crypto art nft – Quantum has arrived chez Sillytuna.  Take that VISA!"

96. Sotheby's, McCoy, nameless™, and Amsel's statements were intended to establish the validity of the NFT they were selling and/or purchasing as one of the first NFTs ever created.

---

[12] https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum

97. Sotheby's, McCoy, nameless™, and Amsel's statements were also intended to delegitimize other persons or entities claiming to control or own the Quantum NFT on the Namecoin blockchain, including Free Holdings.

98. Sotheby's, McCoy, nameless™, and Amsel's statements were made with the intent, or reasonable belief, that they would cause financial loss to other persons or entities claiming to control or own the Quantum NFT on the Namecoin blockchain, including Free Holdings.

99. Sotheby's and McCoy sold their NFT to Amsel for $1,472,000.

100. The value of the Quantum NFT owned by Free Holdings has been significantly damaged as result of all Defendants' statements and conduct.

101. Sotheby's, McCoy, nameless, and Amsel's statements deprived Free Holdings of the legitimacy of owning one of the first NFTs, thereby precluding any future sale of the same for its true market price and causing Free Holdings to suffer financial loss and damages.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a) on the Count I, damages against Defendants in an amount to be determined at trial;

(b) on the Count II, damages against Defendants in an amount to be determined at trial; including damages provided under GBL § 349, including treble and or punitive damages, and for plaintiff's reasonable attorney's fees;

(c) on the Count III, damages against Defendants in an amount to be determined at trial;

(d) On Counts I, II, and III, a preliminary and permanent injunction enjoining and restraining Defendants and their respective officers, directors, agents, servants, employees, and attorneys, as well as those in active concert and participation with them from advertising, marketing, or otherwise promoting the sale of the New Quantum NFT as the Original Quantum NFT;

(e) On Counts I, II and III, injunctive relief requiring Defendants to engage in corrective advertising, including but not limited to making public statements and creating corrective advertising in major industry publications, and direct communication with any persons who are known to have purchased the Quantum NFT, or sold or bid on its sale;

(f) all costs, disbursements and attorney's fees incurred in connection with this action; and

(g) such other and further relief under law or equity as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Dated: February 1, 2022

                                                   Respectfully submitted,

                                                   **FALCON RAPPAPORT & BERKMAN PLLC**
                                                   *Attorneys for Plaintiff*

                                                   By: /s/Moish Peltz
                                                   Moish E. Peltz, Esq. (S.D.N.Y. # MP3333)
                                                   Kenneth J. Falcon, Esq. (S.D.N.Y. # KF1204)
                                                   Steven C. Berlowitz, Esq.
                                                   265 Sunrise Highway, Suite 50
                                                   Rockville Centre, NY 11570
                                                   Telephone: (516) 599-0888
                                                   mpeltz@frblaw.com
                                                   kfalcon@frblaw.com
                                                   sberlowitz@frblaw.com