UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FREE HOLDINGS INC.,

                *Plaintiff*,

      -against-

KEVIN McCOY and SOTHEBY'S INC.,

                *Defendants*.

ECF CASE

Case No.: 1:22-cv-00881-JLC

 

**DEFENDANT SOTHEBY'S INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Evan M. Rothstein (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street | Suite 3100
Denver, CO 80202-2569
T: +1 303.863.2308
F: +1 303.863.1000
Evan.Rothstein@arnoldporter.com

Theresa M. House
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: +1 212.836.8000
F: +1 212.836.8689
Theresa.House@arnoldporter.com

*Attorneys for Defendant Sotheby's Inc.*

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................ 1

Factual Background .................................................................................... 3

   The Parties ............................................................................................ 3

   The Content of the Challenged Statements ........................................... 3

   The Immediate Context of the Challenged Statements ......................... 5

   The Broader Context of the Challenged Statements ............................. 8

Procedural History ..................................................................................... 9

Argument .................................................................................................. 10

**I.**    **PLAINTIFF'S CLAIMS FOR SLANDER OF TITLE AND PRODUCT
DISPARAGEMENT FAIL BECAUSE THE CHALLENGED STATEMENTS ARE
PROTECTED OPINION; ALTERNATIVELY, SUBSTANTIALLY TRUE; AND
PUBLISHED WITHOUT MALICE.** .......................................................... 10

     **A.**    **Both Claims Fail Because the Challenged Statements
Are Protected Opinion** ............................................................. 11

     **B.**    **The Challenged Statements Are Substantially True** ............. 17

     **C.**    **The FAC Fails to Allege That Sotheby's Acted With Actual Malice** .... 18

**II.**    **PLAINTIFF'S UNJUST ENRICHMENT CLAIM ALSO FAILS AGAINST
SOTHEBY'S BECAUSE NO BENEFIT FLOWED DIRECTLY FROM PLAINTIFF
AND IT IS DUPLICATIVE OF THE INJURIOUS FALSEHOOD CLAIMS** ......... 20

**III.**   **PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SEEKS AN ANSWER TO
A HYPOTHETICAL QUESTION ON WHICH THERE IS NO ADVERSITY TO
SOTHEBY'S** ........................................................................................ 21

   **CONCLUSION** ...................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*,
    80 N.Y.2d 130, 589 N.Y.S.2d 825 (1992) ............................................................12

*Bilinski v. Keith Haring Found., Inc.*,
    96 F.Supp.3d 35 (S.D.N.Y. 2015) ...............................................................20, 21

*Biro v. Condé Nast*,
    807 F.3d 541 (2d Cir. 2015).........................................................................19

*Biro v. Condé Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013),
    *aff'd*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015) ............................14

*Biro v. Condé Nast*,
    No. 11-CV-4442 (JPO), 2014 WL 4851901 (S.D.N.Y. Sept. 30, 2014),
    *aff'd in part*, 807 F.3d 541 (2d Cir. 2015),
    *aff'd,* 622 F. App'x 67 (2d Cir. 2015).........................................................5

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984)...............................................................................11

*Brian v. Richardson*,
    87 N.Y.2d 46, 637 N.Y.S.2d 347 (1995) ....................................................... *passim*

*Chamilia, LLC v. Pandora Jewelry, LLC*,
    No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) .......................10, 19

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)...........................................................14

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021),
    *aff'd sub. nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-
    cv, 2022 WL 1013982 (2d Cir. April 5, 2022) ..................................................17

*Dillon v. City of New York*,
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) ...............................................13

*Dow Jones & Co. v. Harrods, Ltd.*,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) ........................22

*Drug Research Corp. v. Curtis Publ'g Co.*,
    7 N.Y.2d 435, 199 N.Y.S.2d 33 (1960) ...................................................................17

*Edwards v. Nat'l Audubon Soc'y*,
    Inc., 556 F.2d 113, 121 (2d Cir. 1977). .................................................................19

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
    314 F.3d 48 (2d Cir. 2002)......................................................................................10

*Ganske v. Mensch*,
    480 F. Supp. 3d 542 (S.D.N.Y. 2020)......................................................................14

*Gross v. New York Times Co.*,
    82 N.Y.2d 146, 603 N.Y.S.2d 813 (1993) ...............................................................13

*Hengjun Chao v. Mount Sinai Hosp.*,
    476 F. App'x 892 (2d Cir. 2012) ..............................................................................21

*Immuno AG. v. Moor–Jankowski*,
    77 N.Y.2d 235, 566 N.Y.S.2d 906 (1991) .................................................... *passim*

*John Grace & Co. v. Todd Assocs., Inc.*,
    188 A.D.2d 585, 591 N.Y.S.2d 477 (2d Dep't 1992) ..............................................11

*Kitchen v. Sothebys*,
    18 Misc.3d 1132(A), 859 N.Y.S. 2d 895 (N.Y. Civ. Ct. 2008).........................18, 19

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997).....................................................................................12

*Mann v. Abel*,
    10 N.Y.3d 271, 856 N.Y.S.2d 31 (2008) .................................................................16

*Markowitz v. Republic Nat'l Bank of N.Y.*,
    651 F.2d 825 (2d Cir. 1981)......................................................................................19

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990).......................................................................................................12

*MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*,
    No. 20-CV-1360 (MKB), 2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021) ..............11

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985)......................................................................................13

*Newport Serv. & Leasing, Inc. v. Meadowbrook Distrib. Corp.*,
    18 A.D.3d 454, 794 N.Y.S.2d 426 (2nd Dep't 2005) ..............................................11

*Penn Warranty Corp. v. DiGiovanni,*
    10 Misc. 3d 998, 810 N.Y.S.2d 807 (Sup. Ct., N.Y. Cnty. 2005) ................................4, 11, 13

*Rutty v. Krimko,*
    No. 17-cv-6090 (BMC), 2018 WL 1582290 (E.D.N.Y. Mar. 30, 2018) ................................19

*Sandals Resorts Int'l Ltd. v. Google, Inc.,*
    86 A.D.3d 32, 925 N.Y.S.2d 407 (1st Dep't 2011) ................................................13

*Sandler v. Simoes,*
    609 F. Supp. 2d 293 (S.D.N.Y. 2009)................................................................4, 12

*Silverman v. Daily News, L.P.,*
    129 A.D.3d 1054, 11 N.Y.S.3d 674 (2d Dep't 2015)........................................16, 17

*Steinhilber v. Alphonse*
    68 N.Y.2d 283, 508 N.Y.S.2d 901 (1986) ............................................................13

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
    864 F.3d 236 (2d Cir. 2017)................................................................................17

## Statutes

Lanham Act................................................................................................................1, 3

N.Y. Gen. Bus. L. § 349 ..............................................................................................1, 3

C.P.L.R. § 3016(a) ..........................................................................................................4

## Other Authorities

New York State Constitution Article I, Section 8..................................................2, 12

U.S. Constitution First Amendment..................................................................2, 12

2 Robert D. Sack, Sack on Defamation § 13 (5th ed. 2017)....................................10, 11

Defendant Sotheby's Inc. ("Sotheby's") respectfully moves and joins in the motion filed by Defendant Kevin McCoy ("McCoy") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Plaintiff Free Holdings Inc.'s ("Plaintiff") Amended Complaint dated May 9, 2022 (ECF # _) (the "McCoy Motion"), and adopts and incorporates herein the arguments raised there.  Additionally, Sotheby's respectfully submits this memorandum of law in support of its motion to emphasize additional grounds for dismissing all claims against it.

## PRELIMINARY STATEMENT

Despite over a year's time, two complaints, and the benefit of Defendants' pre-conference motion letter detailing the deficiencies of Plaintiff's original pleading, Plaintiff still fails to allege any viable claim.  Defendant McCoy filed the McCoy Motion seeking dismissal of the Amended Complaint in full because:  (1) none of Plaintiff's claims are justiciable because Plaintiff lacks standing insofar as it cannot establish injury-in-fact and its claims are not ripe; (2) Plaintiff's cause of action for unjust enrichment fails because it cannot allege Defendants were enriched "at Plaintiff's expense" and there is no "connection" between Plaintiff and Defendants as required to state that claim; (3) Plaintiff's cause of action for slander of title fails to adequately allege both malice and special damages, each an independently fatal defect to that claim; (4) Plaintiff fails to allege that Defendants' conduct caused public harm, as required to state a claim under N.Y. Gen. Bus. L. § 349; (5) Plaintiff's commercial disparagement claim fails for the same reason as its claim for slander of title; (6) Plaintiff has not alleged literally or impliedly false statements sufficient to support its Lanham Act claim and also has not viably pleaded causation of harm; and finally (7) Plaintiff's declaratory judgment claim should be dismissed as duplicative.  Each of these reasons (to which Sotheby's joins) justify dismissing Plaintiffs' Amended Complaint with prejudice.  But there's more.

1

Plaintiff's claims as to Sotheby's fail for additional reasons. The gravamen of each claim is that it was false for Defendants (Sotheby's included) to assert that the admittedly expired Namecoin Quantum NFT was "burned" or "removed" from the blockchain, and that the Ethereum Quantum "preserved" the data associated with the original Namecoin Quantum NFT. Plaintiff's arguments attacking these statements, however, are barred by bedrock principles of freedom of speech.

First, Plaintiff's twin claims for slander of title and commercial disparagement (often referred to as two branches of the tort of "injurious falsehood") fail because the statements underlying those claims (the "Challenged Statements") are protected opinion. Considered in their context (as they must be), the Challenged Statements are, on the one hand, too vague and imprecise to constitute a statement of fact, and, on the other, are accompanied by a thorough recitation of the facts upon which they are based, rendering them "pure opinion" that is fully protected by the First Amendment to the Constitution and Article I, Section 8 of the New York State Constitution, which provides even broader protection to statements of opinion than the Federal Constitution.

Second, Plaintiff's injurious falsehood claims also fail because, even if they could be construed as statements of fact, they are substantially true. Read in their entirety, as they must be, the publications containing the Challenged Statements fully acknowledge that the Quantum artwork was originally minted as an NFT on the Namecoin blockchain, and after that Namecoin entry expired (as Plaintiff admits that it did), the data from the original entry was preserved by screenshot and other methods and published in the new Ethereum entry. Accordingly, the version of the truth as alleged by Plaintiff would have no different effect on the mind of a reasonable reader than what is conveyed by the Challenged Statements, rendering them substantially true as a matter of law and thus not actionable, including at the pleading stage.

Third, both claims fail for the additional and independent reason that Plaintiff cannot allege that Sotheby's acted with malice—it was merely publishing statements regarding its own interests, and in doing so, relied upon the bona fides of a condition report.  These facts are admitted by Plaintiff and are dispositive of the issue of malice.

Finally, Plaintiff's additional claims—for unjust enrichment, N.Y. Gen. Bus. L. § 349, the Lanham Act, and declaratory judgment—fail (in addition to those reasons addressed in the McCoy Motion) because Plaintiff cannot escape the Constitutional protections that bar its injurious falsehood claims simply by denominating its claims under a different heading.  Further, Sotheby's obtained no benefit from Plaintiff, further barring its unjust enrichment claim, and has no legal ability to remedy Plaintiff's claim of ownership, which is fatal to the declaratory judgment claim.

Accordingly, for the foregoing, as well as the reasons set forth in the McCoy Motion, the Amended Complaint (the "FAC")[1] should be dismissed in full and with prejudice.

## **FACTUAL BACKGROUND**[2]

### **The Parties**

Plaintiff is a Canadian corporation that claims ownership of the Namecoin-Quantum NFT. (FAC ¶¶ 5, 20.)  McCoy is the artist who authored the Quantum artwork that was originally minted with the Namecoin-Quantum NFT and is associated with the Ethereum-Quantum NFT.  (FAC ¶¶ 2, 6, 7, 21.)  Sotheby's is a New York-based auction house that ran an auction for sale of the Ethereum-Quantum NFT in 2021.  (FAC ¶¶ 8, 22.)

### **The Content of the Challenged Statements**

Plaintiff's claims are based on three statements it attributes to Sotheby's, each taken from the auction listing for the Quantum artwork, which is cited and quoted throughout the FAC (the

---

[1] A true and correct copy of the FAC is annexed as Exhibit A to the Declaration of Evan M. Rothstein, dated June 30, 2022 (the "Rothstein Decl.") and filed concurrently herewith.
[2] Sotheby's assumes familiarity with the factual background set forth in the McCoy Motion.  (ECF # _.)

"Auction Listing")[3]:  (1) a statement in the "Condition Report" section of the Auction Listing prepared by "nameless Corporation" (the "Condition Report"), that the Namecoin listing for Quantum had been "burned" or otherwise "removed" from the Namecoin blockchain (the "First Challenged Statement"); (2) a statement in a video posted within the Auction Listing in which McCoy states that he "moved the original on-chain data from a burned Namecoin token into a modern, industry standard, ERC 721 token, while preserving all of the original on-chain information" (the "Second Challenged Statement"); and (3) a statement in the "Description" section of the Auction listing that Quantum was "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist" (the "Third Challenged Statement").[4]  (FAC ¶¶ 9-10, 62, 65-68, 73.)

Plaintiff alleges that the First and Second Challenged Statements are false because in its view "[a] Namecoin blockchain record cannot be 'removed,'" and "[t]he blockchain record for the Namecoin-Quantum has not been 'removed' or 'burned.'"  (FAC ¶¶ 11-13, 67-69.)  The key words underlying Plaintiff's claims within those statements are "removed" and "burned."  But the actual wording of the Auction Listing does not only say "burned"—the full text of the Second Challenged Statement states:  "[The Namecoin-Quantum entry] was removed from the system after not being renewed, and was <u>effectively burned</u> from the chain."  (*Compare* FAC ¶¶ 10-12 *with id.* ¶ 65 (emphasis added).)  Plaintiff alleges that the Third Challenged Statement is "false and misleading … because the Namecoin-Quantum is still extant on the Namecoin blockchain and requires no preservation."  (FAC ¶¶ 73-74.)  Thus, the key word supporting that component of Plaintiff's claim

---

[3] (*See, e.g.*, FAC  ¶¶ 9 n.1, 58 n.8, 59 n.9, 61 n.10, 65 n.11, 66 n.12, 73 n.13, 74 n.14.)

[4] "CPLR § 3016(a) requires that the particular words complained of be set forth in a complaint alleging defamation. Thus, in evaluating plaintiff's claim, only the words alleged in the complaint as constituting the libel may be considered by the Court as the actionable language.  [For this reason,] claims of other unidentified defamations … may not be relied upon . . . ."  *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1002, 810 N.Y.S.2d 807, 812 (Sup. Ct., N.Y. Cnty. 2005) (applying C.P.L.R. § 3016(a) to trade libel claim); *see Sandler v. Simoes*, 609 F. Supp. 2d 293, 301, 303 (S.D.N.Y. 2009) (applying C.P.L.R. § 3016(a) in a federal action).

is "preservation" i.e., "preserved."

**The Immediate Context of the Challenged Statements**

The Court may properly consider the entirety of the content of the Auction Listing, which is attached as Exhibit B to the Rothstein Decl., because it is cited in and relied upon by Plaintiff in the Complaint.[5]

The Auction Listing begins with an image of McCoy's Quantum artwork, followed by a "Description" section that lists McCoy as the author of the artwork, his biographical details, the dates over which the Quantum artwork was created (2014-2021), and information about the associated "Non-fungible token ERC-721." (Rothstein Decl., Ex. B.) In that same section, the Auction Listing discloses that the Quantum artwork was "[o]riginally minted on May 3, 2014 on the Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist." (*Id.*)

Immediately below this "Description" of the Quantum artwork, the Auction Listing displays the Condition Report on the same page. The Condition Report describes the Quantum artwork as follows:

> The hash and all the information <u>about the artwork</u> are stored on the Ethereum blockchain, and therefore cannot be modified. <u>This token was minted May 2021, but the referenced pieces were originally made public in 2014, with a link to the image hosted on the Namecoin network.</u> The token is a very early example of utilizing a blockchain token to identify the provenance of a piece of art. <u>Documents contained within the media bundle hosted on IPFS indicate the date and block location that the Namecoin DNS pointer was set to point to mccoyspace.com, and shows the transactions used at the time to create this trail.</u> To avoid domain squatting, Namecoin was designed to include removal of pointers after 36,000 blocks. <u>Accordingly, this specific Namecoin entry was removed from the system after not being renewed, and was effectively burned from the chain.</u>

---

[5] On a Rule 12(b)(6) motion, the Court may consider the allegations in the Complaint, as well as documents that are incorporated by reference, documents that are "integral" even if not incorporated, and judicially noticeable facts. *See* McCoy Motion; *see also Biro v. Condé Nast*, No. 11-CV-4442 (JPO), 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014), ("On a Rule 12(b)(6) or Rule 12(c) motion, the court may consider documents that are incorporated by reference in or are integral to the complaint. In a defamation case, this may include the entirety of a challenged publication that is excerpted in the complaint."; allowing consideration of both the entire publication and articles that were hyperlinked within it), *aff'd in part*, 807 F.3d 541 (2d Cir. 2015), *aff'd,* 622 F. App'x 67 (2d Cir. 2015).

(*Id*. (emphasis added.)   The Condition Report continues:

> "nameless™ Condition Reports <u>are statements of opinion only and not representation of fact</u>. The reports are non-exhaustive and based solely on information provided to nameless and/or obtained by nameless prior to sale, unless otherwise specified. The reports may make reference to a lot's smart contract details and history, metadata and/or media file specifics, storage, and/or origin, and other token features, however such reports may not refer to or identify all faults and potential vulnerabilities that may exist.  …Condition reports are not an alternative to carrying out your own inspection and investigation of a lot and/or seeking your own independent professional advice. <u>All auction participants should inspect a lot and satisfy oneself as to its condition prior to bidding</u>. The responsibility for ascertaining the condition of a lot remains with the purchaser, and nameless cannot be held responsible for the content of condition reports, which are provided for guidance only in assessing the condition of a lot."

(*Id*. (emphasis added.)

The Auction Listing then displays a lengthy "Catalogue Note," which analyzes the Quantum artwork and its artistic significance.  The Catalogue Note begins with two videos of McCoy, recorded transcripts of which are annexed as Exhibits D ("Kevin McCoy-Quantum") and F ("QuantumToken-McCoy") to the Rothstein Decl., which also attaches DVDs and contains links to the videos available online, respectively.  In the first video, McCoy explains his background and intention in creating the Quantum artwork.  (*Id*., Exs. C, D.)  In the second video, McCoy explains "the preservation process he made to Quantum, originally minted in 2014 on the Namecoin blockchain."  (*Id*., Exs. E, F.)  He states:

> Hi, I'm Kevin McCoy.  I'm the artist that created Quantum and minted it in 2014.  I want to tell you about the restoration and preservation efforts that I made to bring this early work back into the present day.  Throughout, I was guided by ideas of provenance, of data integrity, and data conservation.  I've moved the original on-chain data from a burned Namecoin token into a modern, industry standard, ERC 721 token, while preserving all of the original on-chain information.

(*Id.*, Exs. E, F (quoted in FAC ¶ 66).) He then walks the viewer through the documentation available on "the newly-issued token," showing screen views of, e.g., the associated Rights Agreement:



Kevin McCoy explaining the preservation process he made to *Quantum*, originally minted in 2014 on the Namecoin blockchain.

(*Id.*, Exs. E, F.)  McCoy then explains that the new Ethereum NFT also contains "screenshots taken the original Namecoin wallet" for the same Quantum artwork, which show the original transaction set and data, along with a signed message "proving that I have continued possession of the private key for the address which originally sent Quantum's minting transaction." (*Id.*, Exs. E, F.)  McCoy then offers his view that "As we enter into this new era of tokenization, I think we will increasingly be faced with issues of <u>cross-chain translation</u>, <u>preservation</u>, and <u>archiving and conservation</u>.  **In fact, we're already there with Quantum**.  And hopefully the efforts that I made here, in collaboration with lawyers, with digital conservators, and with developers, will be a useful example for others in this community facing similar challenges." (*Id.*, Exs. E, F (emphasis added).)

The Catalogue Note follows these videos with lengthy text that examines the context surrounding the Quantum artwork and its historical significance:

> In the long timeline of art, there are few works that serve as genesis blocks to their own chain of history. They are seismic forks in direction; forks that usher in new movements that block by block, mint by mint, usher in new art histories. These works close chapters on the art histories that came before, while anchoring a new flowering of human creativity. These prime movers occupy a singular position in

art history. They came first. Kevin McCoy's Quantum is such a work. **Minted on 2nd May 2014 21:27:34**, or more precisely Namecoin Block 174923, the NFT era quietly dawned. What a noise it makes today.  Pulsing with colour, a riotously raw beacon to a new era, McCoy minted Quantum - unwittingly placing it within this vaulted pantheon of firsts. …  In my view, Quantum will always be the most art historically important work in the history of NFTs.

(*Id.*, Ex. B (emphasis in original) (quoted in FAC ¶¶ 58-59).)  The Catalogue Note also expresses

its interpretation of the meaning conveyed by the Quantum artwork, stating, for example:

Creation, time, art history and the very idea of blockchains themselves intersect in the ripples of Quantum. It is a work to meditate not just on the genesis of art history's newest chain but on the founding principles that underpin the entirety of this new decentralised system. Rippling out and in, it is a work about creation, a work that captures the spirit of the blockchain network itself expanding and contracting as the world processes the place they want to give this radical new technology.  …  One's eye meditates on this unapologetic celebration of digital colour, a hexadecimal testimony that encodes the full spectrum of colours endless possibilities - remixed and reassembled by every digital creative that follows McCoy's first steps into the world of blockchain based art.

(*Id.*) The Catalogue Note further analyzes such artistic elements as the "musicality" of the

Quantum artwork, its visual language of "pixels iteratively jostl[ing] for position and color as they

execute their algorithmic form," and connecting the themes of the visual piece to other artists—

among them LaMonte Young, Sol LeWitt, John Whitney—and other "important aesthetic

touchstones for McCoy."  (*Id.*)

**The Broader Context of the Challenged Statements**

NFTs, considered a "speculative crypto asset," "exploded in popularity" in 2021.

(Rothstein Decl., Ex. G—Howcraft Article cited in FAC ¶ 34 n.2.)  "Around 28.6 million wallets

traded NFTs in 2021, up from some 545,000 in 2020."  (*Id.*)  The marketplaces for NFTs are

numerous, fragmented, and decentralized.  NFTs are created and sold across at least "ten different

blockchains, which are used to record who owns the NFT."  (*Id.*)  There are additionally sales of

NFTs that are considered "off-chain," such as "major NFT art sales at auction houses."  (*Id.*)

Despite their popularity, NFTs are the subject of considerable debate, with many people

reportedly still "baffled as to why so much money is being spent on items which do not physically exist." (*Id.*) More specifically within the art community, there persist questions such as whether NFTs can be regarded as art, whether NFTS are "trigger[ing] any kind of sea change in what art looks like, what it means or what, in some profound sense, it is?"; whether "NFT art" exists at all; whether works associated with NFTs "would be just as good or bad, depending on your tastes, if they had never been 'certified' with the NFT"; and whether, "as the novelty of NFTs wears off, people will just talk about 'digital art' and leave the NFT off to one side, as a detail in the transfer of ownership." (Rothstein Decl., Ex. H—Gopnik Article cited in FAC ¶ 95 n.15.)

As reported by the Gopnik Article cited and quoted in the FAC, McCoy took part in this debate—in coining the use of NFTs for digital art,  he "was looking for a way to assert authorship, and to transfer ownership, of the digital creations that he and his friends made and mostly failed to sell" and to answer the question of whether there was "a way to make a few of those copies 'authentic,' different enough from all other copies." (*Id.*)

### Procedural History

Plaintiff filed its initial complaint on February 1, 2022. (ECF #1.) Sotheby's accepted service of the complaint by stipulation dated February 16, 2022, which was so-ordered to extend Sotheby's time to answer, move, or otherwise respond to the Complaint through April 11, 2022. (ECF # 15.) McCoy received the same extension. (ECF # 18.) Plaintiff thereafter voluntarily dismissed claims against two original defendants—the purchaser of the Ethereum-Quantum (ECF # 23-24) and, later, the author of the Condition Report (ECF # 46, 48.)

On April 1, 2022, McCoy filed a pre-motion conference letter seeking to file a motion to dismiss the initial complaint, on grounds that Plaintiff failed to allege special damages to support its first claim, that it failed to allege consumer-oriented conduct to support its second claim, and

that all of Plaintiff's claims failed for lack of standing.  (ECF # 34.)  In response, Plaintiff elected

to file an amended complaint (ECF # 44, 47), and the deadline for the remaining Defendants

McCoy and Sotheby's to respond to the FAC was extended to June 30 (ECF # 50).

## ARGUMENT

## I. PLAINTIFF'S CLAIMS FOR SLANDER OF TITLE AND PRODUCT DISPARAGEMENT FAIL BECAUSE THE CHALLENGED STATEMENTS ARE PROTECTED OPINION; ALTERNATIVELY, SUBSTANTIALLY TRUE; AND PUBLISHED WITHOUT MALICE.

Slander of title and commercial disparagement (also known as "product disparagement,"

which is the term we will use here to more clearly distinguish the two torts) are two common-law

torts with significant overlap.  Indeed, the tort of slander of title is essentially identical to the tort

of product disparagement, and the two torts are sometimes referred to together as "injurious

falsehood."  *See* 2 Robert D. Sack, Sack on Defamation §§ 13:1.1, at 13-2-13-3, 13:1.4[A], at 13-

9 (5th ed. 2017).  The principal difference is that statements impugning *title or ownership* of

products are actionable as slander of title, while statements about the *quality* of those same

products are actionable as product disparagement.  *See Chamilia, LLC v. Pandora Jewelry*, *LLC*,

No. 04-CV-6017 (KMK), 2007 WL 2781246, at *11 n.6 (S.D.N.Y. Sept. 24, 2007).

To state a claim for slander of title under New York law, a plaintiff must allege publication

of "(1) a communication falsely casting doubt on the validity of [the] complainant's title, (2)

reasonably calculated to cause harm, and (3) resulting in special damages," with the second

element interpreted to require allegations that the defendant acted with malice.  *Id.* at *11 (citation

and internal quotation marks omitted).  The elements of product disparagement are nearly

identical, requiring a showing that the "defendant published an oral, defamatory statement directed

at the quality of a business's goods and … that the statements caused special damages." *Fashion

Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002).  To state a claim

10

for product disparagement, a plaintiff must adequately plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages. *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360 (MKB), 2021 WL 1193947, at *11 (E.D.N.Y. Mar. 29, 2021) (citation omitted).

Injurious falsehood torts are related to defamation, but they are "far more difficult" to sustain.  2 Robert D. Sack, Sack on Defamation § 13:1.4[A], at 13-10 (5th ed. 2017).  This is because they are actions "only for special damages caused by the false statement, and the burden of proving falsity, damages, and 'malice' in many forms is generally higher than in defamation." *Id.*  Moreover, the same constitutional protections to speech that are available in defamation actions also apply to injurious falsehood claims.  *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984) (product disparagement).  "As with any claim for defamation, both libel per se and trade libel are defeated by a showing that the published statements are substantially true. …[and] [t]hey are also subject to a defense that the material, when read in context, would be perceived by a reasonable person to be nothing more than a matter of personal opinion." *Penn Warranty Corp.*, 810 N.Y.S.2d at 813-14  (citing *Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235, 566 N.Y.S.2d 906 (1991); *Newport Serv. & Leasing, Inc. v. Meadowbrook Distrib. Corp.*, 18 A.D.3d 454, 794 N.Y.S.2d 426 (2nd Dep't 2005)); *John Grace & Co. v. Todd Assocs., Inc.*, 188 A.D.2d 585, 586, 591 N.Y.S.2d 477 (2d Dep't 1992) (applying opinion defense to commercial disparagement claim).

### A.    Both Claims Fail Because the Challenged Statements Are Protected Opinion

Like a defamation case, claims for injurious falsehood "cannot be maintained unless it is premised on published assertions of fact." *See Brian v. Richardson*, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 350 (1995) (describing opinion defense for defamation); *Penn Warranty Corp.*, 810

N.Y.S.2d at 813-14 (opinion defense applies to injurious falsehood claims); *Sandler*, 609 F. Supp. 2d at 303 (same). Courts have long interpreted both the First Amendment of the U.S. Constitution and Article I, Section 8 of the New York Constitution to forbid speech claims that target statements of opinion or rhetorical hyperbole. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 136, 589 N.Y.S.2d 825, 827 (1992).

The standards under the New York Constitution for determining whether a statement is actionable are more protective of speech than federal standards. *See Immuno AG*, 77 N.Y.2d at 249; *see also Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) ("New York's … inquiry … does and is intended to differ from the inquiry required under the First Amendment"). Relying on these broader protections, the New York Court of Appeals in *Immuno* held that in determining whether a statement is actionable, courts must "begin[] by looking at the content of the whole communication, its tone and apparent purpose." 77 N.Y.2d at 254. "[R]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts . . . .'" *Brian*, 87 N.Y.2d at 51 (quoting *Immuno*, 77 N.Y.2d at 254). This approach "avoid[s] 'the fine parsing ... that might now be required under Federal law'" following the U.S. Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). *Von Gutfeld*, 80 N.Y.2d at 145.

*Immuno* applied these principles to reject a libel case brought by a pharmaceutical company against a scientific researcher. The researcher wrote a letter published in an academic journal that raised serious concerns about the company's proposal to conduct research on primates. *Immuno*, 77 N.Y.2d at 240. The court held that the researcher's statements were not actionable. It focused on the "social setting" and "immediate" context of the letter, including that it was denominated as

opinion by virtue of it being a letter to the editor. *Id*. at 254.  The court also found significant that the letter was "related to a public controversy." *Id.*

Following *Immuno*, New York courts generally consider three factors in determining whether a statement is actionable:  "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian*, 87 N.Y.2d at 51 (internal quotation marks omitted).  Courts apply the same analysis to evaluate whether statements, even if factual in tenor, are nonactionable "rhetoric or hyperbole." *E.g. Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 42, 925 N.Y.S.2d 407, 414 (1st Dep't 2011).  Loose, figurative or hyperbolic statements that are susceptible to ambiguous meanings, even if deprecating to the plaintiff, are not actionable. *Dillon v. City of New York,* 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999); *Penn Warranty Corp.*, 810 N.Y.S.2d at 815 (finding words too ambiguous to qualify as a statement of fact where "in the complaint the plaintiff had to frame or augment the allegedly defamatory words with its own words in order to even allege that the language was defamatory").  Moreover, the Court of Appeals makes a distinction between a statement of opinion that implies a factual basis that is not disclosed to the reader and an opinion that is accompanied by a recitation of facts on which it is based. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 818 (1993).  The former is actionable, the latter is not. "[T]he determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *accord Steinhilber v. Alphonse* 68 N.Y.2d 283, 290, 508

N.Y.S.2d 901, 904 (1986).

Applying these standards, the Challenged Statements are protected as opinion. To begin, the imprecise, vague nature of the language used supports that Challenged Statements are protected opinion. The notion that an NFT has been "preserved," "burned," "effectively burned" or otherwise "removed" is loose, imprecise language that lacks a defined meaning that is readily understood. As discussed in the McCoy Motion, the definition of "burned" or otherwise removed in the NFT context is ambiguous and encompasses a "range of scenarios"—including but not limited to transferring ownership to a null address, having the owner revoke rights, and status changes recorded on the blockchain. (McCoy Motion ("'[Because there is no established, formal definition of a 'burn' [in the context of NFTs] … 'people may refer to a range of scenarios as a burn.'") (citing and quoting Maghan McDowell, "Why brands are burning NFTs," Vogue Business, Feb. 8, 2022 (https://www.voguebusiness.com/technology/why-brands-are-burning-nfts)).)[6] But even without this larger context, Plaintiff's own allegations[7] show that the definitions of these terms within an emerging, decentralized, and quickly changing marketplace and community are subject to debate, refinement, new uses, and change—and thus, are unverifiable and incapable of being proved false. They cannot be the basis of a speech-based claim.

But even if the wording had an accepted, verifiable meaning, the "larger context" of all of the statements overwhelmingly supports that they are opinions, not facts. *Brian*, 87 N.Y.2d at 51. Each of the Challenged Statements, just like in *Immuno*, "related to a public controversy." 77

---

[6] The Court may take judicial notice of news articles showing there is an existing debate about the range of potential definitions of these terms. *See Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004) (in granting a motion to dismiss, taking judicial notice of newspaper articles showing public controversy in order "to place [defendants'] comments in the broader social context."); *Biro v. Condé Nast,* 963 F. Supp. 2d 255, 271 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *aff'd*, 622 F. App'x 67 (2d Cir. 2015); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 555 (S.D.N.Y. 2020) (granting a Rule 12(b)(6) motion, observing practices on social media to find that "[i]t is difficult to conjure a 'precise meaning' for the statement that Plaintiff [engaged in behavior specific to a social media platform]").
[7] (Rothstein Decl., Exs. G, H.)

N.Y.2d at 254.  In the video included in the Auction Statement, McCoy specifically explains this controversy:  "As we enter into this new era of tokenization, I think we will increasingly be faced with issues of <u>cross-chain translation</u>, <u>preservation</u>, and <u>archiving and conservation</u>.  **In fact, we're already there with Quantum**."  (Rothstein Decl., Ex. D (emphasis added).)  The specific issues of what it means to "preserve" an NFT as new industry-standard protocols like Ethereum emerge, how to "translate" NFTs across chains, and how to archive and conserve NFTs in these processes, were at the heart of the opinions that Sotheby's and McCoy were expressing in the Challenged Statements.  Plaintiff's claims essentially as the Court to take a side in this dispute.  Under the opinion doctrine, it should decline the invitation.

Further, the Auction Listing made clear that Sotheby's and McCoy were "not a disinterested observer," further confirming that readers would understand the Challenged Statements to be opinions. *Brian*, 87 N.Y.2d at 53.  In *Brian*, which involved a claim against then-Attorney General Elliot Richardson, the court found significant that Richardson, as the author of the challenged opinion piece, "disclosed that he had been" directly involved in the controversy on which he wrote.  *Id.*  The same was true in *Immuno*, where the defendant was "a known animal rights activist" and the letter "made clear that its purpose was to voice the conservationist concerns of [a] partisan group in order 'to draw this situation to the attention of interested parties.'"  77 N.Y.2d at 254.  Here, McCoy expressly identified himself as a participant in this debate, stating "And hopefully the efforts that I made here, in collaboration with lawyers, with digital conservators, and with developers, will be a useful example for others in this community facing similar challenges."  (Rothstein Decl., Ex. D (emphasis added).)

Additionally, the nature and tone of the forum—an Auction Listing—strongly signals to readers that the statements are opinions, not facts.  New York courts treat the "nature of the

particular forum" as highly significant in deciding whether statements in that forum are actionable. *Brian*, 87 N.Y.2d at 51. *Immuno*, for example, found important that the statements were made in a letter to the editor of a journal—"a medium that is typically regarded by the public as a vehicle for the expression of individual opinion rather than 'the rigorous and comprehensive presentation of factual matter.'" *Id.* at 52 (*quoting Immuno*, 77 N.Y.2d at 253); *see Mann v. Abel*, 10 N.Y.3d 271, 276-77, 856 N.Y.S.2d 31, 33 (2008) (column "on the 'opinion' page of the newspaper"). Here, the Condition Report within the Auction Listing specifically stated that "nameless™ Condition Reports <u>are statements of opinion only and not representation of fact</u>" and that "All auction participants should inspect a lot and satisfy oneself as to its condition prior to bidding." (Rothstein Decl., Ex. B (emphasis added).)

The "predominant tone" of Auction Listing confirms that the post was not merely "objective reportage." *Brian*, 87 N.Y.2d at 53; *see Mann*, 10 N.Y.3d at 277 (relying on "the tenor of the column"). The Auction Listing contains pages of highly expressive commentary regarding the visual expression of the Quantum artwork and its historical significance. Using phrases like "I think" and "In my view," it takes a stand in the evolving conversation about preservation and provenance and links the artwork to some of the most significant moments in art history, and in doing so "called particular attention to the circumstances surrounding" the communication and "point[ed] up that this was [the author's] view." *Immuno*, 77 N.Y.2d at 253.

Finally, even when the bare language of a statement might appear factual, courts hold the statement nonactionable so long as there is "full disclosure of the facts supporting [it]." *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055, 11 N.Y.S.3d 674, 676 (2d Dep't 2015). In *Silverman*, the court held nonactionable statements in the Daily News calling the plaintiff's written materials "racist writings," and stating that he had "ties to a 'white supremacist group.'" *Id.* Because the

defendant "made the statements with express reference to the written materials authored by the plaintiff," the "statements of opinion [were] nonactionable"; "there was full disclosure of the facts supporting the opinions." *Id.*  Here, too, Sotheby's fully disclosed all of the "facts" that Plaintiff claims show that the Challenged Statements were purportedly false.  In multiple locations, it disclosed that the Quantum artwork originally had been minted on Namecoin, and it explained in great detail that *the data associated with* that Namecoin entry had been "preserved" and included in the Ethereum entry.  Indeed, on the Auction Listing's caption for McCoy's video, it states expressly that the video depicts "Kevin McCoy explaining the preservation process he made to Quantum, originally minted in 2014 on the Namecoin blockchain."  (Rothstein Decl., Exs. B, D.) These disclosures render the Challenged Statements protected opinion.

> **B.**         **The Challenged Statements Are Substantially True**

Plaintiff's claims also fail for the independent reason that it has not "plead[ed] facts that, if proven, would allow a reasonable person to consider the statement[s] false." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).  Truth is a complete defense to an injurious falsehood claim, although strictly speaking it is not a defense as falsity is an element of the claim and the burden of pleading and proving falsity is on the plaintiff.  *See id.* at 246-47*; see also Drug Research Corp. v. Curtis Publ'g Co.*,  7 N.Y.2d 435, 440, 199 N.Y.S.2d 33 (1960). "[A] statement need not be completely true, but can be substantially true because fact and fiction may not be crisply delineated categories in [speech] cases." *Tannerite Sports, LLC*, 864 F.3d at 242 (emphasis and internal quotation marks omitted).  Under New York law, "[a] statement is substantially true, if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 326 (S.D.N.Y. 2021) (internal quotation marks omitted), *aff'd*

*sub. nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-cv, 2022 WL 1013982 (2d Cir. April 5, 2022).  Indeed, in the context of the art world, falsity is particularly difficult to prove—the plaintiff's "burden in proving the falsity of a statement concerning a work of art" has been described as "very heavy" and "nearly impossible."  *Kitchen v. Sothebys*, 18 Misc.3d 1132(A), at *7, 859 N.Y.S. 2d 895 (N.Y. Civ. Ct. 2008) (finding plaintiff failed to demonstrate falsity).

Here, Plaintiff admits that the Namecoin-Quantum "expire[d]."  (FAC ¶¶ 3, 40.)  While Plaintiff disputes the consequences of that expiration—whether it made it possible or advisable for McCoy to take steps to "preserve" the data associated with the token, or whether the change in the status of the token caused by the expiration qualified "*effectively*" as a "burn"—the pleaded truth would have no different effect on the mind of the reader than what was stated in the publications at issue.  McCoy and Sothebys accurately reported that Quantum was originally minted in 2014 on the Namecoin blockchain, and that McCoy "**moved the original on-chain data from a burned Namecoin token into a modern, industry standard, ERC 721 token, while preserving all of the original on-chain information.**"[8]  (Rothstein Decl., Ex. F.)

## C.    The FAC Fails to Allege That Sotheby's Acted With Actual Malice

The tort of injurious falsehood requires sufficient allegations that Defendants acted with malice.  "In New York, courts have applied the 'actual malice' standard, and have regularly dismissed claims where the plaintiff has failed to show that the defendant acted with knowledge that the statements were false or with a 'reckless disregard' for the truth or falsity of the

---

[8] Plaintiff's allegation that former Defendant nameless "retracted" its condition report has no effect on the substantial truth of the Challenged Statements.  (FAC ¶ 88.)  On its own terms, the statement provides that "nameless expresses no opinion about the merits of the allegations" and has reviewed its statement not because it has determined that it was false, but rather "[i]n light of subsequent allegations challenging this statement."  (*Id.*)  This is to say nothing of the fact that this "evidence" or retraction occurred under specious circumstances to begin with.  *See* McCoy Motion.

statements." *Chamilia, LLC*, 2007 WL 2781246, at *11.  "Malice under this standard is not a measure of whether the speaker harbored ill will or spite; rather, actual malice exists when a speaker makes a statement knowing it is false or while personally harboring serious doubts about its veracity." *Id.* (citation omitted).  Complaints that fail to adequately allege malice are "facially defective" and must be dismissed.  *Id.* (citation omitted). Allegations of malice must be supported by probative facts.  *See id.* "[C]onclusory statements" regarding actual malice cannot survive dismissal. *See Biro v. Condé Nast*, 807 F.3d 541, 544, 546-47 (2d Cir. 2015).

Under this rubric, "[m]ere falsity, prior disputes between the parties, and '[s]uspicion, surmise and accusation' are insufficient to raise an inference of malice."  *Chamilia, LLC*, 2007 WL 2781246, at *12 (citation omitted).  Furthermore, this requirement of malice or reckless disregard on defendant's part means that "[a] defendant who asserts a claim against property in good faith under an honest impression of its truth will not be penalized." *Markowitz v. Republic Nat'l Bank of N.Y.*, 651 F.2d 825, 828 (2d Cir. 1981) (citation and internal quotation marks omitted); *Rutty v. Krimko*, No. 17-cv-6090 (BMC), 2018 WL 1582290, at *3 (E.D.N.Y. Mar. 30, 2018) (same).  *See Kitchen*, 18 Misc.3d 1132(A), at *10 (acting based on "perceived economic interests" incompatible with finding of malice). Likewise, "liability … cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Edwards v. Nat'l Audubon Soc'y*, Inc., 556 F.2d 113, 121 (2d Cir. 1977).  *See Kitchen*, 18 Misc.3d 1132(A), at *10 (allegations that defendant art dealer failed to "explain its opinion to him, retract it, or alter it" regarding a piece of artwork, was insufficient to prove malice because defendant had no duty to do any of those things).

Here, Plaintiff's only allegations of malice are conclusory (FAC ¶¶ 75, 124, 147) or based

on a refusal to credit Plaintiff's denial (FAC ¶¶ 121, 144)[9]; all are insufficient as a matter of law to survive a motion to dismiss. Further, Plaintiff's allegations affirmatively demonstrate Sotheby's good faith. The full and repeated disclosures of the Namecoin-Quantum and detailed discussion of the "preservation" efforts show a good-faith claim to the Quantum-Ethereum that bars any inference of malice. So, too, does Sotheby's admitted reliance on a Condition Report which Plaintiff alleges was prepared by a third party, and which Plaintiff has not (and cannot) alleged that Sotheby's had any reason to doubt. In short, Plaintiff does not come close to alleging malice, and this dooms its claims.

## II. PLAINTIFF'S UNJUST ENRICHMENT CLAIM ALSO FAILS AGAINST SOTHEBY'S BECAUSE NO BENEFIT FLOWED DIRECTLY FROM PLAINTIFF AND IT IS DUPLICATIVE OF THE INJURIOUS FALSEHOOD CLAIMS

To state a claim for unjust enrichment, Plaintiff must allege that the Defendant was enriched at the Plaintiff's expense. *Bilinski v. Keith Haring Found., Inc.*, 96 F.Supp.3d 35, 52 (S.D.N.Y. 2015). Further, "[t]he benefit acquired by the defendant must be 'specific' and directly related to the loss suffered by the plaintiff." *Id.*

In *Blinksi*, the alleged owners of artwork by Keith Haring brought an unjust enrichment claim against the foundation that owned the majority of the artist's work. The plaintiff owned a collection of artwork that the foundation refused to authenticate as Haring pieces. The foundation ultimately issued a press release that described plaintiff's collection of artwork as "fake Haring works," which led to a loss of a sale of some of the artwork. *Id.* at 42. The plaintiff sued the foundation for, among other things, unjust enrichment, based on a theory that the defendants were enriched because the value of their own works "was increased by preventing others from selling

---

[9] Indeed, Plaintiff only alleges that it contacted McCoy prior to the auction. It does not even allege (because Plaintiff cannot) to have spoken to anyone at Sotheby's until *after* the auction was completed. (FAC ¶¶ 76-82.)

works." *Id.* at 52.

The Court, however, rejected this theory completely and dismissed the claim in full.  It held that "The benefit acquired by the Foundation—the alleged increase in value of Haring works owned by the Foundation—is not a benefit flowing directly to the defendants at plaintiffs' expense.  Rather, it is an indirect and hypothetical benefit."  *Id.*

Here, as in *Bilinski*, Plaintiff attempts to allege a claim for unjust enrichment based on the notion that "Free Holdings' Namecoin-Quantum NFT has significant value due to its status as the first NFT and such value is being significantly diminished by the false and misleading statements made by McCoy and Sotheby's."  (FAC ¶ 98.)  This allegation is indistinguishable from the claim in *Bilinski* found to be fatally defective.  It is not a benefit flowing at all directly to Defendants at Plaintiff's expense, and it is indirect and entirely hypothetical.  The claim fails on this basis alone.

Plaintiff's new allegations in the FAC regarding overall brand enhancement and value to "future projects" fare even worse.  (*E.g.,* FAC ¶ 112.)  They are speculative (at best) and lack any cognizable (or pled) connection to Plaintiff.

The claim is also duplicative of Plaintiff's injurious falsehood claims.  Where tort claims essentially restate a defamation claim that has been dismissed on a motion to dismiss, the tort claims must also be dismissed as duplicative.  *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012).  Here, Plaintiff's claim for unjust enrichment also fails because it is expressly based on the same conduct underlying its injurious falsehood claims, namely: "McCoy and Sotheby's have derived profits from the false and misleading statements concerning the promotion, marketing, advertisement, and sale of the Ethereum-Quantum."  (FAC ¶ 111.)

### III.   PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SEEKS AN ANSWER TO A HYPOTHETICAL QUESTION ON WHICH THERE IS NO ADVERSITY TO SOTHEBY'S

"Declaratory judgment actions are justiciable only in cases in which an 'actual

controversy' exists." *See, e.g.*, *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). A "substantial controversy, between the parties having adverse legal interests," with "immediacy and reality" that allows "specific and conclusive relief" may be the subject of a DJA, but "an abstract, hypothetical or academic question" may not. *Id.*

Plaintiff seeks a judgment declaring: (1) Free Holdings is the rightful owner of the Namecoin-Quantum; (2) the Namecoin-Quantum has not been "burned" or otherwise "removed" from the Namecoin blockchain; and (3) the statements issued by McCoy and Sotheby's in connection with their sale of the Ethereum-Quantum were false and misleading." Several of these limitations on DJAs prohibit Plaintiff's claim here.

For requested declaration (1), Sotheby's has no legal position or legal adversity to Free Holding's claim of ownership of the Namecoin-Quantum. For requested declarations (2) and (3), Plaintiff merely seeks a determination of alleged "falsity." But that is not a legal determination that, on its own, could possibly result in any relief for Plaintiff, especially as against Sotheby's. Indeed, Plaintiff points to no such relief—merely stating that it "has no adequate remedy at law." (FAC ¶ 108.) It is entirely an abstract question, seeking a legal determination about hypothetical facts. For these reasons, Plaintiff's DJA claim also should be dismissed in full.

## **CONCLUSION**

For the foregoing reasons, Sotheby's respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice, and that the Court award Sotheby's such other and further relief as deemed just and proper.

Dated:   New York, New York            ARNOLD & PORTER KAYE SCHOLER LLP
         June 30, 2022

                                        By: /s/ Evan M. Rothstein
                                            Evan M. Rothstein (admitted *pro hac vice*)
                                            1144 Fifteenth Street | Suite 3100

22

Denver, CO 80202-2569
T: +1 303.863.2308
F: +1 303.863.1000
Evan.Rothstein@arnoldporter.com

Theresa M. House
Marcus Asner
250 West 55th Street
New York, NY 10019-9710
T: +1 212.836.8000
F: +1 212.836.8689
Theresa.House@arnoldporter.com

*Attorneys for Defendant Sotheby's Inc.*