# Exhibit A

KENNETH J. FALCON, ESQ.
MOISH E. PELTZ, ESQ.
STEVEN C. BERLOWITZ, ESQ.
FALCON RAPPAPORT & BERKMAN PLLC
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
Telephone: (516) 599-0888
Facsimile: (516) 599-0889
Attorney for FREE HOLDINGS INC.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------X

FREE HOLDINGS INC.,                    Case No.: 1:22-cv-00881 (LGS) (JLC)

                Plaintiff,                    **AMENDED COMPLAINT**

    - against –

KEVIN McCOY AND SOTHEBY'S INC.,

                Defendants.

--------------------------------------------------------X

       Plaintiff Free Holdings Inc., by its attorneys Falcon Rappaport & Berkman PLLC, for its

Amended Complaint alleges:

**NATURE OF THE CASE**

       1.    This action for declaratory judgment, unjust enrichment, slander of title, deceptive

and unlawful trade practices, commercial disparagement, and false advertising concerns two

non-fungible tokens ("NFTs"), both called *Quantum*, and arises out of Defendants' false and

misleading marketing, promotion, advertisement, and sale of their Ethereum-based NFT called

*Quantum*.

       2.    In 2014, artist, Kevin McCoy ("McCoy"), created an NFT called *Quantum* on the

Namecoin blockchain (the "Namecoin-*Quantum*").

3.    McCoy subsequently let the record for the Namecoin-*Quantum* expire on or around January 2015.  This left the Namecoin-*Quantum* free to claim.

4.    Any user of the Namecoin network may freely claim an expired record on the Namecoin blockchain.

5.    On or around April 5, 2021, Free Holdings, Inc. ("Free Holdings") claimed the Namecoin-*Quantum*.

6.    On May 28, 2021, McCoy minted another NFT, also called *Quantum*, this time on the Ethereum blockchain (the "Ethereum-*Quantum*").

7.    Although both NFTs refer to the same visual image, the Ethereum-*Quantum* and the Namecoin-*Quantum* are different NFTs.

8.    Shortly after McCoy minted the Ethereum-*Quantum*, McCoy and Sotheby's Inc. ("Sotheby's) began marketing and promoting the sale of the Ethereum-*Quantum* as the crown jewel of Sotheby's auction entitled *Natively Digital: A Curated NFT Sale* ("*Natively Digital*").

9.    McCoy and Sotheby's falsely claimed the Ethereum-*Quantum* was the first NFT "[o]riginally minted on May 3, 2014 on [the] Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[1]

10.    McCoy and Sotheby's further falsely stated that the Namecoin-*Quantum* had been "burned" or otherwise "removed" from the Namecoin blockchain.

11.    A Namecoin blockchain record cannot be "removed."

---

[1] *Natively Digital: A Curated NFT Sale/ Lot 2*, https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum
[https://web.archive.org/web/20220208083953/https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum] (last visited April 27, 2022).

12.     The blockchain record for the Namecoin-*Quantum* has not been "removed" or "burned."

13.     The statements by McCoy and Sotheby's were therefore false when made.

14.     Rather, the Namecoin-*Quantum* remains active and under the control of Free Holdings.

15.     Upon learning of the auction, Free Holdings repeatedly contacted McCoy to inform him that Free Holdings owned the Namecoin-*Quantum* and that the marketing and promotional materials concerning McCoy and Sotheby's Ethereum-*Quantum* were false and misleading.  Despite Free Holdings' diligent communication attempts, McCoy ignored Free Holdings.  McCoy and Sotheby's continued to market and promote the *Natively Digital* auction, relying on the mischaracterization of the Ethereum-*Quantum* as the first NFT to help draw bidders interested in purchasing the first NFT ever minted.  Indeed, in using false and misleading marketing and promotion, McCoy and Sotheby's successfully sold the newly re-minted Ethereum-*Quantum* for a reported sum of $1,472,000.

16.     McCoy and Sotheby's continue to unjustly profit from their false and misleading statements.

17.     McCoy trumpets his sale of the Ethereum-*Quantum* as the first NFT in news publications, magazine articles, and television interviews to help build his brand and generate sales for his future projects.

18.     Sotheby's similarly uses its sale of the Ethereum-*Quantum* to establish its credentials in a rising and profitable NFT art and collectibles market.  Sotheby's held a second *Natively Digital* auction entitled *Natively Digital 1.2: The Collectors*, and recently closed

3

bidding on the third iteration of its *Natively Digital* auction series, titled *Natively Digital 1.3: Generative Art*.

19.     As set forth below, McCoy and Sotheby's unjustly profited, and continue to unjustly profit, from the false and misleading marketing and sale of the Ethereum-based *Quantum* NFT, which they deceitfully and intentionally promoted as having previously been "burned" or "removed" from the Namecoin blockchain.  Despite notice that their representations were false, McCoy and Sotheby's improperly orchestrated the marketing, promotion, advertisement, and sale of the Ethereum-*Quantum*, while causing damage to Free Holdings, the owner of the Namecoin-*Quantum*.

## THE PARTIES

20.     Plaintiff Free Holdings Inc. is a Canadian corporation with its principal place of business in the Province of Ontario, Canada.

21.     Upon information and belief, defendant Kevin McCoy is an individual residing in New York.

22.     Upon information and belief, Sotheby's Inc. is a New York corporation with its principal place of business in New York.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and cost.

24.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's Lanham Act claim arises under 15 U.S.C. § 1125(a).

25.     This Court has jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

26.     Venue is proper within this district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and/or omissions giving rise to these claims occurred within the district.

## THE FACTS

### The Namecoin Blockchain

27.     A blockchain is a digital public ledger maintained on a decentralized computer system and consisting of records called blocks.

28.     Blockchains are known for their roles in cryptocurrency systems, and are valued for their ability to maintain secure and decentralized records of transactions.

29.     NFTs are tokens that authenticate digital content via blockchain technology.

30.     Whereas cryptocurrencies are fungible, NFTs are non-fungible, which means that no two NFTs are the same.

31.     The blockchain's record-keeping and authentication technology serves to provide public certificates of authenticity or proof of ownership of NFTs.

32.     The content linked to NFTs can take the form of digital images of physical objects, music, text, and more.

33.     The non-fungible nature of NFTs, combined with the authentication power of the blockchain, has given rise to a burgeoning NFT art and collectibles market.

5

34.     NFT sales reached record numbers in 2021, approaching $25 billion in sales.[2]

35.     The Namecoin blockchain was originally created in 2011 as a "fork" of the Bitcoin blockchain.  A "fork" refers to a change in the blockchain protocol that results in new branches, one that follows the previous protocol, and one that follows the new version.  In the case of Namecoin, unlike the Bitcoin blockchain, the added functionality included the ability of each Namecoin record to store data within its blockchain records.  This allows Namecoin records to be used like domain names, or to contain other values, such as references to external images that allow them to act as NFTs.

**The Quantum NFT**

36.     In 2014, Kevin McCoy minted an NFT titled, *Quantum,* on the Namecoin blockchain.

37.     The Namecoin-*Quantum* is considered the first NFT ever created.

38.     The Namecoin-*Quantum* contains the following in its metadata description:

I assert title to the file at the URL http://static.mccoyspace.com/gifs/quantum.gif with the creator's public announcement of it's publishing at the URL https://twitter.com/mccoyspace/status/462320426719641600 The file whose SHA256 hash is d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a is taken to be the file in question. Title transfers to whoever controls this blockchain entry.[3]

---

[2] Elizabeth Howcroft, *NFT Sales Hit $25 Billion in 2021, But Growth Shows Signs of Slowing*, Reuters (January 11, 2022 10:50 AM EST) https://www.reuters.com/markets/europe/nft-sales-hit-25-billion-2021-growth-shows-signs-slowing-2022-01-10/ [https://web.archive.org/web/20220422015222/https://www.reuters.com/markets/europe/nft-sales-hit-25-billion-2021-growth-shows-signs-slowing-2022-01-10/].
[3] Name d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a https://namebrow.se/name/d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a/ [https://web.archive.org/web/20211117005510/https://namebrow.se/name/d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a/] (last visited April 27, 2022).

39. The Namecoin blockchain requires a user who controls a Namecoin record to periodically update the record every 35,999 blocks. This period amounts to approximately 200-250 days.

40. If a user fails to update their record, control of that particular block record expires and can be claimed by another user.

41. On or around January 2015, McCoy failed to update the Namecoin-*Quantum* blockchain record, rendering the record free to claim.

42. On or around April 5, 2021, Free Holdings claimed the Namecoin-*Quantum* record on the Namecoin blockchain.

43. The title to the Namecoin-*Quantum* NFT is currently held by Free Holdings.[4]

**<u>FREE HOLDINGS ATTEMPTS TO CONTACT McCOY</u>**

44. Beginning around April 2021, Free Holdings began to repeatedly contact McCoy to discuss McCoy's sale of the Ethereum-*Quantum*, but received no communications in response.

45. Free Holdings first attempted to contact McCoy on April 6, 2021, using the Twitter handle @EarlyNFT:



---

[4] *See id.*

7

46.     Free Holdings again reached out to McCoy on Twitter on April 12, 2021, in order to discuss *Quantum*:



47.     Free Holdings made two further attempts to contact McCoy on April 30, 2021:



48.     Four days later, on May 3, 2021, Free Holdings again wrote to McCoy:



49.     On May 5, 2021, Free Holdings learned that Sotheby's was holding an auction that included McCoy's Ethereum-*Quantum*.

50.     On May 6, 2021, Free Holdings made its sixth attempt to contact McCoy about *Quantum*:



51.     McCoy never responded to any of Free Holdings' Twitter messages.

## THE *NATIVELY DIGITAL* AUCTION

52.     In or around May 2021, Sotheby's began marketing an art auction titled *Natively Digital: A Curated NFT Sale*, scheduled for June 2021.

9

53. The purpose of *Natively Digital* was to market for auction "some of the earliest" NFTs.[5]

54. Sotheby's included "Quantum by Kevin McCoy" as part of *Natively Digital*, and positioned and marketed the work as the first NFT ever created.

55. Specifically, McCoy and Sotheby's promoted the Ethereum-*Quantum* as a seminal, first-of-its-kind, artistic work to help raise excitement and draw bidders for the sale of the Ethereum-*Quantum* in particular and the *Natively Digital* auction in general.

56. McCoy stated that his idea for the Namecoin-*Quantum* was to create a work of art that represents "birth" and "provenance."[6] The artwork is more than just pulsing images of color. Rather, according to McCoy, the nature of the work lies in the immutable engraving of information to the Namecoin blockchain.

57. Indeed, McCoy described the Namecoin-*Quantum* as "an idea to use blockchain technology to create **indelible** provenance and ownership of digital images of this kind. *Quantum* was the first ever to be recorded in this way."[7]

58. Sotheby's describes the Ethereum-*Quantum* as "seismic," and its creation as the dawn of a new artistic era:

> In the long timeline of art, there are few works that serve as genesis blocks to their own chain of history. They are seismic forks in direction; forks that usher in new movements that block by block, mint by mint, usher in new art histories. These works close chapters on the art histories that came before, while anchoring a new

---

[5] *See Natively Digital: A Curated NFT Sale* https://www.sothebys.com/en/digital-catalogues/natively-digital-a-curated-nft-sale [https://web.archive.org/web/20220420040406/https://www.sothebys.com/en/digital-catalogues/natively-digital-a-curated-nft-sale] (last visited May 5, 2022).

[6] *See Quantum*, https://www.mccoyspace.com/project/125/
[https://web.archive.org/web/20220226234629/https://www.mccoyspace.com/project/125/] (last visited April 27, 2022).

[7] *Natively Digital: A Curated NFT Sale*, https://www.mccoyspace.com/exhibition/180/
[https://web.archive.org/web/20220125000732/https://www.mccoyspace.com/exhibition/180/] (last visited April 27, 2022) (emphasis added).

flowering of human creativity. These prime movers occupy a singular position in art history. They came first. Kevin McCoy's Quantum is such a work. **Minted on 2nd May 2014 21:27:35**, or more precisely Namecoin block 174923, the NFT era quietly dawned. What a noise it makes today.[8]

59.     Sotheby's further describes *Quantum* as "the most art historically important work in the history of NFTs."[9]

60.     Leading up to and throughout the course of the auction, McCoy and Sotheby's materially misrepresented the status of the Ethereum-*Quantum* and the Namecoin-*Quantum*.

61.     Sotheby's stated that the Ethereum-*Quantum* was minted on May 2, 2014, when the Ethereum-*Quantum* was actually minted on May 28, 2021.[10]

62.     Sotheby's further falsely stated that the Namecoin-*Quantum* had been "burned" or otherwise "removed" from the Namecoin blockchain.

63.     Sotheby's retained nameless, a company that specializes in NFTs and provides consulting services to help launch and manage NFT projects, to assist Sotheby's with its *Natively Digital* auction.

64.     nameless wrote condition reports for the works in the *Natively Digital* auction, including the condition report for the Ethereum-*Quantum*.

65.     The Ethereum-*Quantum* condition report that Sotheby's published in connection with the *Natively Digital* auction falsely states that the Namecoin-*Quantum* "was removed from the system after not being renewed, and was effectively burned from the chain."[11]

---

[8] *Natively Digital: A Curated NFT Sale/ Lot 2*, https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum
[https://web.archive.org/web/20220208083953/https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum] (last visited April 27, 2022) (emphasis in original).
[9] *Id.*
[10] *Id.*
[11] *Id.*

66.     In a video posted on the Sotheby's website promoting and marketing the Ethereum-*Quantum* and the *Natively Digital* auction, McCoy states that he originally minted *Quantum* on the Namecoin blockchain and that he "moved the original on chain data from a burned Namecoin token into a modern industry standard ERC-721 token, while preserving all of the original on chain information."[12]

67.     McCoy's statement is also false.

68.     A Namecoin blockchain record cannot be "removed," and the blockchain record for the Namecoin-*Quantum* has not been "removed" or "burned."

69.     The blockchain record for the Namecoin-*Quantum* remains active and under the control of Free Holdings.

70.     McCoy and Sotheby's promoted, marketed, and advertised their false and misleading claims concerning the Namecoin-*Quantum*, the Ethereum-*Quantum* and the *Natively Digital* auction throughout the United States using the Sotheby's website and other marketing materials.

71.     Free Holdings made repeated attempts to alert McCoy that Free Holdings owned title to the Namecoin-*Quantum*, and that the work had not been "burned" or "removed" from the Namecoin blockchain.

72.     Despite notice that Free Holdings controlled the Namecoin-*Quantum*, McCoy and Sotheby's continued to market the Namecoin-*Quantum* as having been "burned" or "removed" from the Namecoin blockchain.

---

[12] *Id.*

73.     McCoy and Sotheby's falsely and misleadingly represented that the Ethereum-*Quantum* they were selling was the same one claimed by Free Holdings in 2021. Specifically, Sotheby's described the Ethereum-*Quantum* as "[o]riginally minted on May 3, 2014 on Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."[13] This is a false and misleading statement because the Namecoin-*Quantum* is still extant on the Namecoin blockchain and requires no preservation.

74.     McCoy similarly stated that the Namecoin-*Quantum* had been "burned," but was now preserved on the Ethereum blockchain.[14]  This is also false and misleading because the Namecoin-*Quantum* has not been "burned" or "removed" from the Namecoin blockchain, and need not be preserved.

75.     McCoy and Sotheby's knew, or recklessly disregarded the fact, that the Namecoin-*Quantum* was extant, had not been "burned" or "removed" from the Namecoin blockchain, and was privately owned by Free Holdings.

76.     On June 1, 2021, Free Holdings made the first of six separate attempts to contact McCoy by email, alerting McCoy that Free Holdings owned the Namecoin-*Quantum* and asking to discuss the NFT.

77.     Sotheby's began its auction on June 3, 2021.

78.     Sotheby's ended its auction on June 10, 2021.

---

[13] *Natively Digital: A Curated NFT Sale/ Lot 2*, https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum [https://web.archive.org/web/20220208083953/https://www.sothebys.com/en/buy/auction/2021/natively-digital-a-curated-nft-sale-2/quantum] (last visited April 27, 2022).
[14] *Id.*

79.     On June 17, 2021, Sotheby's Senior Vice President, Caroline Moustakis ("Moustakis"), spoke with Free Holdings about *Quantum* on a phone call.  During that call, Free Holdings told Moustakis that the description that Sotheby's posted of its Ethereum-*Quantum* NFT was inaccurate and misleading because the Namecoin-*Quantum* had not been "burned" or "removed" from the Namecoin blockchain, but rather was still active and controlled by Free Holdings.  Free Holdings requested that Sotheby's make public statements to correct the record, including making a statement that the Namecoin-*Quantum* remains active and in private hands, was not listed for sale as part of Sotheby's auction, and that the item Sotheby's auctioned was in fact an authorized print of the Namecoin-*Quantum* token.

80.     Free Holdings sent an email to Moustakis on June 18, 2021, to memorialize their phone conversation and reiterate its request that Sotheby's correct the public record concerning Free Holdings' ownership of the Namecoin-*Quantum*.

81.     Neither Moustakis, nor any other Sotheby's representative, responded to Free Holdings' June 18, 2021 email.

82.     Sotheby's refused and/or failed to comply with Free Holdings' request to issue a statement to correct the public record concerning the status and existence of the Namecoin-*Quantum*.

**McCOY AND SOTHEBY'S UNJUSTLY PROFIT FROM THEIR FALSE STATEMENTS**

83.     McCoy and Sotheby's statements are materially false and misleading, and are likely to influence, and have influenced, the purchasing decision of the relevant consumer.

84.     On August 23, 2021, McCoy and Sotheby's sold the newly re-minted Ethereum-*Quantum* to Twitter user @Sillytuna for a reported sum of $1,472,000.

14

85. @SillyTuna is the Twitter account used and controlled by Alex Amsel ("Amsel").

86. On August 23, 2021, Amsel tweeted about his purchase of the Ethereum-*Quantum*: "First ever crypto art nft – Quantum has arrived chez Sillytuna.  Take that VISA!":



87. Despite repeated requests, and opportunities to do so, McCoy and Sotheby's have failed or refused to retract their false statements or issue public corrective statements.

88. On May 6, 2022, nameless retracted its condition report for the Ethereum-*Quantum* in the following statement issued on its Twitter account:



15

89. Rather than retract or issue corrective public statements, McCoy and Sotheby's continue to unjustly profit and trade on the false and misleading statements concerning the Namecoin-*Quantum* and the Ethereum-*Quantum*.

90. The false and misleading statements issued by Sotheby's about both the Namecoin-*Quantum* and the Ethereum-*Quantum*, as well as the false video statements by McCoy concerning the same, remain on the Sotheby's website to this day.

91. Sotheby's has used and continues to use its sale of the Ethereum-*Quantum* to establish itself as a legitimate vendor within the lucrative and growing NFT art and collectibles market.

92. Sotheby's used the *Natively Digital* auction to jump-start its digital art metaverse offerings. This includes the 2021 *Natively Digital* auction and its progeny, *Natively Digital 1.2: The Collectors*, and *Natively Digital 1.3: Generative Art*. Indeed, Sotheby's spawned an entire Metaverse brand, in part, based on the successful sale of the Ethereum-*Quantum*, which Sotheby's marketed, promoted, and advertised using false and misleading statements concerning the Namecoin-*Quantum* and the Ethereum-*Quantum*.

93. McCoy likewise touts his sale of the Ethereum-*Quantum* as the first NFT to establish himself within the NFT community and promote future projects.

94. McCoy's sale of the Ethereum-*Quantum* lead to national media exposure.

16

95.     On March 3, 2022, the New York Times published an article entitled *One Year After Beeple, the NFT Has Changed Artists.  Has It Changed Art?*  The article states: "That first NFT that Kevin [McCoy] created . . . sold last June at Sotheby's for $1.4 million."[15]

96.     On June 14, 2021, McCoy told a Fox Business television audience that the Ethereum-*Quantum* he sold was the world's first NFT, announced a new NFT project, and declared his intent to continue creating NFT artwork as part of his art practice.

97.     The chyron featured below Fox Business host Stuart Varney and McCoy, read "FIRST-EVER NFT 'QUANTUM' SOLD FOR $1.47 MILLION," and remained visible for the entirety of the interview.



98.     Free Holdings' Namecoin-*Quantum* NFT has significant value due to its status as the first NFT and such value is being significantly diminished by the false and misleading statements made by McCoy and Sotheby's.

99.     Free Holdings has incurred damages to repair the reputation to the Namecoin-*Quantum* as a result of McCoy and Sotheby's false and misleading statements, including formal requests that McCoy and Sotheby's issue corrective public statements.

---

[15] Blake Gopnik, *One Year After Beeple, the NFT Has Changed Artists.  Has It Changed Art?* (March 3, 2022) https://www.nytimes.com/2022/03/03/arts/design/nft-art-beeple.html?msclkid=eacb622dcf0a11ec93b64ee394548d56 (last accessed May 8, 2022).

100.    Free Holdings expended $5,311.49 seeking to have McCoy and Sotheby's issue public statements correcting their false and misleading claims.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment**

101.    Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth herein.

102.    Free Holdings is the rightful owner of the still-extant Namecoin-*Quantum* NFT.

103.    McCoy and Sotheby's falsely promoted, marketed, and advertised the Ethereum-*Quantum* as the first NFT.

104.    McCoy and Sotheby's promoted, marketed, and advertised the Ethereum-*Quantum* by falsely claiming that the Namecoin-*Quantum* had been "burned" or otherwise "removed" from the Namecoin blockchain.

105.    McCoy and Sotheby's statements concerning their Ethereum-*Quantum* and Free Holdings' Namecoin-*Quantum* are materially false and misleading.

106.    The Namecoin-*Quantum* pre-dates the Ethereum-*Quantum*, has not been "burned" or otherwise removed from the Namecoin blockchain, and is currently controlled and owned by Free Holdings.

107.    A justiciable controversy exists between Plaintiff Free Holdings and Defendants Sotheby's and McCoy concerning the existence or "burning" of the Namecoin-*Quantum* NFT.

108.    Free Holdings has no adequate remedy at law.

109.    As a result of the foregoing, Free Holdings seeks a judgment declaring that: (a) Free Holdings is the rightful owner of the Namecoin-*Quantum*; (b) the Namecoin-*Quantum* has not been "burned" or otherwise "removed" from the Namecoin blockchain; and (c) the

18

statements issued by McCoy and Sotheby's in connection with their sale of the
Ethereum-*Quantum* were false and misleading.

## SECOND CAUSE OF ACTION
### Unjust Enrichment Against McCoy and Sotheby's

110.    Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth
herein.

111.    McCoy and Sotheby's have derived profits from the false and misleading
statements concerning the promotion, marketing, advertisement, and sale of the
Ethereum-*Quantum*.

112.    McCoy and Sotheby's continue to enrich themselves through future projects by
falsely promoting and marketing their successful sale of the Ethereum-*Quantum*.

113.    McCoy and Sotheby's profits are obtained at Free Holdings' expense.

114.    It is against equity and good conscience to permit McCoy and Sotheby's to retain
the profits they obtained through the sale of the Ethereum-*Quantum*, as well as the profits they
derive from projects marketed and promoted on the basis of the sale of the Ethereum-*Quantum*.

115.    As a result of the foregoing, Free Holdings has suffered and will continue to
suffer damages.

116.    The amount by which McCoy and Sotheby's have been unjustly enriched will be
proven at trial but is not less than $1,472,000, together with interest thereon.

## THIRD CAUSE OF ACTION
### Slander of Title Against McCoy and Sotheby's

117.    Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth
herein.

118.    McCoy and Sotheby's made false and misleading statements about the status of both the Namecoin-*Quantum* NFT and the Ethereum-*Quantum* NFT.

119.    McCoy and Sotheby's falsely stated that the Namecoin-*Quantum* was "burned" or otherwise "removed" from the Namecoin blockchain.

120.    McCoy and Sotheby's further falsely stated that the Ethereum-*Quantum* NFT they sold at auction was the first NFT ever created.

121.    McCoy and Sotheby's refused and/or failed to issue corrective public statements, and continue to describe the Ethereum-*Quantum* they sold as the world's first NFT, and also maintain that the Namecoin-*Quantum* has been "burned," in order to promote future projects and establish their brands within the NFT art and collectibles market.

122.    McCoy and Sotheby's statements are materially false and misleading.

123.    The Namecoin-*Quantum* pre-dates the Ethereum-*Quantum*, has not been "burned," and is currently controlled and owned by Free Holdings.

124.    McCoy and Sotheby's statements were reasonably calculated to cause harm to Free Holdings and/or were made with reckless disregard for the truth.

125.    As a direct and proximate cause, Free Holdings has incurred special damages.

126.    As a result of the foregoing, Free Holdings seeks judgment against McCoy and Sotheby's in an amount to be determined at trial and estimated to exceed $5,311.49, plus interest and attorney's fees as allowed by law.

## FOURTH CAUSE OF ACTION
### Deceptive and Unlawful Trade Practices GBL § 349 Against McCoy and Sotheby's

127.    Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth herein.

20

128.     McCoy and Sotheby's engaged in consumer-oriented conduct by marketing and promoting the Ethereum-*Quantum* as the first NFT ever created in order to draw more and higher bids for the Ethereum-*Quantum*, the *Natively Digital* auction, additional and/or future *Natively Digital* auction series', and the Sotheby's Metaverse brand.

129.     McCoy and Sotheby's continue to engage in consumer-oriented conduct by marketing and promoting themselves and their auctions and projects on the basis of the false statements they issued about the Namecoin-*Quantum* and Ethereum-*Quantum*.

130.     McCoy and Sotheby's falsely stated that the Namecoin-*Quantum* was "burned" or otherwise "removed" from the Namecoin blockchain.

131.     McCoy and Sotheby's further falsely stated that the Ethereum-*Quantum* NFT they sold at auction was the first NFT ever created.

132.     McCoy and Sotheby's statements are materially false and misleading.

133.     The Namecoin-*Quantum* pre-dates the Ethereum-*Quantum*, has not been "burned," and is currently controlled and owned by Free Holdings.

134.     McCoy and Sotheby's refused and/or failed to issue corrective public statements.

135.     Free Holdings notified McCoy and Sotheby's that Free Holdings controlled the *Quantum* NFT on the Namecoin blockchain, and that the Namecoin-*Quantum* had not been "burned" or "removed" from the Namecoin blockchain.

136.     McCoy and Sotheby's sold the Ethereum-*Quantum* NFT for $1,472,000.

137.     McCoy and Sotheby's false statements have caused Free Holdings damages.

138.     If the defendant acted willfully or knowingly, punitive damages may be awarded.  Treble damages are available where a defendant's actions were intentionally fraudulent.

139.     The value of the Namecoin-*Quantum* NFT owned by Free Holdings has been significantly damaged as a result of all Defendants' statements and conduct.

**FIFTH CAUSE OF ACTION**
**Commercial Disparagement Against McCoy and Sotheby's**

140.     Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth herein.

141.     McCoy and Sotheby's made false and misleading statements about the status of both the Namecoin-*Quantum* NFT and the Ethereum-*Quantum* NFT.

142.     McCoy and Sotheby's falsely stated that the Namecoin-*Quantum* was "burned" or otherwise "removed" from the Namecoin blockchain.

143.     McCoy and Sotheby's further falsely stated that the Ethereum-*Quantum* NFT they sold at auction was the first NFT ever created.

144.     McCoy and Sotheby's refused and/or failed to issue corrective public statements, and continue to describe the Namecoin-*Quantum* as having been "burned," and the Ethereum-*Quantum* that they sold as the world's first NFT, in order to promote future projects and establish their brands within the NFT art and collectibles market.

145.     McCoy and Sotheby's statements are materially false and misleading.

146.      The Namecoin-*Quantum* pre-dates the Ethereum-*Quantum*, has not been "burned," and is currently controlled and owned by Free Holdings.

22

147.    McCoy and Sotheby's statements were reasonably calculated to cause harm to Free Holdings and/or were made knowingly or with reckless disregard for the truth.

148.    As a direct and proximate cause, Free Holdings has incurred special damages. As a result of the foregoing, Free Holdings seeks judgment against McCoy and Sotheby's in an amount to be determined at trial and estimated to exceed $5,311.49, plus interest and attorney's fees as allowed by law.

**SIXTH CAUSE OF ACTION**
**15 U.S.C. § 1125(a) Lanham Act Claim Against McCoy and Sotheby's**

149.    Free Holdings repeats and realleges Paragraphs 1 through 100 as if fully set forth herein.

150.    McCoy and Sotheby's issued statements about the status of both the Namecoin-*Quantum* NFT and the Ethereum-*Quantum* NFT that were false or misleading representations, descriptions, or designations of origin.

151.    McCoy and Sotheby's falsely stated that the Namecoin-*Quantum* was "burned" or otherwise "removed" from the Namecoin blockchain.

152.    McCoy and Sotheby's further falsely stated that the Ethereum-*Quantum* NFT they sold at auction was the first NFT ever created.

153.    The Namecoin-*Quantum* pre-dates the Ethereum-*Quantum*, has not been "burned," and is currently controlled and owned by Free Holdings.

154.    McCoy and Sotheby's false or misleading representations, descriptions, or designations of origin were used in commercial advertisements or promotions in order to market, promote, and advertise the sale of the Ethereum-*Quantum* and the *Natively Digital* auction.

23

155. McCoy and Sotheby's false or misleading representations, descriptions, or designations of origin deceived or was likely to mislead or confuse consumers.

156. McCoy and Sotheby's false or misleading representations, descriptions, or designations of origin were used to promote, market, and advertise the sale of the Ethereum-*Quantum* and the *Natively Digital* auction in interstate commerce.

157. McCoy and Sotheby's advertisement and sale of the Ethereum-*Quantum* in the *Natively Digital* auction left a false impression on consumers, namely that the NFT sold in the *Natively Digital* Auction was the "first-ever" NFT.

158. McCoy and Sotheby's false or misleading representations, descriptions, or designations of origin caused damage to Free Holdings in an amount to be determined at trial, but not less than $1,472,000.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a) on Count I, declaring and adjudicating that (i) Free Holdings is the rightful owner of the Namecoin-based *Quantum*; (ii) the Namecoin-*Quantum* has not been burned or otherwise removed from the Namecoin blockchain; and (iii) the statements issued by McCoy and Sotheby's in connection with their sale of the Ethereum-*Quantum* were false and misleading.

(b) on Count II, damages against Defendants in an amount to be determined at trial;

(c) on Count III, damages against Defendants in an amount to be determined at trial; including damages provided under GBL § 349, including treble and or punitive damages;

(d) on Count IV, damages against Defendants in an amount to be determined at trial;

(e) on Count V, damages against Defendants in an amount to be determined at trial;

(f) on Count VI, damages against Defendants in an amount to be determined at trial; including damages under 15 U.S.C. § 1117 for profits, damages and costs, and attorneys' fees;

24

(g)      On Counts I, II, III, IV, V, and VI a preliminary and permanent injunction enjoining and restraining Defendants and their respective officers, directors, agents, servants, employees, and attorneys, as well as those in active concert and participation with them from advertising, marketing, or otherwise promoting the Namecoin-*Quantum* as having been "burned" or otherwise removed from the Namecoin blockchain, as well enjoining Defendants from advertising, marketing, otherwise promoting the sale of the Ethereum-*Quantum* NFT as the world's first NFT;

(h)      On Counts I, II, III, IV, V, and VI injunctive relief requiring Defendants to engage in corrective advertising, including but not limited to making public statements and creating corrective advertising in major industry publications, and direct communication with any persons who are known to have purchased the Ethereum-*Quantum* NFT, or sold or bid on its sale;

(i)      all costs, disbursements, and attorney's fees incurred in connection with this action; and

(j)      such other and further relief under law or equity as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.**

Dated:  May 9, 2022

Respectfully submitted,

**FALCON RAPPAPORT & BERKMAN PLLC**

*Attorneys for Plaintiff*

By: /s/Moish Peltz
Moish E. Peltz, Esq.
Kenneth J. Falcon, Esq.
Steven C. Berlowitz, Esq.
265 Sunrise Highway, Suite 50
Rockville Centre, NY 11570
Telephone: (516) 599-0888
mpeltz@frblaw.com
kfalcon@frblaw.com
sberlowitz@frblaw.com