**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |
|---|
| FREE HOLDINGS INC., |
| Plaintiff, |
| -against- |
| KEVIN McCOY and SOTHEBY'S INC., |
| Defendants. |

ECF CASE

Case No.: 1:22-cv-00881 (LGS) (JLC)

### DEFENDANT KEVIN McCOY'S MEMORANDUM
### OF LAW IN SUPPORT OF HIS MOTION TO DISMISS

William L. Charron
Robert J. deBrauwere
Nicholas Saady
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for Defendant Kevin McCoy*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT ALLEGATIONS AND FACTS ................................................................... 2

    McCoy's Creation Of The 2014 NFT .................................................................. 2

    Plaintiff Admits That Every NFT Is Unique ...................................................... 3

    Plaintiff's Misdescription Of The Namecoin Protocol ...................................... 4

    Plaintiff's Title Claim Is Illusory ...................................................................... 5

    The Namecoin Namespace Report ..................................................................... 6

    The Allegedly "False And Misleading" Auction Marketing Statements ........... 7

    Plaintiff Pleads No Special Damages ................................................................. 8

    Procedural History .............................................................................................. 9

SUMMARY OF PLAINTIFF'S CLAIMS TO BE DISMISSED .................................... 9

STANDARDS OF REVIEW .......................................................................................... 10

    The Standard Under Fed. R. Civ. P. 12(b)(1) .................................................. 10

    The Standard Under Fed. R. Civ. P. 12(b)(6) .................................................. 10

ARGUMENT ................................................................................................................... 11

    I.      PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE ...................................... 11

          A.    Plaintiff Lacks Standing .................................................................... 11

          B.    Plaintiff's Claims Are Not Ripe .......................................................... 13

    II.    PLAINTIFF'S SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT SHOULD BE DISMISSED ................................... 14

          A.    Plaintiff Does Not Plausibly Allege Enrichment At Plaintiff's Expense ............................................................................... 14

          B.    Plaintiff Does Not Allege A Close Connection Between Itself And McCoy ................................................................. 15

    III.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR SLANDER OF TITLE SHOULD BE DISMISSED ................................................................ 16

          A.    Plaintiff Does Not Allege Malice By McCoy .................................... 16

B.    Plaintiff Does Not Allege Special Damages ............................................. 17

IV.    PLAINTIFF'S FOURTH CAUSE OF ACTION FOR VIOLATION OF N.Y. G.B.L. § 349 SHOULD BE DISMISSED ............................................................................................. 20

V.    PLAINTIFF'S FIFTH CAUSE OF ACTION FOR COMMERCIAL DISPARAGEMENT SHOULD BE DISMISSED ............................................................................................. 22

VI.    PLAINTIFF'S SIXTH CAUSE OF ACTION FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT SHOULD BE DISMISSED ......................................................... 22

A.    Plaintiff Fails To Allege That McCoy Made Any Literally Or Impliedly False Statements .................................................. 23

B.    Plaintiff Has Not Viably Pleaded Causation Of Harm ........................... 25

VII.    PLAINTIFF'S FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED ........................ 25

CONCLUSION .................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Clapper*,
  785 F.3d 787 (2d Cir. 2015)................................................................................11

*Aleem v. Experience Hendrix, L.L.C.*,
  No. 16 CIV. 9206 (ER), 2017 WL 3105870 (S.D.N.Y. July 20, 2017)..................19

*Angio-Med. Corp. v. Eli Lilly & Co.*,
  720 F. Supp. 269 (S.D.N.Y. 1989) ......................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................10

*Bilinksi v. Keith Haring Found., Inc.*,
  632 F. App'x 637 (2d Cir. 2015) .....................................................................18, 19

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016)....................................................................................10

*Chamila, LLC v. Pandora Jewelry, LLC*,
  No. 04-CV-6017 (KMK), 2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007) ............17

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
  790 F.3d 411 (2d Cir. 2015)..................................................................................12

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018)...................................................................23

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*,
  No. 15 Civ. 8775 (LGS), 2016 WL 6310777 (S.D.N.Y. Oct. 27, 2016) ...............19

*Doe v. Quest Diagnostics, Inc.*,
  No. 15 CIV. 8992 (LGS), 2017 WL 1102663 (S.D.N.Y. Mar. 23, 2017) ........10, 11

*Doyle v. Allstate Ins. Co.*,
  1 N.Y.2d 439 (1956) .............................................................................................18

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016)...................................................................18

*Ferraro v. Seamen's Church Inst. of N.Y. and N.J.*,
    2007 NY Slip Op 52470(U), 18 Misc. 3d 1108(A) (Sup. Ct., N.Y. Cty.,
    Dec. 3, 2007) ..................................................................................................................18

*Fink v. Shawangunk Conservancy, Inc.*,
    15 A.D.3d 754 (3d Dep't 2005) ......................................................................................17

*Fitzgerald v. Thompson*,
    353 F. App'x 532 (2d Cir. 2009) ....................................................................................12

*Gambles v. Sterling Infosystems, Inc.*,
    234 F. Supp. 3d 510 (S.D.N.Y. 2017) .......................................................................11, 12

*Genesco Entm't, Div. of Lymutt Indus., Inc. v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) ................................................................................20

*Georgia Malone & Co., Inc. v. Rieder*,
    19 N.Y.3d 511 (2012) ...............................................................................................14, 15

*Groden v. Random House, Inc.*,
    61 F.3d 1045, 1051 (2d Cir. 1995)..................................................................................25

*Grosz v. Museum of Modern Art*,
    772 F. Supp. 2d 473 (S.D.N.Y. 2010) ............................................................................11

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) ............................................................................18

*Karlin v. IVF Am., Inc.*,
    93 N.Y.2d 282 (1999) .....................................................................................................20

*Kirby v. Wildenstein*,
    784 F. Supp. 1112 (S.D.N.Y. 1992)...........................................................................17, 18

*Lokai Holdings, LLC v. Twin Tiger USA, LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018).............................................................................24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................................................11

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247, 255 (2d Cir. 2014)....................................................................................23

*Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*,
    960 F.2d 294 (2d Cir. 1992).......................................................................................23, 24

*Miller v. Walters*,
    997 N.Y.S.2d 237 (Sup. Ct. N.Y. Cnty. 2014) ..........................................................15, 21

iv

*Mini Theatres v. New Line Distrib.*,
    No. 98 CIV. 2997(SHS), 1998 WL 637465 (S.D.N.Y. Sept. 16, 1998) .............................6, 13

*National Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*,
    198 F. Supp. 2d 474 (S.D.N.Y. 2002) ....................................................................................21

*North Am. Olive Oil Ass'n v. D'Avolio Inc.*,
    457 F. Supp. 3d 207 (E.D.N.Y. 2020) ................................................................20, 21, 22, 25

*Peck v. Aponte*,
    880 F. Supp. 184 (S.D.N.Y. 1995) .........................................................................................13

*Raines v. Byrd*,
    521 U.S. 811, 818, (1997) ......................................................................................................11

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
    No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) ............................20

*Rosenbaum v. City of N.Y.*,
    8 N.Y.3d 1 (2006) ...........................................................................................................16, 17

*SM Kids, LLC v. Google LLC*,
    963 F.3d 206 (2d Cir. 2020)...............................................................................................4, 11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330, 340 (2016) .......................................................................................................12

*Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*,
    No. 96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24, 1997) .................................21

*Technomarine SA v. Jacob Time, Inc.*,
    905 F. Supp. 2d 482 (S.D.N.Y. 2012)...................................................................................10

*Teller v. Bill Hayes, Ltd.*,
    213 A.D.2d 141 (2d Dep't 1995) ...........................................................................................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)...................................................................................................24

*United States v. Broadcast Music, Inc.*,
    275 F.3d 168 (2d Cir. 2001)...................................................................................................13

*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)...................................................................................................13

*Wei Su & Hai Wang v. Sotheby's, Inc.*,
    No. 17-CV-4577 (VEC), 2019 WL 4917609 (S.D.N.Y. Oct. 4, 2019) ............................16, 17

*Williams v. GMAC Mortg., Inc*.,
 No. 13 Civ. 4315 (JPO), 2014 WL 2560605 (S.D.N.Y. June 6, 2014) ...................................11

*Worley v. Giuliani*,
 8 F. App'x 131 (2d Cir. 2001) ...............................................................................................12

**Statutes**

Lanham Act Section 43(a), 15 U.S.C. § 1125(a) ......................................................................9, 22

New York General Business Law § 349 .......................................................................9, 20, 21, 22

**Other Authorities**

Fed. R. Civ. P. 9(g) ......................................................................................................................18

Fed. R. Civ. P. 12 ...........................................................................................................................1

Maghan McDowell, "Why brands are burning NFTs," *Vogue Business*, Feb. 8, 2022
 (https://www.voguebusiness.com/technology/why-brands-are-burning-nfts) ........................24

Defendant Kevin McCoy ("McCoy") respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss plaintiff Free Holdings Inc.'s ("Plaintiff") Amended Complaint dated May 9, 2022 (ECF No. 47).  McCoy also respectfully joins and incorporates fully by reference the accompanying Fed. R. Civ. P. 12 motion to dismiss filed by co-defendant Sotheby's Inc. ("Sotheby's").

## PRELIMINARY STATEMENT

This case concerns property ownership of non-fungible tokens ("NFTs").  Plaintiff claims to own a NFT created by McCoy in 2014, which is "the first NFT ever created" (the "2014 NFT"). (ECF No. 47 at ¶ 37.)  Plaintiff's pleading, however, is sleight-of-hand and based upon implausible conclusions.  What Plaintiff actually alleges itself to own is a distinct NFT that it created *seven years later*, in 2021 (the "2021 NFT").  Plaintiff asks this Court to declare that its 2021 NFT is effectively the same asMcCoy's 2014 NFT.  Such pleading is implausible; indeed, Plaintiff admits in its pleading that "no two NFTs are the same."  (*Id.* at ¶ 30.)  Plaintiff is, in truth, asking the Court to endorse an attempted forgery or piracy of the 2014 NFT.  As explained below, Plaintiff's case should be dismissed because Plaintiff has not viably or plausibly alleged its ownership of the 2014 NFT, and therefore has not alleged standing.

Plaintiff's claims also suffer a ripeness problem.  Plaintiff complains that the promotion and sale of another NFT that McCoy created and sold through co-defendant Sotheby's in 2021 (the "*Quantum* NFT") may confuse potential future buyers into thinking that the 2014 NFT no longer exists, which may one day harm Plaintiff's efforts to sell its 2021 NFT.  Because each of these NFTs is different, Plaintiff's theory is a *non sequitur*.

But even putting that fact aside, Plaintiff alleges no immediacy or concreteness to this supposed problem.  In particular, Plaintiff does not allege that it has lost any sales opportunities of the 2021 NFT due to the possible confusion it has alleged – Plaintiff does not allege that it has

even *tried* to sell the 2021 NFT.  Nor does Plaintiff allege any evidence of consumer confusion. Plaintiff's claims are entirely speculative, hypothetical and unripe.

Moreover, Plaintiff's case should be dismissed with prejudice.  This is Plaintiff's second attempt to artfully plead a case against McCoy and Sotheby's.  Plaintiff was given an abundance of time to try.  Plaintiff has now shown that it cannot allege anything that could transform its 2021 NFT into McCoy's 2014 NFT.  Which makes perfect sense because every NFT is a *non-fungible* token.  No two NFTs are the same, exactly as Plaintiff alleges.

Plaintiff also used its time between its pleadings to try to manufacture new facts for its Amended Complaint.  Specifically, Plaintiff leveraged its agreement to voluntarily dismiss its initial complaint against another former co-defendant, nameless Corporation ("Nameless"), as a *quid pro quo* for Nameless retracting an independent consulting and condition report concerning the 2014 NFT, which Plaintiff alleges includes false or misleading statements.  Plaintiff's attempted contrivance of new facts does not create any actionable claims.  As explained below, and as further discussed in Sotheby's accompanying motion to dismiss (which McCoy incorporates by reference), all of Plaintiff's claims fail to state, and cannot state, necessary elements.  For these independent reasons as well, this case should be dismissed.

## RELEVANT ALLEGATIONS AND FACTS

### McCoy's Creation Of The 2014 NFT

McCoy created the 2014 NFT.  (ECF No. 47 at ¶¶ 2, 37.)[1]

---

[1] McCoy is an acclaimed digital artist, and his creation of the 2014 NFT in association with his *Quantum* digital artwork has received widespread attention in the art and collectibles world, including recently earning McCoy the honor of a 2022 Webby Lifetime Achievement Award "for developing a block-chain powered way for artists to own and monetize digital work, which laid the groundwork for what would be known as [n]on-fungible tokens (NFTs)." (https://winners.webbyawards.com/2022/specialachievement/301/anil-dash--kevin-mccoy.)

McCoy created the 2014 NFT using a blockchain known as Namecoin.  (*Id.* at ¶ 36.) Plaintiff alleges that a "blockchain is a digital public ledger maintained on a decentralized computer system and consisting of records called blocks."  (*Id.* at ¶ 27.)  In its initial Complaint, Plaintiff made the same allegation but included the statement that the blocks are "sequential records."  (ECF No. 1 at ¶ 15.)  In its Amended Complaint, Plaintiff deleted the term "sequential" from this allegation, but the fact nonetheless remains.

Plaintiff alleges that "NFTs are tokens that authenticate digital content via blockchain technology."  (ECF No. 47 at ¶ 29.)  "The content linked to NFTs can take the form of digital images of physical objects, music, text, and more."  (*Id.* at ¶ 32.)  Namecoin, therefore, is a digital public ledger that can be used to record NFTs, which themselves evidence the authenticity of other assets, such as digital art.  (*See id.*)  Plaintiff alleges that McCoy created, or "minted," the 2014 NFT to evidence the authenticity of his digital art known as *Quantum*.  (*See id.* at ¶¶ 2, 36.)[2]

**Plaintiff Admits That Every NFT Is Unique**

Plaintiff alleges that NFTs "are valued for their ability to maintain secure and decentralized records of transactions."  (*Id.* at ¶ 28.)  That is because, according to Plaintiff, "no two NFTs are the same."  (*Id.* at ¶ 30.)  "Whereas cryptocurrencies are fungible," the uniqueness and "non-fungible nature of NFTs," combined with the "blockchain's record-keeping and authentication technology," make NFTs valuable as tools of authentication.  (*Id.* at ¶¶ 30, 31, 33.)[3]

---

[2] Plaintiff mistakenly refers to the 2014 NFT as itself being "titled 'Quantum'".  (*Id.* at ¶ 36.)  *Quantum* is the digital artwork; the 2014 NFT is the blockchain record that McCoy created in association with that artwork.  In its initial Complaint, Plaintiff correctly distinguished between *Quantum* and "the Quantum blockchain record," which blockchain record Plaintiff alleged "is presumably the first known NFT."  (ECF No. 1 at ¶ 20.)  In its Amended Complaint, Plaintiff conflates *Quantum* with the 2014 NFT.

[3] In its initial Complaint, Plaintiff more concisely alleged that "each NFT is unique" and is "sequential[ly]" distinct from every other NFT within a blockchain. (ECF No. 1 at ¶¶ 1, 15.)  Plaintiff's amendment does not save its pleading; its allegation that "no two NFTs are the same" constitutes the same admission that the 2021 NFT created by Plaintiff is different from the 2014 NFT that McCoy created.

The 2014 NFT, therefore, is a unique record that exists in the Namecoin blockchain.  The 2014 NFT includes, *inter alia*, a unique transaction identification number, and a unique date and time stamp.  (Declaration of William L. Charron dated June 30, 2022 ("Charron Decl.") at Ex. B.)[4]

**Plaintiff's Misdescription Of The Namecoin Protocol**

Plaintiff relies upon it characterization of Namecoin's protocol as the integral basis for its theory that it owns and controls the 2014 NFT.  (*Id.* at ¶¶ 39-42.)  The Court may consider Namecoin's actual protocol (referred to as its "FAQ") on this motion.  *E.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 214 (2d Cir. 2020).  As the Court can see, Plaintiff seriously misdescribes that protocol.

Plaintiff alleges that Namecoin "requires a user who controls a Namecoin record to periodically update the record every 35,999 blocks" or "approximately 200-250 days."  (*Id.* at ¶ 39.)  Plaintiff then alleges that, "[i]f a user fails to update their record," then "control of that particular block record [sic] expires and can be claimed by another user."  (*Id.* at ¶ 40.)

That is *not* what Namecoin actually says.  Namecoin does not state that so-called "block records" (which is a term invented by Plaintiff) can expire and be claimed by others.  Namecoin states that "*registered names*" and "*namespaces*" chosen by users can expire and be claimed by others if those *names* are not periodically renewed or updated.  Namecoin states:

> *Registered names* semi-expire if they are not renewed or updated for 31,968 blocks (approximately 222 days).  If your *name* is semi-expired, it will stop resolving for your users until you renew or update it, but you are still the sole owner of *the name*.  Semi-expired *names that are not renewed or updated* for an additional 4,032 blocks (approximately 28 days) will expire.  *Expired names* can be re-registered by anyone.  There are no registration fees for renewals or updates, but a transaction fee does apply.  [Emphases supplied.]

(Charron Decl. Ex. A (https://www.namecoin.org/docs/faq/) (last accessed on June 28, 2022) at p.3/35.)

---

[4] In its initial Complaint, Plaintiff acknowledged that such unique metadata is "self-evident" from a public search of the 2014 NFT record in the Namecoin ledger.  (ECF No. 1 at ¶ 1.)

A name is associated with a record, but it is not the record itself.  Namecoin describes "namespaces" as "arbitrary binary blobs" that are created by users.  (*Id.* at p.6/35.)  Because of that fact, Namecoin also states that it "itself isn't aware of namespaces." (*Id.*)  Namecoin further expressly states that namespaces "*don't have any effect* on validation rules" which govern the ownership and control of records themselves.  (*Id.* (emphasis supplied).)  Critically, Plaintiff never alleges that it can or could control the 2014 NFT.

Thus, Plaintiff's allegation that control of a Namecoin namespace gives control and ownership of all records (including NFTs) that were once associated with that namespace is not only implausible, it is demonstrably false.

**Plaintiff's Title Claim Is Illusory**

Plaintiff alleges that "McCoy failed to update the Namecoin-*Quantum* record on the Namecoin blockchain" in January 2015, "rendering the *record* free to claim."  (ECF No. 47 at ¶ 41 (emphasis supplied).)  Plaintiff alleges that it "claimed the Namecoin-*Quantum* record on the Namecoin blockchain" on or around April 5, 2021.  (*Id.* at ¶ 42.)  Plaintiff alleges that "title to the Namecoin-*Quantum* NFT [the 2014 NFT] is currently held by Free Holdings."  (*Id.* at ¶ 43.)

Plaintiff would thus have the Court accept that the 2014 NFT "blockchain record" expired and was free to claim after January 2015 – as if McCoy abandoned the 2014 NFT like used furniture on the side of the road with a sign saying 'Free To Take.'  But, as Namecoin's actual protocol provides, McCoy only allowed the Namecoin *namespace* associated with the 2014 NFT to be registered by someone else.  Plaintiff's alleged new registration in 2021 of the namespace that McCoy had used in connection with the 2014 NFT "d[id]n't have any effect" on the validation rules which govern the ownership and control of the 2014 NFT.  (*See* Charron Decl. Ex. __.)[5]

---

[5] Plaintiff alleges that "Namecoin records [can] be used like domain names, or … act as NFTs."  (*Id.* at ¶ 35.)  Regardless of whether that is a fair and accurate characterization or not, only "expired names" or "namespaces" can be re-registered by different users according to Namecoin's protocol.

**The Namecoin Namespace Report**

Plaintiff cites certain metadata that McCoy included in the 2014 NFT (in the "Value" field), which states, in relevant part:

> I [McCoy] assert title to the file at the URL http://staticmccoyspace.com/gifs/quantum.gif [*i.e.*, the *Quantum* artwork] .... Title transfers to whoever controls this blockchain entry [*i.e.*, the 2014 NFT].

(ECF No. 47 at ¶ 38.)  Plaintiff includes a footnoted citation to this paragraph of its pleading, which links to a historical report of the Namecoin namespace associated with the 2014 NFT (the "Namespace Report").  (*Id.* at ¶ 38 n.3; Charron Decl. Ex. B.)  The Namespace Report is illuminating – indeed, it is dispositive.

The Namespace Report recites all "Name operations" associated with this namespace that have occurred over time.  (Charron Decl. Ex. B.)  The name operations began on May 2, 2014, at 11:33 p.m.  (*Id.*)  That is when McCoy registered the namespace that he would use in association with the 2014 NFT, indicated by the "Operation" description:  "NAME_NEW" with a unique "Value" description.  (*Id.*; *accord* ECF No. 47 at ¶ 36.)  The next day, May 3, 2014, at 1:27 a.m., McCoy performed his "NAME_ FIRSTUPDATE" operation, which was the first update to that namespace and which added McCoy's unique metadata that created the 2014 NFT.  (Charron Decl. Ex. B.)

The next namespace transaction occurred *seven years later*, on April 5, 2021, at 7 a.m.  (*Id.*)  That is when Plaintiff allegedly claimed the namespace and created a *new* NFT (the 2021 NFT), indicated by the operation description:  "NAME_NEW," with a *different* "Value" description.  (*Id.*; *accord* ECF No. 47 at ¶ 42.)  Later that same day, at 12:14 p.m., Plaintiff performed its own "NAME_ FIRSTUPDATE" operation to its "NEW" NFT, in which Plaintiff performed its own *first* update to *that* NFT.  (Charron Decl. Ex. B.)  Plaintiff then proceeded to perform multiple, further "NAME_UPDATE" operations – no longer the "<u>FIRST</u>UPDATE"

operation – to its "NEW" NFT on April 30, 2021, June 7, 2021, June 14, 2021, and February 10, 2022.  (*Id.*)  In particular, on April 30, 2022, Plaintiff copied the "Value" field metadata from the 2014 NFT into the 2021 NFT.  (*Id.*)

The Namespace Report is conclusive that the 2021 NFT copies, but is nonetheless distinct from, the 2014 NFT – which accords with Plaintiff's admission that "no two NFTs are the same." (ECF No. 47 at ¶ 30.)  That is why Plaintiff's effort to have this Court equate the 2021 NFT with the 2014 NFT is best described as attempted forgery or piracy.

**The Allegedly "False And Misleading" Auction Marketing Statements**

Plaintiff alleges that, "[l]eading up to and throughout the course of the auction" of the *Quantum* NFT by Sotheby's in the fall of 2021, "McCoy and Sotheby's materially misrepresented the status of [the *Quantum* NFT] and [the 2014 NFT]."  (ECF No. 47 at ¶ 60.)  Specifically, Plaintiff alleges that "Sotheby's retained [former co-defendant Nameless] … to assist Sotheby's with its [] auction," and that Nameless "wrote condition reports for the works in the [] auction, including the condition report for [the *Quantum* NFT]."  (*Id.* at ¶¶ 63-64.)  That condition report, *written by Nameless*, allegedly "falsely state[d] that the [2014 NFT] 'was removed from the system after not being renewed, and was effectively burned from the chain.'"  (*Id.* at ¶ 65.)  Plaintiff alleges that "[a] Namecoin blockchain record cannot be 'removed,' and the blockchain record for the [2014 NFT] has not been 'removed' or 'burned.'"  (*Id.* at ¶ 68.)

Plaintiff further alleges that, following Nameless's issuance of its independent consulting and condition report, Sotheby's later posted a video on its website "promoting and marketing the … auction," in which "McCoy states that he originally minted [the 2014 NFT] on the Namecoin blockchain and that he 'moved the original on chain data from a burned Namecoin token into a modern industry standard ERC-721 token [*i.e.*, the *Quantum* NFT], while preserving all of the original on chain information.'"  (*Id.* at ¶ 66.)  Because McCoy used one of the same terms as

Nameless had used in its consulting and condition report (*i.e.*, "burned"), Plaintiff alleges that "McCoy's statement is also false." (*Id.* at ¶ 67.)

Plaintiff alleges that it "made repeated attempts to alert McCoy … that the [2014 NFT] had not been 'burned' or 'removed' from the Namecoin blockchain," and to request that those allegedly false statements be "retract[ed]" or that "public corrective statements" be issued. (*Id.* at ¶¶ 71-87.) Plaintiff then alleges, however, that on May 6, 2022, "nameless retracted its condition report" that had referred to the 2014 NFT as having been "removed" and "burned." (*Id.* at ¶ 88.) Plaintiff also alleges that Nameless publicized its retraction of those statements. (*Id.*) Coincident thereto, Plaintiff dismissed its claims against Nameless (as an obvious *quid pro quo*). (ECF Nos. 46, 48.)[6]

**Plaintiff Pleads No Special Damages**

Plaintiff vaguely alleges that "the value [of the 2021 NFT] is being significantly diminished by the false and misleading statements made by McCoy and Sotheby's" that were made in promoting Sotheby's auction of the *Quantum* NFT. (ECF No. 47 at ¶ 98.) Plaintiff alleges that it "has incurred damages to repair the reputation to [the 2021 NFT] as a result of McCoy and Sotheby's false and misleading statements." (*Id.* at ¶ 99.) Plaintiff further alleges that it "expended $5,311.49 seeking to have McCoy and Sotheby's issue public statements correcting their false and misleading claims." (*Id.* at ¶ 100.) Nevertheless, Plaintiff does not allege that it lost any specific sales opportunities, or that it has ever tried to sell the 2021 NFT, or that the 2021 NFT has ever held any specific value.

---

[6] While Nameless retracted its condition report, Nameless also expressly stated "'no opinion about the merits of [Plaintiff's] allegations'" in this case. (ECF No. 47 at ¶ 88.) That statement of non-opinion by Nameless makes clear that its condition report retraction was not merits-based, but was simply a bargain struck by Nameless to quickly and easily get out of this case. Thus, Plaintiff did nothing more than improperly leverage the mere existence of this spurious lawsuit to pressure Nameless to retract its condition report.

**Procedural History**

Plaintiff filed its initial Complaint on February 1, 2022.  (ECF No. 1.)  McCoy filed a pre-motion to dismiss letter with the Court on April 1, 2022, identifying many of the same points discussed in detail below as bases for dismissal.  (ECF No. 34.)  In response, Plaintiff elected to file its Amended Complaint, which dismisses two of the initially named defendants.  (ECF Nos. 24, 24, 44, 46-48.)

## SUMMARY OF PLAINTIFF'S CLAIMS TO BE DISMISSED

As explained below, each of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction (justiciability).  Each claim should be dismissed for the following independent reasons as well:

- Plaintiff's First Cause of Action for declaratory judgment should be dismissed because there is no "actual controversy."

- Plaintiff's Second Cause of Action for unjust enrichment should be dismissed because Plaintiff fails to allege any enrichment of McCoy at Plaintiff's expense.  Nor does Plaintiff allege a sufficiently close relationship (or any relationship at all) between itself and McCoy.

- Plaintiff's Third Cause of Action for slander of title should be dismissed because, in addition to failing to viably state that Plaintiff holds title to the 2014 NFT, and in addition to complaining about protected speech (as discussed in Sotheby's accompanying and incorporated motion to dismiss), Plaintiff fails to allege special damages.

- Plaintiff's Fourth Cause of Action for violation of New York General Business Law ("GBL") § 349 should be dismissed because Plaintiff fails to allege any generalized, consumer-oriented misconduct by McCoy.

- Plaintiff's Fifth Cause of Action for commercial disparagement should be dismissed because, again, Plaintiff complains about protected speech and because Plaintiff fails to particularize special damages.  Plaintiff also fails to allege that McCoy made any disparaging statements directed at Plaintiff or its 2021 NFT.

- Plaintiff's Sixth Cause of Action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), should be dismissed because Plaintiff does not allege any literally or impliedly false statements of fact by McCoy.  Plaintiff also fails to allege any causation of harm.

**STANDARDS OF REVIEW**

**The Standard Under Fed. R. Civ. P. 12(b)(1)**

On a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint," but it cannot "draw inferences from the complaint favorable to plaintiffs." *Doe v. Quest Diagnostics, Inc.*, No. 15 CIV. 8992 (LGS), 2017 WL 1102663, at *2 (S.D.N.Y. Mar. 23, 2017) (citations omitted). In particular, a plaintiff "cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." *Id.* (citations omitted). The court may consider evidence extrinsic to the pleading to determine whether subject matter jurisdiction actually exists. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

**The Standard Under Fed. R. Civ. P. 12(b)(6)**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

"'[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.'" *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 491-93 (S.D.N.Y. 2012) (citation omitted) (finding "no plausible claim for trademark infringement or false

10

designation of origin" where complaint did not address "why differences in packaging are material" and did not plausibly allege "interference with warranty coverage").

On a Rule 12(b)(6) motion, the Court's review is limited to the Complaint, documents incorporated by reference, documents that are "integral" even if not incorporated, and judicially noticeable facts. *Williams v. GMAC Mortg., Inc.*, No. 13 Civ. 4315 (JPO), 2014 WL 2560605, at *1 (S.D.N.Y. June 6, 2014) (internal quotations omitted). A document is "integral" where the pleading relies heavily upon its terms and effect. *Id.*; *accord SM Kids*, 963 F.3d at 214; *Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 497 (S.D.N.Y. 2010) (plaintiffs could not avoid dismissal by failing to include integral document).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE

All of Plaintiff's claims should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiff lacks standing and because its alleged claims are not ripe.

### A.   Plaintiff Lacks Standing

Every plaintiff "must, among other things, establish that they have standing to sue." *ACLU v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (citing *Raines v. Byrd*, 521 U.S. 811, 818, (1997)); *accord Doe*, 2017 WL 1102663, at *2.

To establish standing, a plaintiff must viably allege that it has suffered an actual or imminent injury-in-fact to a "legally protected interest" that is concrete and particularized. *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The alleged injury "must be 'de facto'; that is, it must actually exist." *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510,

517-18 (S.D.N.Y. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).  It must also be likely that a favorable decision for the plaintiff in the case will redress the injury alleged.  *Id.*

Plaintiff has not viably or plausibly alleged any injury-in-fact and standing to sue.  As explained above, Plaintiff alleges itself to own a *different* and "NEW" NFT rather than the 2014 NFT.  The 2021 NFT that Plaintiff owns includes certain metadata that Plaintiff copied from the 2014 NFT, but it is distinct from the 2014 NFT; as Plaintiff admits, "no two NFTs are the same." (ECF No. 47 at ¶ 30.)

Plaintiff's reliance on its alleged new registration of the same Namecoin namespace that McCoy used in connection with the 2014 NFT is misplaced.  That new registration does nothing more than make Plaintiff the current user of that *namespace*.  Plaintiff has not plausibly alleged that its right to use a Namecoin namespace granted Plaintiff title to and control over the 2014 NFT itself (indeed, such a theory is nonsensical and contrary to Namecoin's protocol).  *See, e.g.*, *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015) (holding that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.") (citation and internal quotations omitted).

Therefore, Plaintiff has not plausibly alleged that it controls and holds title to the 2014 NFT. As such, Plaintiff's allegations that McCoy's sale of the *Quantum* NFT somehow harms the value of the 2014 NFT does not establish any injury-in-fact suffered by Plaintiff, or any standing to sue. This Court could not provide any redress that would transform the 2021 NFT that Plaintiff owns into the 2014 NFT.  *See, e.g.*, *Fitzgerald v. Thompson*, 353 F. App'x 532, 534 (2d Cir. 2009) (affirming dismissal for lack of standing because appellants failed to plead injury-in-fact where their "complaint failed to allege a property interest" in subject matter); *Worley v. Giuliani*, 8 F. App'x 131, 133 (2d Cir. 2001) (finding that plaintiffs failed to establish standing because they had no legal right or interest in property at issue (a garden) and their claims were insufficiently "based

on the effect the absence of the garden will have on the area community"); *W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (finding that plaintiff lacked standing because plaintiff's client, who suffered the relevant injuries giving rise to the relevant claims, did "not transfer[] ownership of, or title to, their claims to" the plaintiff).

Accordingly, all of Plaintiff's claims should be dismissed for lack of standing.

### B.   Plaintiff's Claims Are Not Ripe

"An issue is ripe for judicial resolution only if it presents a real, substantial controversy, not a mere hypothetical question." *United States v. Broadcast Music, Inc.*, 275 F.3d 168, 178 (2d Cir. 2001) (citation and internal quotations omitted); *accord Peck v. Aponte*, 880 F. Supp. 184, 185 (S.D.N.Y. 1995) (explaining that ripeness requires "definite and concrete issues involved which cannot be based on a hypothetical dispute," and "[i]n the end, the question becomes whether there is a substantial controversy of sufficient immediacy and reality to warrant judicial intervention" so that the "case can be decided on the merits given the current situation.") (citations omitted); *Mini Theatres v. New Line Distrib.*, No. 98 CIV. 2997(SHS), 1998 WL 637465, at *2 (S.D.N.Y. Sept. 16, 1998) (finding that declaratory judgment claim concerning meaning of contract provision was not ripe and sought improper advisory opinion where plaintiff had not yet signed the contract and there was thus no "substantial controversy" between the parties "of sufficient immediacy and reality" to warrant adjudication because "[a]ny harm that may arise … [is] necessarily speculative.") (citations omitted).

Here, Plaintiff's claims fail because they are hypothetical.  Plaintiff speculates that the promotion of McCoy's sale of the *Quantum* NFT may cause confusion and somehow dilute the value of the 2021 NFT that Plaintiff owns.  But this alleged concern is not of any "immediacy and reality" because Plaintiff does not allege any actual, imminent or attempted sale of the 2021 NFT. Plaintiff also does not allege that Nameless's public retraction failed to help Plaintiff market its

2021 NFT as Plaintiff would like.  Nor does Plaintiff allege it has even *tried* to market its own

NFT.  Nor does Plaintiff allege any facts demonstrating actual or likely consumer confusion arising

out of any statements made by McCoy – Plaintiff's allegations about confusion are conclusory and

speculative.  (ECF No. 47 at ¶¶ 83, 155.)  Plaintiff makes no allegations about actual harm it

suffered (or will suffer) by the actions of which it complains, and thus Plaintiff's claims are unripe.

## II.     PLAINTIFF'S SECOND CAUSE OF ACTION FOR UNJUST ENRICHMENT SHOULD BE DISMISSED

Plaintiff's newly added unjust enrichment claim is unduly attenuated and not viable.

Plaintiff alleges that McCoy and Sotheby's "derived profits from the false and misleading

statements concerning the promotion, marketing, advertisement, and sale of [the *Quantum* NFT],"

and that Defendants "continue to enrich themselves through future projects by falsely promoting

and marketing their successful sale of [the *Quantum* NFT]."  (ECF No. 47 at ¶¶ 111-112.)  Plaintiff

alleges that such enrichment is at Plaintiff's "expense," for which Plaintiff seeks disgorgement of

the auction sale proceeds for the *Quantum* NFT:  $1.472 million.  (*Id.* at ¶¶ 113, 116.)  In addition

to the justiciability problems discussed above, this claim should be dismissed for two reasons.

### A.     Plaintiff Does Not Plausibly Allege Enrichment At Plaintiff's Expense

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an

obligation imposed by equity to prevent injustice, in the absence of an actual agreement between

the parties."  *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (citation and

internal quotations omitted).  "Thus, in order to adequately plead such a claim, the plaintiff must

allege 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against

equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Id.* (citation omitted).

Plaintiff does not allege facts to support a plausible inference that McCoy was enriched in the amount of at least $1.472 million at Plaintiff's "expense."  For one thing, Plaintiff makes no allegation of having any stake in the *Quantum* NFT, which is what McCoy sold.

Plaintiff also makes no allegations about the value of the 2021 NFT, or why the 2021 NFT – which copies metadata from the 2014 NFT, akin to a forgery – should be deemed of equal value to the *Quantum* NFT (which, like the 2014 NFT, is authentically by McCoy).  Critically, Plaintiff does not allege that it had any role in the creation of the 2014 NFT and its metadata.  Plaintiff has accordingly not pleaded facts to show that the sale value of the *Quantum* NFT was attained at Plaintiff's "expense."

### B.      Plaintiff Does Not Allege A Close Connection Between Itself And McCoy

"In addition, while Plaintiffs need not allege privity or a business relationship with the Defendants, the pleadings must assert a connection between the parties that [is] not too attenuated." *Miller v. Walters*, 997 N.Y.S.2d 237, 244 (Sup. Ct. N.Y. Cnty. 2014) (citations and internal quotations omitted).  "The connection between the parties must be such that it 'could have caused reliance or inducement.'"  *Id.* (citations omitted).  Mere "awareness" of a plaintiff by a defendant, "without more, does not establish the relationship necessary to state an unjust enrichment claim." *Id.* (citation omitted); *Georgia Malone*, 19 N.Y.3d at 517-18 ("[T]he relationship between [the parties] is too attenuated because they simply had no dealings with each other.").

Plaintiff alleges no relationship between itself and McCoy, let alone a sufficiently close relationship.  Nor does Plaintiff allege any dealings that caused some sort of inducement or reliance by Plaintiff.  Plaintiff alleges that McCoy should have been aware of Plaintiff's existence through an e-mail and social media outreach by Plaintiff's anonymous principal, "EarlyNFT."  (ECF No.

47 at ¶¶ 15, 45.)  But such alleged awareness does not create privity or a relationship required to state a viable unjust enrichment claim.  Indeed, Plaintiff alleges that McCoy never responded to Plaintiff's (actually "EarlyNFT's") communications.  (*Id.* at ¶ 15.)  Plaintiff also does not allege any facts to support an inference that McCoy knows who "EarlyNFT" is (he does not), or that "EarlyNFT" is somehow affiliated with "Free Holdings."

### III.  PLAINTIFF'S THIRD CAUSE OF ACTION FOR SLANDER OF TITLE SHOULD BE DISMISSED

"To state a claim for slander of title, the claimant must plausibly allege that the offending party 'maliciously' used false statements to cast doubt upon another's property interest, causing 'special damages,' typically in the form of a lost sale resulting from the cloud on the claimant's title."  *Wei Su & Hai Wang v. Sotheby's, Inc.*, No. 17-CV-4577 (VEC), 2019 WL 4917609, at *3 (S.D.N.Y. Oct. 4, 2019) (citing *Rosenbaum v. City of N.Y.*, 8 N.Y.3d 1, 12 (2006)).  In addition to not plausibly stating that it holds title to the 2014 NFT (as explained above), and in addition to the fact that McCoy's statements are protected speech (as explained in Sotheby's accompanying and incorporated motion to dismiss), Plaintiff's slander of title claim should be dismissed for the following reasons.

#### A.  Plaintiff Does Not Allege Malice By McCoy

Plaintiff alleges that, following Nameless's issuance of its condition report that referred to the 2014 NFT as having been "removed" and "burned," McCoy gave statements that also referred to the 2014 NFT as having been "burned."  (ECF No. 47 at ¶¶ 64-82.)  Plaintiff alleges that McCoy acted wrongfully because he did not agree with Plaintiff's entreaties asking that McCoy state (falsely) that Plaintiff owns the 2014 NFT.  (*Id.* at ¶¶ 76-82.)

Nowhere, however, does Plaintiff allege that McCoy acted "maliciously."  (*See id.* at ¶¶ 117-126.)  Plaintiff's slander of title claim should be dismissed for this reason alone.

Nor has Plaintiff pleaded facts to support a plausible inference of malice by McCoy. Plaintiff alleges a disagreement it had with McCoy as to the ultimate merits of Plaintiff's specious claim that it somehow owns the 2014 NFT.  A dispute about the meaning of the law and the merits of a legal claim is not "malice" or "reckless disregard" for the truth.  *See Chamila, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017 (KMK), 2007 WL 2781246, at *11-12 (S.D.N.Y. Sept. 24, 2007); *Fink v. Shawangunk Conservancy, Inc.*, 15 A.D.3d 754, 756 (3d Dep't 2005) ("We find no evidence of the malicious intent necessary to support a cause of action for slander of title and, given our conclusion that defendant had probable cause to claim title to the disputed property, these public assertions cannot be said to have been made 'with a reckless disregard for their truth or falsity.'") (citations omitted).

Nor is there any plausible basis to infer malice by McCoy because he used the same word "burned" that Nameless used in its *independent* NFT consulting and condition report.  *See Fink*, 15 A.D.3d at 756 (rejecting allegation of malice where defendant had relied in part on independent report of "[a] firm experienced in land surveying and research").

### B.    <u>Plaintiff Does Not Allege Special Damages</u>

"Special damages are an element of a cause of action for slander of title …." *Rosenbaum*, 8 N.Y.3d at 12.  "Because the existence of special damages is an element of the cause of action, the claim begins to accrue … 'from the time a prospective sale is lost because of the cloud on plaintiff's title.'" *Wei Su*, 2019 WL 4917609, at *3 (citation and internal quotations omitted); *accord Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) ("As a result, a 'plaintiff will be denied even nominal or punitive damages if he cannot show special damage, since in such a case no cause of action at all is established.'") (citation omitted).

"The rules surrounding the pleading and proof of special damages are stringent and well-articulated.  Special damages are limited to losses having pecuniary or economic value, and must

17

be 'fully and accurately stated,' … 'with sufficient particularity to identify actual losses.'" *Kirby*, 784 F. Supp. at 1116 (citations omitted); *accord Bilinksi v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642-43 (2d Cir. 2015); *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 292 (S.D.N.Y. 2016); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 278 (S.D.N.Y. 2003); *see also* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

Furthermore, "special damages must be the 'natural and immediate consequence of the disparaging statements' to be recoverable." *Kirby*, 784 F. Supp. at 1116 (citations omitted); *accord Bilinski*, 632 F. App'x at 642. "Special damages must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation." *Ferraro v. Seamen's Church Inst. of N.Y. and N.J.*, 2007 NY Slip Op 52470(U), 18 Misc. 3d 1108(A) (Sup. Ct., N.Y. Cty., Dec. 3, 2007) (citations and internal quotations omitted).

Costs incurred to *redress* the alleged wrong are *not* special damages. *See, e.g.*, *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 439, 444 (1956) ("'The legal expenses necessarily incurred by the plaintiff beyond the taxable costs in seeking legal redress for the wrong, while a loss in a sense resulting from the wrongful act of the defendant, are not recoverable as general or special damages.'") (citation omitted); *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989) ("[L]egal fees and executive time, standing alone do not comprise special damages, and, therefore, [] the trade libel claim is insufficiently pleaded ….").

After having a second opportunity to plead special damages, Plaintiff still fails to do so, let alone with requisite specificity. Plaintiff alleges that it "expended $5,311.49 seeking to have McCoy and Sotheby's issue public statements correcting their false and misleading claims." (ECF No. 47 at ¶¶ 100, 125-126.) Plaintiff does not allege that it suffered $5,311.49 in direct, reputational harm, such as through a specific diminution in value of the 2021 NFT or through

specific lost sales opportunities.  Plaintiff alleges that it spent $5,311.49 to try to redress the alleged

defamation:  *i.e.*, to try to get the defendants to "correct" allegedly false marketing statements "to

*repair* the reputation of the [2021 NFT] …."  (*Id.* at ¶ 99.)  Such pleading is insufficient.

Plaintiff otherwise alleges that the "value" of the 2021 NFT "is being significantly

diminished by the false and misleading statements made by McCoy and Sotheby's."  (*Id.* at ¶ 98.)

Once again, however, Plaintiff ascribes no actual damages value and identifies no specific lost

sales opportunities for the 2021 NFT.  Plaintiff simply asks the Court to speculate that Plaintiff

might be unable to sell the 2021 NFT (if it ever chooses to try) because of McCoy's sale of the

*Quantum* NFT.  Such pleading is insufficient as a matter of law.  *See Dentsply Int'l Inc. v. Dental

Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2016 WL 6310777, at *6-7 (S.D.N.Y. Oct. 27,

2016) (dismissing counterclaims that failed to sufficiently allege special damages, and explaining

that counterclaims did "not state any dollar amount and instead aver[red] that [the

counterclaimant's] damages are 'lost sales, profits and business opportunities, and harm to [the

counterclaimant's] business goodwill and reputation'"); *Aleem v. Experience Hendrix, L.L.C.*, No.

16 CIV. 9206 (ER), 2017 WL 3105870, at *7 (S.D.N.Y. July 20, 2017) (dismissing slander of title

claim because "Plaintiffs do not provide sufficient factual support to establish that they are entitled

to special damages") (citation omitted).[7]

---

[7] Plaintiff likewise fails to allege causation with sufficient specificity.  *See Bilinski*, 632 F. App'x at 642 ("Moreover, plaintiffs fail plausibly to plead the causation requirements [of special damages].") (citation omitted).  Plaintiff's theory appears to be that McCoy's marketing of the *Quantum* NFT, and in particular his statement that the 2014 NFT was "burned," renders the 2021 NFT incapable of being sold.  But nowhere does Plaintiff allege, with specificity, why it is supposedly incapable of "correct[ing] the public record" on its own, according to its world view that its 2021 NFT has value because the 2014 NFT is still on the Namecoin blockchain.  The market is free to treat that view as it would like.  Nor does Plaintiff allege why Nameless's public retraction of its condition report constitutes an insufficient "correction" of the "public record."  (ECF No. 47 at ¶ 88.)

## IV.   PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
## VIOLATION OF N.Y. G.B.L. § 349 SHOULD BE DISMISSED

New York General Business Law § 349 is a consumer-protection statute.  "[T]he deceptive practices this statute seeks to combat involve recurring transactions of a consumer type … that confront the average consumer who requires the protection of a statute against fraudulent practices." *Genesco Entm't, Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (citations omitted).

Allegations concerning a "'single shot transaction' involving complex arrangements, knowledgeable and experienced parties and large sums of money" that "truly affected" only the parties directly involved do not state a viable claim under GBL § 349 as a matter of law.  *Id.*; *accord Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 294 (1999); *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 148-49 (2d Dep't 1995) ("That General Business Law § 349 was primarily intended to apply to more modest transactions 'is evidenced by the remedies it provides.  Section 349(h) provides parties with the opportunity to receive the greater of actual damages or $50' ….  Even treble damages available under the statute for willful violations are capped at one thousand dollars ….  At the other end of the spectrum, and clearly not cognizable under the statute, are large, private, single-shot contractual transactions.") (citations omitted); *see also RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (explaining that non-consumer plaintiff "must allege conduct that has 'significant ramifications for the public at large'") (citation omitted).

In particular, a dispute by one competitor against another, alleging a particular lost market opportunity – as Plaintiff alleges in this case – does not state a viable or plausible § 349 claim. *See, e.g.*, *North Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F. Supp. 3d 207, 229 (E.D.N.Y. 2020) ("'Where a plaintiff makes only conclusory allegations of impact on consumers at large, a GBL §

349 claim must be dismissed.'") (citing *Miller v. HSBC Bank U.S.A., N.A.*, No. 13 CIV. 7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015)); *Sports Traveler, Inc. v. Advance Mag. Publishers, Inc*., No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997) ("The courts of this Circuit have held that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a claim under Section 349.") (citations omitted); *National Distillers Prods. Co., LLC v. Refreshment Brands, Inc*., 198 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2002) (same).

Plaintiff alleges that McCoy "engaged in consumer-oriented conduct by marketing and promoting the [*Quantum* NFT] as the first NFT ever created in order to draw more and higher bids for the [*Quantum* NFT], …." (ECF No. 47 at ¶ 128.)  Plaintiff further alleges that "McCoy and Sotheby's continue to engage in consumer-oriented conduct by marketing and promoting themselves and their auctions and projects on the basis of the false statements they issued about the [2014 NFT] and [the *Quantum* NFT]." (*Id.* at ¶ 129.)

While Plaintiff alleges that McCoy "announced a new NFT project" and "declared his intent to continue creating NFT artwork as part of his art practice," (*id.* at ¶ 96), however, Plaintiff fails to allege how McCoy's statements about the 2014 NFT, in connection with a single auctioned item (*i.e.*, the *Quantum* NFT), would have any impact on McCoy's new "project" or future "artwork," or how those statements would specifically harm consumers at large.  Indeed, Plaintiff does not allege that McCoy has engaged in any recurring conduct that threatens to defraud consumers generally.  Nor does Plaintiff allege that the average consumer was aware of McCoy's *Quantum* sale, or that the average consumer even knows what a NFT is.  *Cf. North Am. Olive Oil*, 457 F. Supp. 3d at 231.

Plaintiff alleges a single-shot transaction (one auctioned item), involving a complex arrangement (the sale of a NFT), for a large sum of money (nearly $1.5 million), involving

knowledgeable and experienced parties, which allegedly harmed Plaintiff's hypothetical competitive opportunity to sell its own NFT at some undescribed future point.  For this reason, as well as the justiciability problems discussed above, Plaintiff's GBL § 349 claim should be dismissed.

## V.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR COMMERCIAL DISPARAGEMENT SHOULD BE DISMISSED

"Trade libel, also known as product disparagement, is the 'disparagement of a business's goods or services' …." *North Am. Olive Oil*, 457 F. Supp. 3d at 231 (citation omitted).  Required elements of the claim include malice and special damages.  *Id.* (citations omitted).

As discussed above, Plaintiff fails to plead – let alone particularize – any special damages. Plaintiff's commercial disparagement claim should be dismissed on this basis alone.  Plaintiff's commercial disparagement claim should also be dismissed because, as addressed in Sotheby's incorporated motion to dismiss, this claim invalidly complains about protected speech.

Furthermore, to be actionable, a statement must be "directed at" the plaintiff or the plaintiff's product or service.  *E.g.*, *id.*  Plaintiff does not allege that McCoy made any statements directed at Plaintiff or at the 2021 NFT.  Plaintiff alleges that McCoy marketed the *Quantum* NFT by making allegedly false statements about the 2014 NFT being "burned."  Such statements are not alleged to mention or have anything to do with Plaintiff or with Plaintiff's 2021 NFT.  For this reason as well (along with the justiciability problems discussed above), Plaintiff's commercial disparagement claim should be dismissed.

## VI.   PLAINTIFF'S SIXTH CAUSE OF ACTION FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT SHOULD BE DISMISSED

Plaintiff's newly added claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleges that McCoy "issued statements about the status of both the [2014 NFT] and the [*Quantum* NFT] that were false or misleading representations, descriptions, or

designations of origin" because they "falsely stated that the [2014 NFT] was 'burned' or otherwise 'removed' from the Namecoin blockchain."   (ECF No. 47 at ¶¶ 150-151.)   Because, Plaintiff alleges, the 2014 NFT was not "burned" or "removed," Plaintiff additionally alleges that McCoy "further falsely stated that the [*Quantum* NFT] … sold at auction was the first NFT ever created." (*Id.* at ¶ 152.)   Plaintiff alleges that McCoy's allegedly false statements "were used in commercial advertisements or promotions in order to market, promote, and advertise the sale of the [*Quantum* NFT] and the [] auction," and that such statements "deceived or was [sic] likely to mislead or confuse consumers."  (*Id.* at ¶¶ 154-155.)  Plaintiff alleges that such statements "caused damage" to Plaintiff in the amount of the sale value of the *Quantum* NFT.  (*Id.* at ¶ 158.)  In addition to the justiciability problems discussed above, this claim should be dismissed for two reasons.

### A.   Plaintiff Fails To Allege That McCoy Made Any Literally Or Impliedly False Statements

A claim for false advertising requires a plaintiff to allege that a challenged message is:  (1) literally or impliedly false; (2) material; (3) placed in interstate commerce; and (4) the cause of actual or likely injury to the plaintiff.  *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 539-40 (S.D.N.Y. 2018) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)).

Plaintiff fails to viably plead the first element.  Plaintiff does not make clear whether it is alleging that McCoy's challenged statements were literally or impliedly false, but Plaintiff's failure to allege any facts supporting that consumers were actually or likely to be misled by such statements (such as through a survey) means that Plaintiff has not alleged implied falsity as a matter of law.  *Davis*, 345 F. Supp. 3d at 543 (citation omitted); *accord Johnson & Johnson * *Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992) (affirming dismissal of implied false advertising claim because plaintiff failed to make "threshold showing" that "a not insubstantial number of consumers [] hold the false belief allegedly

communicated in the ad") (citation and internal quotations omitted).  Plaintiff's conclusory pleading and "'mere subjective belief'" about the impact on consumers is insufficient.  *Id.*

Nor has Plaintiff plausibly alleged that McCoy's challenged statements about the 2014 NFT being "burned" were literally false.  (Plaintiff does not allege that *McCoy* ever stated that the 2014 NFT was "removed" from the Namecoin blockchain, which is the other challenged statement.  Plaintiff alleges that former defendant Nameless made that statement in its now-withdrawn condition report.  (ECF No. 47 at ¶¶ 65-66.))

A statement is "literally false" only if its message is "unambiguous" and not "susceptible to more than one reasonable interpretation".  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) (citations omitted).  A literally false message "must conflict with reality." *Lokai Holdings, LLC v. Twin Tiger USA, LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018) (citation omitted).

Plaintiff does not allege a singular definition for the term, "burned," in the context of NFTs, which would necessarily be at odds with statements made by McCoy.  Indeed, "there is no established, formal definition of a 'burn'" for NFTs, and  "people may refer to a range of scenarios as a burn."  Maghan McDowell, "Why brands are burning NFTs," *Vogue Business*, Feb. 8, 2022 (https://www.voguebusiness.com/technology/why-brands-are-burning-nfts) (last accessed on June 30, 2022).

One "method for burning is by transferring ownership of an item from the blockchain to a general, null address that one owns or has access to."  *Id.*  "Another scenario is if the original creator of the item revokes the rights – but this can only be done if the creator still owns the rights…. Although the NFT owner might still own a token, it does not represent any usable rights, …."  *Id.* And "some might refer to a 'burn' event when the ownership record is not changed, but there is a status change recorded on the blockchain."  *Id.*

Plaintiff offers no basis for the Court to credit as true, or plausible, that McCoy's statements about the 2014 NFT being "burned" necessarily meant something that was literally false. McCoy's decision to let his Namecoin namespace expire according to Namecoin's protocol ensured that the record he had created, *i.e.*, the 2014 NFT, could no longer be modified or transferred. That is a "burn" event (among a number of other kinds of burn events). Plaintiff offers *no* allegations to support a plausible inference that it can, or could at any time, itself modify or transfer the 2014 NFT. And Plaintiff offers no allegations that a "burn" event *cannot* comprehend precisely what McCoy did. *See also North Am. Olive Oil Ass'n*, 457 F. Supp. 3d at 221-22 (dismissing literal falsity claim where complaint included "no allegation to support its contention that the statement is [literally] false") (citing *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995)).

## B. Plaintiff Has Not Viably Pleaded Causation Of Harm

As explained above, Plaintiff has not viably pleaded that it owns, or has any proprietary interest in, the 2014 NFT. Therefore, any allegedly false statements about the 2014 NFT could not possibly cause any injury to Plaintiff.

## VII. PLAINTIFF'S FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED

For all the reasons discussed above, Plaintiff's claim for declarations that it "is the rightful owner of the [2014 NFT]," that "the [2014 NFT] has not been 'burned'", and that "statements issued by McCoy and Sotheby's in connection with their sale of the [*Quantum* NFT] were false and misleading," should be dismissed. (ECF No. 47 at ¶ 109.) Plaintiff has not alleged an "actual controversy" sufficient to sustain its declaratory judgment claim (which is also discussed by Sotheby's in its incorporated motion to dismiss).

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in Sotheby's accompanying and incorporated motion to dismiss, McCoy respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice, and that the Court award McCoy such other and further relief as deemed just and proper.

Dated:   New York, New York
         June 30, 2022

**PRYOR CASHMAN LLP**

By: _____
         William L. Charron
         Robert J. deBrauwere
         Nicholas Saady
7 Times Square
New York, New York  10036
Tel. (212) 421-4100

*Attorneys for Defendant Kevin McCoy*

26