UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREE HOLDINGS INC.,

                    Plaintiff,

v.

KEVIN McCOY and SOTHEBY'S INC.,

                    Defendants.

Case No.: 1:22-cv-00881-JLC

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SOTHEBY'S INC.'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

**FALCON RAPPAPORT & BERKMAN PLLC**

Moish E. Peltz
Kenneth J. Falcon
Steven Berlowitz
Jessica Moore
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
(516) 599-0888
mpeltz@frblaw.com
kfalcon@frblaw.com
sberlowitz@frblaw.com
jmoore@frblaw.com

*Attorneys for Plaintiff*

## Table of Contents

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 1

ARGUMENT ......................................................................................................... 3

   I.    Plaintiff Has Stated Claims for Slander of Title and Product Disparagement ................... 4

      A.    The Challenged Statements Are Not Protected Opinion ................................. 5

      B.    The Challenged Statements Are Not Substantially True ................................ 9

      C.    Plaintiff Alleges That Sotheby's Acted With Actual Malice .................................... 12

   II.    Plaintiff Has Properly Plead Unjust Enrichment Against Sotheby's ........................... 14

   III.    Plaintiff Has Properly Plead A Claim For Declaratory Judgment ............................... 16

CONCLUSION ..................................................................................................... 17

## <u>Table of Authorities</u>

**Cases**

*Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010)................... 11

*Bilinksi v. Keith Haring Found., Inc.*, 96 F. Supp.3d 35 (S.D.N.Y. 2015)................................. 14

*Brian v. Richardson*, 87 N.Y.2d 46 (1995)................................................................................. 7

*Burton v. iYogi, Inc.*, 2015 WL 4385665, at *8-9 (S.D.N.Y. Mar 16, 2015) ............................... 5

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000)........................................ 12

*Chamilia, LLC v. Pandora Jewelry, LLC*, 85 U.S.P.Q.3d 1169 (S.D.N.Y. 2007) ........................ 3

*City Waste & Recycling Services, Inc. v. Tswin Bridges Waste & Recycling, LLC*, 72 Misc. 3d
    1217(A), at *12 (Sup. Ct. Albany Co. 2021) ..................................................................... 9

*Clark Consulting, Inc., v. Financial Solutions Partners, LLC*, 2005 WL 3097892, at *2
    (S.D.N.Y. Nov. 17, 2005) .................................................................................................. 2

*Condit v. Dunne*, 317 F. Supp. 2d 344 (S.D.N.Y. 2004) ............................................................ 8

*Conti v. Doe*, 535 F. Supp. 3d 257 (S.D.N.Y. 2021) ................................................................. 12

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012) .............................................................. 14

*Eidelman v. The Sun Prods. Corp.*, 2017 WL 4277187 * 6 (S.D.N.Y. Sept. 25, 2017)............... 13

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168 (2d Cir. 2004) ....... 3

*Firestone v. Miroth Const. Co.*, 215 A.D. 564 (1st Dep't 1926)................................................. 13

*Giuffre v. Maxwell*, 2017 WL 1536009, at *5 (S.D.N.Y. Mar. 27, 2017) ..................................... 9

*Global Packaging Services, LLC v. Global Printing & Packaging*, 248 F. Supp. 3d 487
    (S.D.N.Y. 2017)................................................................................................................ 15

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993)................................................................ 6

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999)........................................................... 3

*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ............................... 12

*Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235 (1991) ................................................................ 7

*Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) .............................................. 13

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ............................................ 8

*Kehm v. Murtha*, 28 A.D.2d 421 (2d Dep't 2001) ........................................................................ 9

*Prince v. Fox Tel. Stations, Inc.*, 33 Misc. 3d 1225, at *8 (Sup. Ct. N.Y. Co. 2011) .................... 4

*Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021, 2022 WL 685407, at *20 (Sup. Ct. N.Y.

Co. Mar. 08, 2022) ...................................................................................................................... 13

*Solstein v. Mirra*, 488 F. Supp. 3d 86 (S.D.N.Y. 2020) ............................................................ 3,4

*Waldman v. New Chapter*, 714 F. Supp. 2d 398 (E.D.N.Y. 2010) .............................................. 14

Plaintiff Free Holdings Inc. ("Plaintiff" or "Free Holdings") respectfully requests that the Court deny Defendant Sotheby's Inc. ("Defendant" or "Sotheby's") motion to dismiss the Amended Complaint ("Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff is separately filing an opposition to Defendant Kevin McCoy's motion to dismiss, and like Defendants, adopts and incorporates herein the arguments raised there.

## PRELIMINARY STATEMENT

Sotheby's motion fails for the same reason as McCoy's. Sotheby's, as a venerable auction house, has a responsibility to emerging blockchain artists and collectors to conduct the proper diligence required to faithfully market and sell early blockchain art. In this instance, Sotheby's failed to exercise that diligence. While Sotheby's now claims that those Challenged Statements are permissible opinion, indeed, as argued below and in the opposition to McCoy's Motion to Dismiss, those Challenged Statements remain literally untrue. As a result, Defendants broadcasted false claims about the first known NFT throughout the world, to the detriment of Free Holdings. As a result, this Court should hold Sotheby's accountable.

## FACTUAL BACKGROUND

In 2014, artist Kevin McCoy ("McCoy") minted a digital artwork on the Namecoin blockchain called *Quantum* (the "Namecoin-*Quantum*"), which is now universally regarded as the world's first NFT.  Am. Compl. ¶¶ 36-37.  According to McCoy, the Namecoin-*Quantum* represents "birth" and "provenance."  Am. Compl. ¶ 56.  The artistic principle underlying the Namecoin-*Quantum* was "to use blockchain technology to create ***indelible*** provenance and ownership of digital images of this kind."  *See* Am. Compl. ¶ 57 (emphasis added).  When he created the Namecoin-*Quantum*, McCoy inserted the following in its metadata description:

1

> I assert title to the file at the URL http://static.mccoyspace.com/gifs/quantum.gif with the creator's public announcement of it's publishing at the URL https://twitter.com/mccoyspace/status/462320426719641600 The file whose SHA256 hash is d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a is taken to be the file in question. **Title transfers to whoever controls this blockchain entry**.

Am. Compl. ¶ 38 (emphasis added).

After creating *Quantum*, McCoy subsequently let the Namecoin blockchain record that housed *Quantum* expire, rendering the NFT free to claim by anyone who elected to reregister the Namecoin record.  *See* Am. Compl. ¶¶ 39-41.  On or around April 5, 2021, Plaintiff claimed the Namecoin-*Quantum* and remains title holder to the same.  *See* Am. Compl. ¶¶ 42-43.

On May 28, 2021, McCoy minted a second NFT, also called *Quantum*, on the Ethereum blockchain (the "Ethereum-*Quantum*") and began working with Defendant to market and promote the piece for sale in Defendant's upcoming auction titled *Natively Digital: A Curated NFT Sale*.  *See* Am. Compl. ¶¶ 6, 8, 52-54.  The purpose of the *Natively Digital* auction was to showcase and sell some of the earliest NFTs, and Defendant marketed and promoted the Ethereum-*Quantum* as the first NFT ever created.

Defendant issued materially false and misleading statements of fact in the course of marketing and promoting the sale of Ethereum-*Quantum*.  Defendant stated that the Ethereum-*Quantum* was the first NFT "[o]riginally minted on May 3, 2014 on the Namecoin blockchain, and preserved on a token minted on May 28, 2021 by the artist."  Am. Compl. ¶ 9. Defendant further stated that the Namecoin-*Quantum* had been "burned" or otherwise "removed" from the Namecoin blockchain.  *See* Am. Compl. ¶ 10. These statements are false because the Namecoin-*Quantum* requires no preservation, a Namecoin blockchain record cannot be "removed," and the blockchain record for the Namecoin-*Quantum* has not been "removed" or

"burned" from the Namecoin blockchain.  *See* Am. Compl. ¶ 68.  Defendant issued these

materially false and misleading claims in order to promote and market the Ethereum-*Quantum* as

a highly valuable, first of its kind collectible.  Defendant ultimately sold the Ethereum-*Quantum*

on the basis of these false statements for $1,472,000.  *See* Am. Compl. ¶ 84.

## ARGUMENT

"A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears

beyond doubt that the plaintiff can prove no set of facts in support of its claim which would

entitle it to relief."  *Clark Consulting, Inc.*, *v. Financial Solutions Partners, LLC*, 2005 WL

3097892, at *2 (S.D.N.Y. Nov. 17, 2005) (internal citations omitted); *see also Harris v. City of

New York*, 186 F.3d 243, 247 (2d Cir. 1999) ("Any Rule 12(b)(6) movant for dismissal faces a

difficult (though not insurmountable) hurdle.").  "At the motion to dismiss stage, the issue is not

whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer

evidence to support the claims."  *Clark Consulting*, 2005 WL 3097892, at *2 (internal citation

omitted); *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d

Cir. 2004).   "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the

legal feasibility of the complaint, not to assay the weight of the evidence which might be offered

in support thereof."  *Clark Consulting*, 2005 WL 3097892, at *2 (internal citation omitted).

"Accordingly, a claim can only be dismissed if no relief can be granted under any set of facts

that could be proved consistent with the allegations."  *Id.*; *Eternity Global*, 375 F.3d at 176 ("A

complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff

is entitled to no relief under any state of facts which could be proved in support of the claim.").

## I.    Plaintiff Has Stated Claims for Slander of Title and Product Disparagement

In New York, a claim for slander of title requires a plaintiff to allege "(1) a communication falsely casting doubt on [the] validity of the complainant's title; (2) reasonably calculated to cause harm; and (3) resulting in special damages." *Chamilia, LLC v. Pandora Jewelry, LLC*, 85 U.S.P.Q.3d 1169, 1179 (S.D.N.Y. 2007).  Under New York law, statements of fact are actionable for claims of defamation and slander, but statements of opinion are not.  *See Solstein v. Mirra*, 488 F. Supp. 86, 96 (S.D.N.Y. 2020).  "Determining whether a statement is an allegation of fact or mere opinion is a legal question for the court.  The dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff."  *Id.* (internal citation omitted).

Under New York law, a claim for product disparagement requires plaintiff to plead (1) a false statement; (2) about the condition, value, or quality of plaintiff's product or property; (3) publication to a third person; (4) actual malice; and (5) special damages.  *See Prince v. Fox Tel. Stations, Inc.*, 33 Misc. 3d 1225, at *8 (Sup. Ct. N.Y. Co. 2011).

Defendant argues that Plaintiff has failed to assert well plead claims for slander of title and commercial disparagement on the grounds that the challenged statements are protected opinion, are substantially true, and because Plaintiff fails to allege malice.  *See* Br. at 11-20. Each of Defendant's arguments fails.  As outlined below, Plaintiff has adequately pled that the challenged statements are actionable statements of fact, materially false and misleading, and made with malice.  Accordingly, the Court should deny Defendant's motion to dismiss Plaintiff's claims for slander of title and commercial disparagement.

4

### A. The Challenged Statements Are Not Protected Opinion

Defendant asserts that Plaintiff's claims for slander of title and product disparagement should be dismissed because the statements that the Namecoin-*Quantum* was "preserved," "burned," "effectively burned," or otherwise "removed" are "loose, imprecise language that lacks a defined meaning that is readily understood." Br. at 14. Defendant is wrong. While the Court should not "render statements actionable by giving them a strained or artificial construction" it also need not "interpret writing in their mildest and most inoffensive sense to hold them non-libelous." *See, e.g.*, *Solstein v. Mirra*, 488 F. Supp. 3d 86, 96 (S.D.N.Y. 2020) (internal citations omitted) (upholding defamation claim).

In this case, the challenged statements convey in clear, unambiguous language, that Namecoin-*Quantum* no longer exists on the Namecoin blockchain. Plaintiff alleged that Namecoin-*Quantum* "was removed from the system after not being renewed, and was effectively burned from the chain." *See* Am. Compl. ¶ 65. Sotheby's argument is further belied by the fact that the winner of the auction for the Ethereum-*Quantum* stated that he believed he had purchased the "first ever crypto art nft," indicating that he readily understood – falsely – that the original Namecoin-*Quantum* NFT had been destroyed or no longer existed. *See* Am. Compl. ¶ 86. Both the words of the purchaser and contemporaneous media reports further demonstrate that these statements were broadly understood by the public as incorrect fact, not non-libelous opinion. *See* Am. Compl. ¶¶ 86, 95-97.

Furthermore, contrary to Sotheby's argument, the larger context in which the statements were made supports that the challenged statements are statements of fact, not opinion. Indeed, the auction listing (*See* Rothstein Declaration, Exhibit B) is broken into three sections, including a description of the Ethereum-*Quantum*, the Condition Report, and finally the Catalogue Note.

The description and Condition Report of the Ethereum-*Quantum* provide highly technical information about the artwork, including the type of NFT (non-fungible token ERC-721), status concerning its file hash, and a history of the Ethereum-*Quantum*'s minting.  These kinds of statements, issued by a well-known, respected auction house and art broker, suggest to the reasonable consumer that the words at issue were statements of fact on which they could reasonably rely in making a determination about whether to place a bid on a valuable and accredited digital collectible.  This finding is further supported by the fact that Defendant issued the challenged statements in conjunction with an NFT consultant and specialist[1] and therefore offered the impression that the statements were the product of well-researched deliberation.  *See Burton v. iYogi, Inc.*, 2015 WL 4385665, at *8-9 (S.D.N.Y. Mar 16, 2015) (finding that "Defendant is presenting statements about customers' computers as facts based on *expert assessment*") (emphasis added); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 156 (1993) (statements presented in "special feature series" in newspaper "were calculated to give the impression that they were the product of some deliberation, not of the heat of the moment") (internal citation and quotation marks omitted).

Sotheby's argues that "[t]he Auction Listing contains pages of highly expressive commentary regarding the visual expression of the Quantum artwork and its historical significance" and that the use of phrases such as "I think" and "In my view" helps render the challenged statements ones of opinion rather than fact.  Br. at 16.  However, this expressive commentary is laid out in an *entirely* different section of the Auction Listing, the Catalogue

---

[1] The challenged statements were initially researched and drafted by nameless, a company that advises on NFTs and NFT projects.  nameless was originally a named defendant in this action, but was voluntarily dismissed (Dkt. No. 46, 48).

Note, whereas the challenged statements are presented in the Condition Report.  The phrases "I think" and "In my view" are conspicuously absent from the Condition Report.

Furthermore, the plain language and tone of the Condition Report, from where all the challenged statements originate, suggests that the statements are ones of fact.  The Condition Report begins with a formal declaration: "[t]he following condition report is provided by nameless."  *See* Rothstein Declaration, Exhibit B.  The Condition Report then methodically outlines information about the Ethereum-*Quantum,* including that (1) the Ethereum-*Quantum* was "stored on the Ethereum blockchain, and therefore cannot be modified"; (2) "Namecoin was designed to include removal of pointers after 36,000 blocks"; and (3) as a result the Ethereum-*Quantum*'s "Namecoin entry was removed from the system after not being renewed, and was effectively burned from the chain."  *See id.*  This information is then followed by additional factual content concerning the Ethereum-*Quantum's* "storage security," the storage of "associated media and additional legal and archival JSON encoded data," and the engagement of "standard ERC-721 practices" for NFT security.  *See id.* In context, these statements are factual in nature.

In contrast, the Catalogue Note begins with the grandiose statement that "[i]n the long timeline of art, there are few works that serve as genesis blocks to their own chain in history." *See id.*  The Catalogue Note contains flowery and vivid language ("Pulsing with colour, a riotously raw beacon to a new era, McCoy minted Quantum – unwittingly placing it within this vaulted pantheon of firsts"), rhetorical flourishes ("For what it is [*sic*] a blockchain, when stripped of its bones, but humanity's latest innovation in the humble art of record keeping"), and employs grand themes ("Creation, time, art history and the very idea of blockchains themselves intersect in the ripples of Quantum").  These all lend a qualitative, opinion-based character to the

Catalogue Note that is not present in the rote recitation of information concerning minting, storage, and security in the Condition Report.  In sum, a reasonable consumer encountering the auction listing in its entirety would reasonably believe that the challenged statements listed in the Condition Report were statements of fact.

Furthermore, Defendant's reliance on *Immuno* and *Brian* in support of its argument that the challenged statements are nonactionable opinion is misplaced.  In *Immuno*, "the challenged communication was a letter to the editor of a professional journal – a medium that is typically regarded by the public as a vehicle for the expression of individual opinion, rather than 'the rigorous and comprehensive presentation of factual matter.'"  *Brian v. Richardson*, 87 N.Y.2d 46, 52 (1995) *quoting Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 253 (1991). Similarly, in *Brian*, the challenged statements were contained in an article published in the "Op Ed" page of the New York Times. *Brian*, 87 N.Y.2d at 52.  The audience anticipates and expects to read statements of opinion in a letter to the editor or in an "Op Ed" article.  In contrast, the audience anticipates and expects statements of fact from a respected art broker when it describes the history, pedigree, technical specifications, and existence – or lack thereof – of an artistic work.

Finally, Sotheby's asserts that the statements are not actionable because they fully disclosed the facts that support them.  Again, Sotheby's is wrong.  "[W]hen an author outlines facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader to draw his own conclusions, those statements are generally protected by the First Amendment."  *Condit v. Dunne*, 317 F. Supp. 2d 344, 364 (S.D.N.Y. 2004) (internal citation omitted).  However, "opinions based on disclosed facts which are themselves false" remain actionable.  *See id.* (upholding slander claim where "[t]he facts disclosed by the defendant [were] republications of falsities.")

Here, Defendant argues that it disclosed underlying facts supporting its position because "[i]n multiple locations, [Defendant] disclosed that the Quantum artwork originally had been minted on Namecoin, and it explained in great detail that *the data associated with* that Namecoin entry had been 'preserved' and included in the Ethereum entry."  Br. at 17 (emphasis in original). These statements are themselves false because, as plead, the Namecoin-*Quantum* is extant on the Namecoin blockchain, and requires no preservation.  *See* Am. Compl. ¶ 73.  The process detailed by Defendant is more properly characterized as the creation of a reproduction of *Quantum* on the Ethereum blockchain, not the preservation of a now invalid or obsolete asset.  *See Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) (denying motion to dismiss where challenged statements of opinion were based on disclosed facts alleged to be false); *Condit*, 317 F. Supp. 2d at 364 (same).  Moreover, Defendant's claim that it *fully* disclosed all of the facts is wrong because nowhere did Defendant disclose the present existence of the Namecoin-*Quantum* or Plaintiff's re-registration, possession, and control of the same.  Accordingly, the Court should deny Defendant's motion to dismiss.

### B.  The Challenged Statements Are Not Substantially True

"The tort of trade libel or injurious falsehood requires the knowing publication of false and derogatory facts about the plaintiff's business of a kind calculated to prevent others from dealing with the plaintiff, to its demonstrable detriment."  *City Waste & Recycling Services, Inc. v. Tswin Bridges Waste & Recycling, LLC*, 72 Misc. 3d 1217(A), at *12 (Sup. Ct. Albany Co. 2021).  "[T]ruth is a complete defense to an action to recover damages for libel or slander, and this defense may apply as long as the statement is substantially true."  *Kehm v. Murtha*, 28 A.D.2d 421, 421 (2d Dep't 2001) (internal citations omitted).  "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the

pleaded truth would have produced." *Giuffre v. Maxwell*, 2017 WL 1536009, at *5 (S.D.N.Y. Mar. 27, 2017) (internal citation omitted). "It is only necessary that the gist or substance of the challenged statements be true." *Id.* (internal citation omitted). "Whether a statement is substantially true fall along a broad spectrum." *Id.* (internal quotation marks omitted). Nonetheless, "there are those cases in which a defendant simply asks too much in asserting that a statement is substantially true because the difference between the two is plainly substantial." *Id.* (internal citations omitted).

Defendant's statements are not substantially true because the pleaded truth would have revealed to potential bidders that the Ethereum-*Quantum* was a copy of the presently-extant Namecoin-*Quantum*, rather than the alleged sole surviving vestige of a prized digital collectible. This would have had a different impact on the mind of the reader than the challenged statements. Indeed, in Defendant's own words, the Ethereum-*Quantum* "came first," "usher[ed] in a new art histor[y]" and "occup[ies] a singular position in art history." *See* Rothstein Declaration, Exhibit B.

Defendant offered the impression that the Ethereum-*Quantum*, and only the Ethereum-*Quantum*, holds the title of the world's first still-extant NFT, which is not substantially true if the Namecoin-*Quantum* also exists. Defendant stated that the Namecoin-*Quantum* has been "burned" or "removed" from the Namecoin blockchain, and that *Quantum* has been "preserved" on the Ethereum blockchain. *See* Am. Compl. ¶¶ 9-10, 73-74. However, the Namecoin-*Quantum* NFT remains extant on the Namecoin blockchain, and any purported "preservation" in this context is nothing but reproduction of the still-extant original—facts that Defendant sought to actively conceal. *See* Am. Compl. ¶ 73. Moreover, and regardless of the status of Namecoin-*Quantum*, the Ethereum-*Quantum* is definitively not the world's first NFT,

as marketed and promoted by Defendant.  *See* Am. Compl. 36-43, 54-55.  Nonetheless, the

winner of the auction for the Ethereum-*Quantum* demonstrated that he was materially misled by

Defendant when he stated that he believed he had purchased the "First ever crypto art NFT –

Quantum," despite the fact that the rightful bearer of that title belongs to the

Ethereum-*Quantum's* predecessor, Namecoin-*Quantum*.  *See* Am. Compl. ¶ 86.  Accordingly,

the challenged statements are not substantially true.

Defendant's argument that it "accurately reported that Quantum was originally minted in

2014 on the Namecoin blockchain, and that McCoy 'moved the original on-chain data from a

burned Namecoin token into a modern, industry standard, ERC 721 token, while preserving all

of the original on-chain information," (Br. at 18) does not render the challenged statements

substantially true and therefore nonactionable.  Indeed, despite Defendant's disclosures, the

overall impression Defendant conveyed in its statements was that the Namecoin-*Quantum* did

not exist, but that it had been "preserved" in a separate asset that Defendant was auctioning for

sale.  A reasonable consumer might reasonably rely on this impression, as evidenced by the

ultimate purchaser of the Ethereum-*Quantum* who stated that he purchased the world's first NFT.

*See* Am. Compl. ¶ 86; *see also Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *17

(E.D.N.Y. July 21, 2010) ("The fact that the actual sugar content of vitaminwater was accurately

stated in an FDA-mandated label does not eliminate the possibility that reasonable consumers

may be misled.")

Defendant's argument that "in the context of the art world, falsity is particularly difficult

to prove" is immaterial.  Br. at 18.  Challenges of authenticity to pieces of analogue art are

fundamentally different from the same challenge regarding digital art housed on the blockchain

because the blockchain serves as an immutable and secure storage and authentication device.

11

*See* Am. Compl. ¶¶ 27-33.  Plaintiff does not challenge statements concerning the quality or artistic value of the Namecoin-*Quantum*, but rather challenges statements concerning whether the Namecoin-*Quantum* exists or not.  *See* Am. Compl. ¶¶ 62, 68.  The existence of Plaintiff's Namecoin-*Quantum* NFT is readily verifiable on the Namecoin blockchain,[2] rendering Defendant's statement that the Namecoin-*Quantum* was "burned" or "removed" from the blockchain materially false.  *See* Am. Compl. ¶ 38.

Finally, Defendant's claim that Plaintiff admits that the Namecoin-*Quantum* "expired" is likewise incorrect.  *See* Br. at 18.  Plaintiff makes no such allegation.  Instead, Plaintiff alleges that *McCoy's ownership* of the Namecoin-*Quantum* blockchain record expired, which allowed another user to claim ownership of Namecoin-*Quantum* NFT.  *See* Am. Compl. ¶¶ 39-43.  Accordingly, for the reasons cited, the Court should deny Defendant's motion to dismiss Plaintiff's claim for slander of title and product disparagement.

### C.  Plaintiff Alleges That Sotheby's Acted With Actual Malice

To establish actual malice, it is sufficient that Plaintiff plead that Defendant either (1) knew the challenged statements were false; or (2) acted with reckless disregard as to whether the statements were true or false.  *See Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 182 (2d Cir. 2000).  "Actual malice can be established 'through the defendants' own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among other circumstantial evidence."  *Celle*, 209 F.3d at 183 (internal citation and quotation marks omitted).

---

[2] This is all well-pleaded in the Amended Complaint. To the extent the Court relies on extrinsic evidence submitted with Defendants' motions, the Court should carefully scrutinize the primary source, the Namecoin blockchain itself, which demonstrates Defendants' statements are factually incorrect.  *See* Peltz Declaration.

Defendant acted with actual malice because Defendant knew or should have known that the Namecoin-*Quantum* had not been "burned" or "removed" from the Namecoin blockchain. The existence of the Namecoin-*Quantum* is ascertainable to anyone who looks up the blockchain record. *See* Am. Compl. ¶¶ 27-33. Indeed, one of the benefits of the blockchain is secure record-keeping and authentication. *See id.* Defendant suggests that it sanctioned an exhaustive and thorough investigation to support the challenged statements, but seemingly failed to look at the blockchain - the most obvious place to look if Defendant wanted to confirm that the Namecoin-*Quantum* existed or not. Additionally, Plaintiff alleges that Plaintiff specifically informed Sotheby's of the existence of the Namecoin-*Quantum* to put Defendant on notice of the same. *See* Am. Compl. ¶¶ 79-80. Despite notice of Plaintiff's claim, Defendant refused to issue a public corrective statement or even respond to Plaintiff's communications. *See* Am. Compl. ¶ 79.

Defendant likewise argues that its reliance upon a third-party Condition Report absolves Defendant of liability. *See* Br. at 20. However, Defendant cannot rely upon a Condition Report while purposefully avoiding information readily available and accessible to anyone with a computer and internet connection. Defendant's willful blindness extinguishes Defendant's argument for good-faith reliance, and is sufficient to allege malice. *See Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) ("Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category") (internal citation omitted); *Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021, 2022 WL 685407, at *20 (Sup. Ct. N.Y. Co. Mar. 08, 2022) (finding defendant's "blind eye to a litany of outrageous claims . . . so inherently improbable that it evinced a reckless disregard for the truth"). Moreover, Defendant's continued good-faith

13

reliance on the nameless Condition Report is dubious in light of nameless' retraction of the report.  *See* Am. Compl. ¶ 88.

Accordingly, because Plaintiff has plead that Defendant issued the challenged statements with malice, the Court should deny Defendant's motion to dismiss Plaintiff's claims for slander to title and commercial disparagement.

## II.    Plaintiff Has Properly Plead Unjust Enrichment Against Sotheby's

Defendant asserts that Plaintiff's claim for unjust enrichment is deficient because Plaintiff failed to plead that a benefit flowed directly from Plaintiff to Defendant at Plaintiff's expense.  *See* Br. at 21. Defendant ignores the fact that it claimed the identity, titles, and prestige associated with the Namecoin-*Quantum* in order to market, promote, and sell its asset.

Under New York law, it is "contrary to equity and good conscience" to enable a party to benefit from misleading representations.  *See Firestone v. Miroth Const. Co.*, 215 A.D. 564, (1st Dep't 1926); *see also Eidelman v. The Sun Prods. Corp.*, 2017 WL 4277187 * 6 (S.D.N.Y. Sept. 25, 2017) (noting that the basis for an unjust enrichment claim "is that the defendant has obtained a benefit which 'in equity and good conscience' should be paid to the plaintiff'") (internal citation omitted); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 423 (S.D.N.Y. 2009) (certifying a class action asserting, among other things, an unjust enrichment claim premised on a misleading advertisement).  "Today, New York law does not require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant.  It merely requires that the plaintiff's relationship with a defendant not be 'too attenuated.'" *Waldman v. New Chapter*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010).

Plaintiff alleged that Defendant issued materially false and misleading statements about the Namecoin-*Quantum* – namely that the NFT no longer exists on the Namecoin blockchain.

14

*See* Am. Compl. ¶¶ 65, 68, 73.  Defendant was able to promote and market its

Ethereum-*Quantum* as the world's first NFT only by branding its progenitor non-existent.  *See*

Am. Compl. ¶¶ 73, 92.  By usurping the mantle, titles, and prestige of the Namecoin-*Quantum* in

the promotion, marketing, and sale of the Ethereum-*Quantum*, and in using the successful sale to

further market and promote subsequent successful auctions in the *Natively Digital* auction series,

Defendant obtained a direct benefit at Plaintiff's expense.  Indeed, Defendant's gambit caused

the sales price of the Ethereum-*Quantum* to surge to over $1.4 million.  *See Corsello v. Verizon*

*N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the

defendant has obtained a benefit which in equity and good conscience should be paid to the

plaintiff"); *Eidelman*, 2017 WL 4277187 * 6 ("Typical [unjust enrichment] cases are those in

which the defendant . . . has received money to which he or she is not entitled").

Defendant's reliance on *Bilinksi v. Keith Haring Found., Inc.*, 96 F. Supp.3d 35, 52

(S.D.N.Y. 2015) is misplaced.  In that action, the owners of Keith Haring artwork sued the Keith

Haring Foundation (the "Foundation") claiming that, among other things, the Foundation's

statement that plaintiff's pieces of art were "fake" interfered with the exhibition and sale of

plaintiff's artwork.  *See Bilinski*, 96 F. Supp. 3d at 42.  Defendant asserts that Plaintiff's claim in

the action at bar is "indistinguishable from the claim in *Bilinksi* found to be fatally defective,"

(Br. at 21), but Defendant is wrong.

Critically, and unlike in *Bilinksi*, Defendant claimed, and continues to claim, that it sold a

facsimile of a work while falsely stating that the facsimile's original, owned by Plaintiff, was

destroyed.  *See* Am. Compl. ¶¶ 65, 68, 73, 75.  However, the question at issue is not merely one

of authenticity, as was the case in *Bilinski*, but also of identity.  Defendant claims that it sold the

world's first NFT, and also that the NFT that was originally minted on the Namecoin blockchain

was destroyed and had, through a preservation process, been moved to the Ethereum blockchain. *See* Am. Compl. ¶¶ 9, 65, 68, 73, 75.  In contrast, Plaintiff has plead that its NFT remains extant and is rightfully the world's first NFT.  *See* Am. Compl. ¶ 73.  By appropriating the prestige, pedigree, and title of the Namecoin-*Quantum*, in order to sell its reproduction Ethereum-*Quantum*, Defendant directly enriched itself at Plaintiff's expense.

Lastly, Defendant is wrong that Plaintiff's claim for unjust enrichment should be dismissed as duplicative of its injurious falsehood claim.  *See* Br. at 21.  At this stage in the litigation, it is permissible for a party to plead alternative theories of recovery.  *See Global Packaging Services, LLC v. Global Printing & Packaging*, 248 F. Supp. 3d 487, 496 (S.D.N.Y. 2017).  Therefore, the Court should deny Defendant's motion to dismiss Plaintiff's claim for unjust enrichment.

## III.    Plaintiff Has Properly Plead A Claim For Declaratory Judgment

Defendant argues that Plaintiff's claim for declaratory judgment must be dismissed because Plaintiff seeks a court ruling to "an abstract question" and "legal determination about hypothetical facts." Br. at 22.  Defendant is wrong.  Rather, there remains a live question concerning the existence of the Namecoin-*Quantum*, as well as an open dispute regarding whether the statements issued by Sotheby's and McCoy were materially false and misleading. As alleged in the Amended Complaint, there exists an actual controversy because Defendant marketed, promoted, and sold an NFT by falsely describing the status of its forebearer.  *See* Am. Compl. ¶¶ 1-19.  Moreover, Defendant has used the sale, based on materially false and misleading statements, to establish itself within the NFT marketplace and promote its recurring digital auction series, *Natively Digital*.  *See* Am. Compl. ¶¶ 91-92.  Lastly, given Defendant's stature in the industry, it would be impractical for Plaintiff to achieve a fair market price given

16

the cloud Defendant has placed over the Namecoin-*Quantum*.  Accordingly, there are issues concerning the ownership and even mere existence of the Namecoin-*Quantum*, as well as whether Defendant's statements regarding the Namecoin-*Quantum* and Ethereum-*Quantum* constitute false and misleading advertisements, which Defendant continues to use in order to promote future auctions.  These represent real and concrete questions requiring a judicial determination.

## CONCLUSION

For the foregoing reasons, Free Holdings respectfully requests that the Court deny Defendant Sotheby's motion to dismiss the Amended Complaint and that the Court award Free Holdings such other and further relief as deemed just and proper. Plaintiff requests oral argument.

Dated: Rockville Centre, New York
         August 15, 2022

                                        Respectfully submitted,


                                        */s/Moish E. Peltz*
                                        **FALCON RAPPAPORT & BERKMAN PLLC**
                                        By: Moish E. Peltz
                                        Kenneth J. Falcon
                                        Steven Berlowitz
                                        Jessica Moore
                                        265 Sunrise Highway, Suite 50
                                        Rockville Centre, New York 11570
                                        (516) 599-0888
                                        mpeltz@frblaw.com
                                        kfalcon@frblaw.com
                                        sberlowitz@frblaw.com
                                        jmoore@frblaw.com

                                        *Attorneys for Plaintiff*

17