UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FREE HOLDINGS INC.,

                                    Plaintiff,

v.                                                                    Case No.: 1:22-cv-00881-JLC

KEVIN McCOY and SOTHEBY'S INC.,

                                    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO KEVIN MCCOY'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

**FALCON RAPPAPORT & BERKMAN PLLC**

Moish E. Peltz
Kenneth J. Falcon
Steven Berlowitz
Jessica Moore
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
(516) 599-0888

## Table of Contents

PRELIMINARY STATEMENT ................................................................................ 1

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ....................................................................................................... 4

   I.    Plaintiff's Claims Are Justiciable.................................................................. 4

     A.   A. Plaintiff has Properly Pled Standing Under 12(b)(1) ................................ 4

     B.   B. Plaintiff's Claims are Ripe ................................................................ 10

   II.    Standard of Review for Rule 12(b)(6)........................................................ 12

   III.    Plaintiff has Stated a Cause of Action for Unjust Enrichment....................... 13

     C.   A. Plaintiff Plausibly Alleges That Defendant Was Enriched at Plaintiff's Expense ..... 13

     D.   B. Plaintiff Alleges a Connection Between Itself and McCoy........................ 14

   IV.    Plaintiff Has Stated a Cause of Action for Slander to Title ........................... 15

     E.   A. Plaintiff Alleges Malice by McCoy..................................................... 15

     F.   B. Plaintiff Alleges Special Damages ...................................................... 17

   V.    Plaintiff Alleges a Cause of Action for Violation of N.Y. G.B.L. § 349 ....................... 18

   VI.    Plaintiff Alleges a Cause of Action for Commercial Disparagement ............................ 20

   VII.    Plaintiff Alleges a Cause of Action for Violation of Section 43(a) of the Lanham Act 21

     G.   A. Plaintiff Alleged that McCoy Made False and Misleading Statements...................... 21

     H.   B. Plaintiff Alleges Causation................................................................ 24

   VIII.    Plaintiff Has Alleged a Cause of Action for Declaratory Judgment .............................. 24

CONCLUSION.................................................................................................... 25

## Table of Authorities

**Cases**

*Aikens v. Portfolio Recovery Assocs.*, 716 Fed. Appx. 37, 40 (2d Cir. 2017) ............................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 15

*Carter v. Healthport Techs.*, LLC, 822 F.3d 47, 57 (2d Cir. 2016) ............................................... 11

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 182 (2d Cir. 2000) ................................... 18

*Chamilia, LLC v. Pandora Jewelry, LLC*, 85 U.S.P.Q.2d 1169, 1179 (S.D.N.Y. 2007) ............. 18

*Clark Consulting, Inc., v. Financial Solutions Partners, LLC*, 2005 WL 3097892, at *2

(S.D.N.Y. Nov. 17, 2005) ........................................................................................................ 15

*Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317-18 (2d Cir.1982) ...................... 24

*Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021) ............................................................ 18

*Cowan v. Costco Wholesale Corp.*, 2017 WL 59080 *2 (E.D.N.Y. Jan. 5, 2017) ....................... 11

*Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40 (1st Dep't 2004) .......................................................... 17

*Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999) ........................................................................... 20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)

....................................................................................................................................................... 15

Genesco Entm't, Div. of Lymutt Indus., Inc. v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) 20,

21

*Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521,

1532 (S.D.N.Y. 1994) *modified on other grounds*, *Fashion Boutique of Short Hills, Inc. v.

Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) .......................................................................... 26

*Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) .................................................... 15

*Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir. 1992) ............................................................................ 24

*Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 115 (2d. Cir. 2005) ............................... 18

*Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 294 (1999), ................................................ 21

*Karlin, .,* 93 N.Y.2d 282, 294 (1999) ........................................................................ 21

*Katz v. Donna Karan Co. LLC*, 872 F.3d 114, 121 (2d Cir. 2017) .............................. 13

*Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005, 1020-21 (S.D.N.Y. 1994) ....................................................................... 26

*Morrow v. Ann Inc.*, No. 16-CV-3340 (JPO), 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017) ... 11

*National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ........ 13, 15

*Oswego Laborers' Local 214 Pension Fund v. Me. Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (. 1995). ........................................................................................... 21

*Philips International Investments, LLC v. Pektor*, 117 A.D.3d 1, 3 (1st Dep't 2014) ........ 17

*PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 124 (2d Cir. 1984). ............ 25

*Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 341 (S.D.N.Y. 2021) ................... 11

*Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152-53 (2d Cir. 2007) .......... 26

*Vogel v. Boris*, 2021 WL 1668072, at *7 (S.D.N.Y. Apr. 28, 2021) ............................. 11

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 63 (2d Cir. 1988) ...... 13

*Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010) ................ 17

## Statutes

Federal Rule of Civil Procedure12 (b)(6) ................................................................. 5

Federal Rule of Civil Procedure. 8(a). .................................................................... 16

Federal Rules of Civil Procedure 12(b)(1) ...................................................... 5, 6, 11, 14

N.Y. G.B.L. § 349 ................................................................................................................ 21, 24

**PRELIMINARY STATEMENT**

Plaintiff Free Holdings Inc. respectfully requests that the Court deny Defendant, Kevin McCoy's, motion (ECF No. 59, 60, the "Motion") to dismiss the Amended Complaint ("Am. Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff also separately opposes the related motion filed by Sotheby's Inc. (ECF No. 54, 55, the "Sotheby's Motion"), and incorporates that opposition herewith. Based on Plaintiff's Opposition to both motions filed by Kevin McCoy and Sotheby's Inc., the Court should deny Defendants' requested relief.

**INTRODUCTION**

The primary purpose of the Namecoin blockchain is to register names. On Namecoin, the "name" is what can be controlled – it is the unique and "non-fungible" part of the now ubiquitous phrase "non-fungible token." However, it is important to understand that because Namecoin was such an early blockchain, modern terminology (including the phrase "non-fungible token" itself), *post*-dates the creation of the Namecoin blockchain and McCoy's creation of *Quantum*. The dispute before the Court is premised upon issues regarding blockchain protocols and emerging vocabulary that have not frequently – if ever – been litigated. To properly understand the nature of the dispute between the parties, the Court requires a rich and technical command of the Namecoin protocol and related transactions.

McCoy and Sotheby's claim to have presented the Court with definitive proof that Plaintiff's case theory is not only wrong, but implausible. However, McCoy and Sotheby's motions provide an incomplete, misleading, and inaccurate description of the Namecoin protocol.  Indeed, McCoy and Sotheby's invite this court to misapply modern blockchain processes, frameworks, and terminology to the primitive Namecoin blockchain protocol.  This is akin to parsing a modern translation of the old English poem, Beowulf, which would provide the

1

Court with a glimpse into the tale, but fail to provide the Court with the original, native context necessary for the Court to fully comprehend the requisite nuance. Under the guise of extrinsic evidence under Fed. R. Civ. P. 12(b)(1), Defendants provide the Court with an incomplete and slanted picture of the Namecoin protocol, while simultaneously and inappropriately restating Plaintiff's allegations.  Defendants seek to replace Plaintiff's allegations with facts they find more palatable for their own purposes.  In the process, and by design, Plaintiff's allegations are lost in translation. To properly detect and parse the inaccuracies of Defendants' motions, the Court must learn old English – or the functionality of the Namecoin blockchain – not the modern translation that Defendants misleadingly dress up as the original.

At this stage of the proceeding, as the Court can readily determine from the Amended Complaint, Plaintiff has properly pleaded a short and plain statement of its claim. The Namecoin blockchain provides the ability to register names. McCoy used this system to create a name corresponding to the work *Quantum*, which Plaintiff now controls. The Court should deny Defendants' motions and allow the next chapter in this litigation to commence.

## FACTUAL BACKGROUND

In 2014, artist Kevin McCoy ("McCoy") minted a digital artwork on the Namecoin blockchain called *Quantum* (the "Namecoin-*Quantum*"), which is now universally regarded as the world's first NFT.  Am. Compl. ¶¶ 36-37.  According to McCoy, the Namecoin-*Quantum* represents "birth" and "provenance."  Am. Compl. ¶ 56.  The artistic principle underlying the Namecoin-*Quantum* was "to use blockchain technology to create **indelible** provenance and ownership of digital images of this kind."  *See* Am. Compl. ¶ 57 (emphasis added).[1]  When he created the Namecoin-*Quantum*, McCoy inserted the following in its metadata description:

---

[1] The word indelible is defined as a thing "that cannot be removed, washed away, or erased." Merriam Webster https://www.merriam-webster.com/dictionary/indelible (last visited August 15, 2022).

> I assert title to the file at the URL http://static.mccoyspace.com/gifs/quantum.gif with the creator's public announcement of it's publishing at the URL https://twitter.com/mccoyspace/status/462320426719641600  The file whose SHA256                     hash                     is d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a     is taken to be the file in question. **Title transfers to whoever controls this blockchain entry**.

(emphasis added). *See* Am. Compl. ¶ 38. Plaintiff defined Namecoin-*Quantum* as inclusive of "Name d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a." *See* Am. Compl. ¶ 38 n.3.

After creating *Quantum*, and indelibly committing it to the Namecoin blockchain, McCoy subsequently let the Namecoin blockchain record that housed *Quantum* expire, rendering the NFT free to claim by anyone who elected to reregister the name.  *See* Am. Compl. ¶¶ 39-41.  On or around April 5, 2021, Plaintiff claimed the blockchain record which represents Namecoin-*Quantum* and remains title holder to the same.  *See* Am. Compl. ¶¶ 42-43.

On May 28, 2021, McCoy minted a <u>second</u> NFT, also called *Quantum*, on the Ethereum blockchain (the "Ethereum-*Quantum*") and began working with Sotheby's Inc. ("Sotheby's") to market and promote the piece for sale in Sotheby's upcoming auction titled *Natively Digital: A Curated NFT Sale*.  *See* Am. Compl. ¶¶ 6, 8, 52-54.  The purpose of the *Natively Digital* auction was to showcase and sell some of the earliest NFTs, and Defendants marketed and promoted Ethereum-*Quantum* as the first NFT ever created.  *See* Am. Compl. ¶¶ 15, 54-55, 57.

Defendants issued materially false and misleading statements of fact in the course of marketing and promoting the sale of Ethereum-*Quantum*. McCoy stated that he "moved the original on chain data from a burned Namecoin token into a modern industry standard ERC-721 token, while preserving all of the original on chain information."  Am. Compl. ¶ 66.  This statement is false because the Namecoin-*Quantum* was not "burned" or otherwise removed from

3

the Namecoin blockchain, and requires no preservation.  Am. Compl. ¶ 68, 73.  Defendant issued

these materially false and misleading claims in order to promote and market the

Ethereum-*Quantum* as a highly valuable, first of its kind collectible (and supposed replacement

of the allegedly destroyed Namecoin-*Quantum*).  On the basis of these false statements

Defendant ultimately sold the Ethereum-*Quantum* for $1,472,000.  *See* Am. Compl. ¶ 84.

## ARGUMENT

### I.   Plaintiff's Claims Are Justiciable

#### A.   Plaintiff has Properly Pled Standing Under 12(b)(1)

Defendant asserts that "Plaintiff has not viably or plausibly alleged any injury-in-fact and

standing to sue" because "Plaintiff alleges itself to own a *different* and 'NEW' NFT rather than

the 2014 NFT."  *See* Br. at 12.  Specifically, Defendant mistakenly suggests that Plaintiff's

registration of the Namecoin-*Quantum* name "does nothing more than make Plaintiff the current

user of that *namespace*" and argues that "Plaintiff has not plausibly alleged that its right to use a

Namecoin name granted Plaintiff title to and control over the 2014 NFT itself." Br. at 12

(emphasis in original).  Defendant is wrong.

To begin with, Plaintiff unambiguously alleges that Defendant created the

Namecoin-*Quantum* in 2014, but subsequently allowed the record to expire. *See* Am. Compl.

¶¶ 36, 41.  Plaintiff further alleges that it claimed Namecoin-*Quantum* on or around April 5,

2021, and currently holds title to it.  *See* Am. Compl. ¶ 42-43.  These are plain allegations that

Plaintiff owns title and control over the Namecoin-*Quantum*.

More specifically, Plaintiff alleges that it owns title to the Namecoin name

"d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a." (hereafter

"-709a"). *See* Am. Compl. ¶ 38-43.  Although long and indecipherable,[2] this "name" ending in -709a is the part of the *Quantum* NFT which is capable of being possessed. It is this -709a name that can be registered, created, edited, bought, sold, etc.[3] It is this "name,"-709a, that was initially registered by McCoy in 2014, and then later claimed by Plaintiff in 2021. It is this name that is the "non-fungible token" at issue in this dispute. Defendant's further contention that "Plaintiff has not plausibly alleged that its right to use a Namecoin namespace granted Plaintiff title to and control over the 2014 NFT itself" (Br. at 12) is therefore incorrect.

Prior to registration by McCoy, the -709a name did not exist and the name had no history associated with it. It had no functionality in this primordial state. However, once registered by McCoy, all subsequent activity associated with that name is *indelibly* linked to that name, for so long as the Namecoin blockchain exists. This includes activity by Free Holdings, which can only be *added* to the history of the -709a name as time goes on. But the prior history associated with McCoy cannot be deleted – as it is *indelible*.

Additionally, the -709a name is the only name on the Namecoin blockchain that could have exactly that 64-digit alpha-numeric name. The name is unique, and either while active, semi-expired, or expired, no one else could create a *second* name with the same name on the Namecoin blockchain. Therefore, for example, when Free Holdings sought to acquire the name -709a in 2021, unlike McCoy in 2014, the name already existed on the Namecoin

---

[2] The 64-digit alpha-numeric "name" d41b8540cbacdf1467cdc5d17316dcb672c8b43235fa16cde98e79825b68709a is the "SHA256 hash" of the .gif image file created by McCoy. See Crypto Definitions, https://cryptodefinitions.com/dictionary/sha-256/ (last visited August 15, 2022). The Namecoin protocol allows McCoy to choose a shorter "name," for example he could have chosen the name "Quantum," or "MyFirstNFT," (presuming they were not already registered) but he did not. Relatedly, different "namespaces" (or "name prefixes") can also be chosen, which can be "used by applications to distinguish between different types of names in Namecoin. For example, d/example is the domain name example.bit, and id/example is an identity." See Charron Declaration Exhibit A.

[3] See, e.g., Namecoin, Atomic Name Trading  https://www.namecoin.org/docs/name-owners/atomic-name-trading/ (last visited August 15, 2022)(describing how to buy or sell a Namecoin name "this makes it possible to sell or buy a name") (emphasis added).

blockchain, and it had a preexisting history (namely the history created by McCoy). Once re-registered by Free Holdings, the -709a name then owned by Free Holdings, was inextricably and forever linked to the historical records generated by McCoy, on that name, to create *Quantum*. This was presumably McCoy's intent because, in his own words, McCoy wanted to create "indelible provenance." *See* Am. Compl. ¶ 57.

McCoy apparently does not dispute that Plaintiff controls the -709a name. Instead, McCoy's argument is that Plaintiff's control of that name has a different meaning than what is alleged by Plaintiff in the Amended Complaint. McCoy argues that Plaintiff now controls a "NEW" NFT distinct from the Namecoin-*Quantum*. *See* Br. at 12. This argument is without merit, and not proper on either the 12(b)(1) or 12(b)(6) standard.

Defendant's attempted recharacterization of the Namecoin protocol is misguided and seeks to rewrite the Amended Complaint by inventing allegations (and NFTs) Plaintiff did not plead. For example, Plaintiff does not plead the existence of a "2014 NFT" and a "2021 NFT," as argued by McCoy. *See* Br. at 12. Indeed, McCoy has <u>invented</u> a <u>new NFT</u> for purpose of its motion. Then, premised upon facts not described in the Amended Complaint – the newly conjured NFT – Defendant invites this Court to summarily rule (without the aid of fact discovery or expert testimony) on the technical and complex processes concerning the functionality of the Namecoin blockchain. Br. at 11-13. The Court should not allow McCoy to rewrite the Amended Complaint to fabricate issues of standing.

Defendant's argument is also misleading because it ascribes undue meaning to the FAQ. In its Motion, McCoy states "[t]he Court may consider Namecoin's <u>actual protocol (referred to as its 'FAQ')</u> on this motion." Br. at 4. However, McCoy mistakes the Namecoin "protocol" (which is decentralized code running autonomously by a peer-to-peer proof-of-work blockchain)

for a FAQ (which is a secondary source, essentially a user-generated instruction manual). *See generally* Charron Declaration, Exhibit A. McCoy also states that "The Namespace Report is conclusive that the 2021 NFT copies, but is nonetheless distinct from, the 2014 NFT – which accords with Plaintiff's admission that 'no two NFTs are the same.'" Br. at 7. This again evidences a misreading of the information presented on the Namebrow.se blockchain explorer. While both the Namecoin FAQ and Namebrow.se website are instructive, they are not necessarily canonical, and they are both are ultimately secondary sources that must be interpreted in context of the primary source.[4] The primary source at issue here – the true "protocol" – is unquestionably the Namecoin blockchain itself.

Most importantly, the Namebrow.se blockchain explorer apparently does not properly display the relevant history of the -709a name. *See* Peltz Declaration, filed herewith. If you looked at only Namebrow.se, the value returned for block 174923 (corresponding to McCoy's indelible creation of Namecoin-*Quantum*) says "none." Crucially, direct interaction with the Namecoin protocol produces a different result – the display of the text from the Namecoin blockchain for the -709a name returns a different value than the Namebrow.se blockchain explorer – presumably because McCoy committed this text in "hex" format instead of "ascii." *Id.* at ¶¶ 14-15.

---

[4] McCoy's motion evidences additional misreading of the FAQ. For example, the Motion quotes "Namecoin states:" and then provides a block quote from the FAQ (the initials F-A-Q stand for "frequently asked questions"). However, the FAQ is not "Namecoin." The FAQ is apparently written by two Namecoin contributors who happen to overlap with some of the Namecoin core team. See: Namecoin/namecoin.org
https://github.com/namecoin/namecoin.org/blob/master/docs/faq/index.md (last accessed August 15, 2022). McCoy also states that "Namecoin also states that it 'itself isn't aware of namespaces.'" However, this quote is out of context and misunderstands the meaning of this section of the FAQ. Namecoin recognizes "names." It does not recognize "namespaces." So-called namespaces are the d/ (or "dee-space") or id/ ("eye-dee-space") which are pre-fixes to names, which can provide functionality to third-party applications that do recognize different namespaces (for example, to allow the Namecoin names to function as decentralized domain names). Namespaces are "used by applications to distinguish between different type of names in Namecoin." *See* Charron Declaration Exhibit A.

To the extent the Court entertains Defendant's erroneous position, it would benefit from specialized knowledge about blockchain technology in general, and the Namecoin blockchain in particular.  Indeed, this very issue – defining the legal import of control of digital assets on the Namecoin blockchain – is the subject of differing opinions and is presumably a substantive legal question to be resolved by the Court.[5]  Such detailed and contested extrinsic evidence is not yet properly before the Court, even on a 12(b)(1) motion. The Second Circuit has held that a Plaintiff is "entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Carter v. Healthport Techs*., LLC, 822 F.3d 47, 57 (2d Cir. 2016). To the extent the Court finds that any "extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d 47, 57 (reversing and remanding district court judgment which improperly dismissed plaintiff's allegations in complaint sufficient for Rule 12(b)(1)).

Plaintiff alleges ownership of the Namecoin-*Quantum* and a "concrete injury" under each one of its claims. *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 341 (S.D.N.Y. 2021). That injury "is concrete, and while it may ultimately prove insufficient to justify relief under the statutes at issue, it is sufficient to confer constitutional standing. Holding otherwise would convert the mine run of routine challenges under Rule 12(b)(6) —e.g., whether a plaintiff had plausibly alleged the materiality of a misrepresentation, or damages—into attacks on the Article III authority of the reviewing court." *Id. citing Morrow v. Ann Inc.*, No. 16-CV-3340 (JPO), 2017 WL 363001, at *3 (S.D.N.Y. Jan. 24, 2017). Moreover, courts routinely deny motions to dismiss

---

[5] *See, e.g.*,  *Defining "NFT" in Historical Context*, June 27, 2022, https://mirror.xyz/chainleft.eth/MzPWRsesC9mQflxlLo-N29oF4iwCgX3lacrvaG9Kjko  ("[T]here is an ongoing debate about the age of Namecoin NFTs that expired and then got re-registered.").

where dismissal requires the court to issue a fact ruling requiring the aid of fact discovery or expert opinion. *See Cowan v. Costco Wholesale Corp.*, 2017 WL 59080 *2 (E.D.N.Y. Jan. 5, 2017) (rejecting dismissal of claim where court deemed it inappropriate to "definitely determine whether the purported hydrocarbon components, *i.e.*, petroleum gas (liquefied), propane, 2-methyl, and butane are, in fact, hydrocarbons" at the motion to dismiss stage); *Vogel v. Boris*, 2021 WL 1668072, at *7 (S.D.N.Y. Apr. 28, 2021) ("Given the novelty and complexity of the transaction here, the Court finds that a determination . . . involves questions of fact inappropriate for resolution at the pleading stage.")

The information provided by McCoy in its review of the "Name operations" associated with what he misleadingly styles as the "Namespace Report" is technical, and ultimately inappropriate for the court to use as a basis for a ruling at the motion to dismiss stage. But, even so, McCoy is wrong. Defendant's argument relies on the analysis of the history of transactions that correspond with the -709a name.[6] Defendant's argument is effectively that each blockchain transaction is a separate NFT distinct from the name that it is associated with. But this (1) is inapposite to the claims made in the Amended Complaint, and (2) does not make sense (at least on the Namecoin blockchain). Given that the purpose of the Namecoin blockchain is to allow users to own a "name," the "ownable" asset at issue – the NFT – is the name.

The Namecoin FAQ states: "How does Namecoin work? The Namecoin software is used to register names and store associated values in the blockchain, a shared database distributed by a P2P network in a secure way. The software can then be used to query the database and retrieve data." Charron Declaration, Exhibit A, at 2 (emphasis added). In light of this, the only plausible reading of the phrase "Title transfers to whoever controls this blockchain entry" is to read that

---

[6] Note that throughout McCoy's motion, he interchangeably uses the words "name" and "namespace" in a way which is inconsistent with the usage defined in the Namecoin FAQ.

phrase as meaning in this case: "Title transfers to whoever controls [name -709a]." Indeed, Defendant's argument otherwise is nonsensical.  The operation "NAME_NEW" is in fact a misnomer, because as discussed above, in does not create a "new" name every time it is run. In fact, a Namecoin name can only be "created" once.  *See* Charron Declaration, Exhibit A, at 3.

Plaintiff alleges that it owns the -709a name (i.e., it now controls that blockchain entry). *See* Am. Compl. ¶¶ 38-43. This Court's inquiry should end there because Plaintiff has plausibly alleged that Plaintiff's right to use a Namecoin name in fact grants Plaintiff title to and control over the Namecoin-*Quantum*.  *See id.* This is sufficient at this stage of the case.

Lastly, Defendant has moved for dismissal with prejudice.  *See* Br. at 2.  "[W]here a case is dismissed for lack of Article III standing . . . that disposition cannot be entered with prejudice, and instead must be dismissed *without* prejudice."  *Aikens v. Portfolio Recovery Assocs.*, 716 Fed. Appx. 37, 40 (2d Cir. 2017); *Katz v. Donna Karan Co. LLC*, 872 F.3d 114, 121 (2d Cir. 2017).  Therefore, to the extent the Court countenances Defendant's argument, it must dismiss under Rule 12(b)(1) without prejudice.

Accordingly, for the reasons cited above, the Court should deny Defendant's 12(b)(1) motion to dismiss.

### B.  Plaintiff's Claims are Ripe

Next, Defendant asserts that Plaintiff's claims fail because they are hypothetical. Specifically, Defendant argues that Plaintiff's claims are insufficient because Plaintiff fails to allege "any actual, imminent or attempted sale" of its NFT, fails to allege that it marketed its NFT, and fails to "allege any facts demonstrating actual or likely consumer confusion arising out of any statements made by McCoy."  Br. At 14.  Defendant is wrong.

10

Plaintiff's claims are ripe because they plead allegations presenting an injury in fact that is actual or imminent, not conjectural or hypothetical, caused by Defendant, which can be addressed by a favorable court decision.  *See National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).  A court must be mindful that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 63 (2d Cir. 1988) (*citing Regional Rail Reorg. Act Cases*, 419 U.S. 102, 138 (1974)).

As alleged in the Amended Complaint, Defendant knowingly issued false and misleading statements about the Ethereum-*Quantum* NFT he sold through Sotheby's by dishonestly and misleadingly trading on the historic name, title, and pedigree of Plaintiff's property.  *See* Am. Compl. ¶ 19.  Despite his own knowledge that the statements were false and misleading, and notice from Plaintiff of the same, Defendant intentionally promoted the sale of Ethereum-*Quantum* using false and misleading statements.  *See id.*  Defendant used the false and misleading statements in advertisements, marketing, and promotions in order to deceive consumers and to drive up the number and price of bids for his Ethereum-*Quantum*.  *See* Am. Compl. ¶¶ 66-67.  Plaintiff additionally shared a Tweet in which it invited McCoy to "participate in the sale of Quantum." Am. Compl. ¶ 48. If McCoy had taken up this offer, the Namecoin-*Quantum could* have been included in McCoy's sale of Ethereum-*Quantum* at the Sotheby's auction (and corrected related marketing statements). Defendant ultimately rejected those offers and prevented Free Holdings from selling the Namecoin-*Quantum* as part of the auction (or otherwise in light of Defendants' continuing false statements). McCoy sold the Ethereum-*Quantum* alone (i.e., separate, and apart from the sale of Namecoin-*Quantum*) for

11

$1,472,000, relying on false claims that Namecoin-*Quantum* had been destroyed.  *See* Am. Compl. ¶ 84.

These actions have directly caused Plaintiff real and non-hypothetical damages. Defendant has enriched himself at Plaintiff's expense, and continues to do so, by perpetuating the materially false and misleading statements at the expense of Plaintiff's property.  *See* Am. Compl. ¶¶ 60-70.  Defendant has repeated the false and misleading statements in news and magazine articles, and on national television.  *See* Am. Compl. ¶¶ 93-97.  Defendant's conduct has forced Plaintiff to expend time and money in order to repair title to his Namecoin-*Quantum*. *See* Am. Compl. ¶¶ 99-100.  Defendants have precluded Plaintiff from including Namecoin-*Quantum* in the Sotheby's sale of Ethereum-*Quantum*, continue to make false statements concerning the status of Namecoin-*Quantum*. Any prospective purchaser of Namecoin-*Quantum* would now have valid reason to doubt the value of the Namecoin-*Quantum* in context of Defendants' continued repetition of these false claims, which are continued in Defendants' motions. This Court has the ability to remedy this situation by declaring Defendants' statements as definitively false. This is a live controversy, which "creates a direct and immediate dilemma," ripe for decision by this Court. *Natl. Org. for Marriage, Inc.,* 714 F.3d at 691.

## II.    Standard of Review for Rule 12(b)(6)

Each of Plaintiff's claims are sufficiently pleaded in the Amended Complaint. Plaintiff has made a "short and plain statement of the claim" as required by Fed. R. Civ. P. 8(a). *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Clark Consulting, Inc.*, *v. Financial Solutions Partners, LLC*, 2005 WL 3097892, at *2 (S.D.N.Y. Nov.

17, 2005); *see also Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) ("Any Rule 12(b)(6) movant for dismissal faces a difficult (though not insurmountable) hurdle.").  "At the motion to dismiss stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  *Clark Consulting*, 2005 WL 3097892, at *2; *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004)."The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Clark Consulting*, 2005 WL 3097892, at *2.  "Accordingly, a claim can only be dismissed if no relief can be granted under any set of facts that could be proved consistent with the allegations."  *Id.*; *Eternity Global*, 375 F.3d at 176 ("A complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.").

## III.    Plaintiff has Stated a Cause of Action for Unjust Enrichment

### A.    Plaintiff Plausibly Alleges That Defendant Was Enriched at Plaintiff's Expense

Defendant's argument that Plaintiff fails to make allegations to support a plausible inference that Defendant was enriched at Plaintiff's is meritless. Furthermore, Defendant asserts that Plaintiff's Namecoin-*Quantum* merely "copies metadata from the 2014 NFT, akin to a forgery."  Br. at 15.  Defendant is wrong because as discussed, *supra*, Defendant misunderstands Plaintiff's allegations and misstates the operation of the Namecoin blockchain.

As stated above, Plaintiff has alleged facts to support an inference that McCoy was enriched at Plaintiff's expense because the Amended Complaint alleges Plaintiff has title to Namecoin-*Quantum*. Plaintiff's allegations are based on the fact that the Namecoin-*Quantum* is the original and first NFT Defendant minted in 2014.  Plaintiff's pleading makes clear that Defendant minted the Namecoin-*Quantum* in 2014, but lost control and title to the NFT on or

13

around January 2015.  *See* Am. Compl. ¶¶ 36-41.  Plaintiff then alleges that Plaintiff claimed

Namecoin-*Quantum*.  *See* Am. Compl. ¶¶ 42-43.

Plaintiff also alleges that Defendant enriched himself at Plaintiff's expense. Plaintiff

alleged a diminution in value of its Namecoin-*Quantum* due to Defendants' actions. *See* Am.

Compl. ¶ 98.  By falsely claiming the Namecoin-*Quantum* had been "burned" or "removed"

from the Namecoin Blockchain, Defendant was able to successfully sell his 2021 newly minted

Ethereum-*Quantum* as if it were the original, as opposed to a validly authorized reprint. Indeed,

Defendant enriched himself by appropriating the renown, prestige, and pedigree of the

Namecoin-*Quantum* in order to sell his own NFT, all at Plaintiff's expense.

B. <u>Plaintiff Alleges a Connection Between Itself and McCoy</u>

"Today, New York law does not require an unjust enrichment plaintiff to plead direct

dealing, or an actual, substantive relationship with the defendant. It merely requires that the

plaintiff's relationship with a defendant not be too attenuated." *Waldman v. New Chapter, Inc.*,

714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010) (internal citations omitted). A relationship or

connection is sufficient if it could have caused reliance or inducement. *See Philips International

Investments, LLC v. Pektor*, 117 A.D.3d 1, 3 (1st Dep't 2014) ("plaintiff properly alleged a

relationship between the parties that could have caused reliance or inducement to support an

unjust enrichment claim") (internal quotation marks omitted); *see also Cox v. Microsoft Corp.*, 8

A.D.3d 39, 40 (1st Dep't 2004) (indirect purchaser of Microsoft software permitted to sue

Microsoft for unjust enrichment).

Plaintiff has alleged facts that describe a sufficiently close relationship in order to state a

claim for unjust enrichment. Specifically, Plaintiff has alleged that Defendant issued statements

upon which Plaintiff relied and induced Plaintiff into re-registering the Namecoin-*Quantum*.

14

When Defendant created the Namecoin-*Quantum*, Defendant placed in the value field of the name the following statement: "Title [to the Namecoin-Quantum] transfers to whoever controls this blockchain entry." Amended Compl. at ¶ 38. Plaintiff relied on this statement when he re-registered the Namecoin-*Quantum*. It is irrelevant that Defendant does not know Plaintiff personally and never responded to his communications because Defendant, by the very creation of the Namecoin-*Quantum*, and with his statement, expressly invited anyone (including Plaintiff) to interact with his NFT, and indeed created the situation where Plaintiff could register the name in order to resume ownership and control of the Namecoin-*Quantum*. Accordingly, because Defendant caused inducement or reliance by Plaintiff, there is a sufficiently close relationship for a claim for unjust enrichment.

## IV.   Plaintiff Has Stated a Cause of Action for Slander to Title

### A.   Plaintiff Alleges Malice by McCoy

To state a claim for slander to title, Plaintiff must allege that the statements at issue are made with malice or a reckless disregard for their truth or falsity. New York courts apply the "actual malice" standard, which exists "when a speaker makes a statement knowing it is false or while personally harboring serious doubts about its veracity." *Chamilia, LLC v. Pandora Jewelry, LLC*, 85 U.S.P.Q.2d 1169, 1179 (S.D.N.Y. 2007); *see also Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 115 (2d. Cir. 2005). To establish actual malice, it is sufficient that Plaintiff plead that Defendant either (1) knew the challenged statements were false; or (2) acted with reckless disregard as to whether the statements were true or false. *See Conti v. Doe*, 535 F. Supp. 3d 257, 279 (S.D.N.Y. 2021); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 182 (2d Cir. 2000). "Actual malice can be established "through the defendants' own actions or statements, the dubious nature of his sources, and the inherent improbability of the story among

other circumstantial evidence." *Celle*, 209 F.3d at 183 (internal citation and quotation marks omitted).  Plaintiff's allegations meet this requirement.

Plaintiff has plead facts supporting a plausible inference of malice or reckless disregard for the truth or falsity of the statements at issue by Defendant. Plaintiff has alleged that Defendant understood that the holder of the name for the Namecoin-*Quantum* would own and control the Namecoin-*Quantum*. In particular, Defendant wrote in the value field for the Namecoin-*Quantum* blockchain record that "Title [to the Namecoin-*Quantum*] transfers to whoever controls this blockchain entry." *See* Am. Compl. ¶ 38. Later, when Defendant was attempting to sell his 2021 Ethereum-*Quantum*, Plaintiff contacted Defendant to alert Defendant that Plaintiff owned and controlled the blockchain entry that granted title to the Namecoin-*Quantum*. *See* Am. Compl. ¶¶ 44-51.

If the Namecoin-*Quantum* existed and was not "burned" or "removed" from the Namecoin blockchain as Defendant advertised, Defendant would be precluded from promoting his Ethereum-*Quantum* as the world's first NFT. Accordingly, Defendant knew that he had a problem. In Defendant's own words, at the time Defendant created the 2014 Namecoin-*Quantum*, his intent was to use Namecoin's "blockchain technology to create ***indelible*** provenance and ownership of digital images" such as *Quantum*. *See* Am. Compl. ¶ 57. Indeed, a significant part of the artistic expression underlying *Quantum* is that it is a work that, by its very nature, *cannot* be erased or destroyed.  *See* Am. Compl. ¶¶ 56-57.

Plaintiff has pled that Defendant knew or should have known that the 2014 Namecoin-*Quantum* still existed because he established the Namecoin-*Quantum* as a work that could not be destroyed, and because Plaintiff informed Defendant that the Namecoin-*Quantum* existed and was owned and controlled by Plaintiff.  *See* Am. Compl. ¶¶ 57, 44-51. Plaintiff's

about-face proclamations that the Namecoin-*Quantum* had been "burned" or "removed" from the Namecoin blockchain stand in stark contrast to his past statements and the inherently "indelible" nature of the Namecoin-*Quantum*. Accordingly, Plaintiff has plead non-conclusory allegations supporting plausible inferences that Defendant acted with malice or reckless disregard for the truth.

### B. Plaintiff Alleges Special Damages

Plaintiff has adequately plead special damages by alleging that it expended time and money to repair title to the Namecoin-*Quantum* NFT. Plaintiff alleges that its "Namecoin-*Quantum* NFT has significant value due to its status as the first NFT and such value is being significantly diminished by the false and misleading statements made by McCoy and Sotheby's." Am. Compl. ¶ 98. Plaintiff further detailed that it spent $5,311.49 seeking to have Defendant publicly correct his false and misleading claims.  Am. Compl. ¶ 100.

The New York Court of Appeals has formulated the requirement of "special injury" as follows:

> [B]urdens substantially equivalent to those imposed by provisional remedies are enough. Actual imposition of a provisional remedy need not occur, and a highly substantial and identifiable interference with person, property or business will suffice . . . . Since the role that the special injury requirement fulfills is that of a buffer to insure against retaliatory malicious prosecution claims and unending litigation, we are satisfied that a verifiable burden substantially equivalent to the provisional remedy effect can amount to a special injury. Put another way, what is "special" about special injury is that the defendant must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit.

*Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999). Plaintiff's allegation that he expended $5,311.49 to have Defendant publicly correct his false statements concerning Plaintiff's ownership of the Namecoin-*Quantum* NFT, alone, satisfies the requirement that Plaintiff plead special damages.

Clearly, this additional expense is a concrete harm separate and apart from the financial demand of bringing suit.

## V.      Plaintiff Alleges a Cause of Action for Violation of N.Y. G.B.L. § 349

Defendant argues that Plaintiff's claim under N.Y. G.B.L. § 349 should be dismissed because Plaintiff fails to allege consumer-oriented conduct. In particular, Defendant asserts that "Plaintiff fails to allege how McCoy's statements about the 2014 NFT, in connection with a single auctioned item (*i.e.*, the *Quantum* NFT), would have any impact on McCoy's new 'project' or future 'artwork' or how those statements would specifically harm consumers at large." Br. at 21. Defendant is wrong.

While McCoy cites *Genesco Entm't, Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) for the proposition that a "single shot transaction" cannot support a claim under Section 349, *Genesco* is inapposite. *Genesco* was considered in the context of a Rule 56 motion and dealt with a concert promoter seeking to lease Shea Stadium from New York City during a private negotiation where the contract fell through after a break down in the relationship between the parties. *Id.* at 745. This is not a "[p]rivate contract dispute[], unique to the parties" contemplated by *Genesco* and its progeny.

On the other hand, in *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 294 (1999), the Court of Appeals modified an order of the Appellate Division and allowed a Section 349 claim to proceed, finding that it was not the "physician's treatment of an individual patient" that was actionable, but instead found a Section 349 claim actionable where a Doctor's false advertising activity directed at the "consuming public at large in order to promote business." *Karlin*, 93 N.Y.2d at 294. Indeed, other New York courts have held:

> Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct. Moreover, the legislative history makes plain that this law was intended to 'afford a practical

18

means of halting consumer frauds at their incipiency without the necessity to wait
for the development of persistent frauds' (*see*, Mem of Governor Rockefeller,
1970 NY Legis Ann, at 472-473). Plaintiff, thus, need not show that the defendant
committed the complained-of acts repeatedly — either to the same plaintiff or to
other consumers — but instead must demonstrate that the acts or practices have a
broader impact on consumers at large.

*Oswego Laborers' Local 214 Pension Fund v. Me. Midland Bank, N.A.*, 85 N.Y.2d 20, 25

(1995).

Here, Plaintiff alleged that McCoy marketed the Ethereum-Quantum to consumers in the

context of an auction at Sotheby's. See Am. Compl. ¶ 128-29. The advertising of Sotheby's

auction of Ethereum-Quantum was clearly public and broadly consumer-oriented. Numerous

consumers had the opportunity to purchase Ethereum-Quantum at the Sotheby's auction and

were presumably deceived by Defendants' false advertising notwithstanding the fact that only

one purchaser was able to win the auction.

McCoy sets forth new factual assertions that the auction was a "complex

arrangement . . . for a large sum of money . . . involving knowledgeable and experienced

parties," (Br. at 21) ignoring that the same *Natively Digital* auction marketed at least 27 other

"lots," with some selling under $10,000. These assertions, even taken as true, make the § 349

claim especially appropriate in light of the novelty of an NFT sale and the fact that the auction

achieved broad mass media dissemination riding on the coattails of the false narrative of

Defendants' sale of the so-called "First NFT."

In the Amended Complaint, Plaintiff also alleges that McCoy used his successful sale of

his Ethereum-Quantum to promote and market himself and his artwork in successive sales and

auctions. Plaintiff alleges that Defendant "touts his sale of the Ethereum-Quantum as the first

NFT to establish himself within the NFT community and promote future projects" and then

specifically alleges that Defendant went on national television on Fox Business to "announce[] a

19

new NFT project, and declare[] his intent to continue creating NFT artwork as part of his art practice."  See Am. Compl. ¶¶ 93, 97.  Defendant's false and misleading statements harm consumers by materially deceiving them about Defendant's background and track record.  *See* Am. Compl. ¶ 157.  Indeed, Defendant is using the false and misleading statements to help establish and polish Defendant's "brand" within the emerging NFT marketplace.  *See* Am. Compl. ¶ 93.

The State of New York and the FTC have already indicated that there is a public consumer-protection interest in ensuring truth in advertising for the sale of NFTs.[7] Additionally, McCoy claims Plaintiff failed to plead other details, including McCoy's other planned NFT projects, general consumer awareness of the Quantum sale, and general consumer awareness of NFTs (*see* Br. at 21-22), but these are factual details more appropriate for discovery. Plaintiff's claims are sufficient to state a claim under § 349.

## VI.   Plaintiff Alleges a Cause of Action for Commercial Disparagement

Defendant asserts that Plaintiff's claim for commercial disparagement should be dismissed because Plaintiff failed to allege special damages.  Plaintiff has adequately plead special damages, as explained *supra,* Section III.b. Defendant furthermore asserts that "Plaintiff does not allege that McCoy made any statements directed at Plaintiff or at the 2021 NFT."  Br. at 22.  Defendant also claims that Plaintiff only made allegations about McCoy concerning statements he issued about the "2014 NFT." *Id*. Defendant's argument is meritless.

---

[7] See, e.g. Alex Nguyen, *New York State's Top Financial Cop Plans New Guidance for NFTs*, (June 29, 2022, 2:09 PM EDT)  https://www.bloomberg.com/news/articles/2022-06-29/new-york-state-s-top-financial-cop-plans-new-guidance-for-nfts ("Adrienne Harris, the superintendent of New York's Department of Financial Services, said on Wednesday that her agency was planning to issue new guidance on how its rules apply to NFTs.");*TINA.org Sends Notification Letters to Celebrities Promoting NFTs*, August 8, 2022, https://truthinadvertising.org/articles/tina-org-sends-letters-to-celebrities-promoting-nfts/ (asserting consumer protection role for the Federal Trade Commission in light of celebrity endorsement of consumer-focused NFTs)

As discussed, Plaintiff has plead that it controls Namecoin-*Quantum*. *See supra,* Section I.  Furthermore, Plaintiff's allegations make clear that Defendant made certain false and misleading statements about the Namecoin-*Quantum* in order to help auction his Ethereum-*Quantum*.  Plaintiff specifically alleges that Defendant stated that he "moved [the Namecoin-*Quantum*'s] original on chain data from a burned Namecoin token into a modern industry standard ERC-721 token, while preserving all of the original on chain information."  *See* Am. Compl. ¶ 66.  Plaintiff also asserts that Defendant stated that his Ethereum-*Quantum* that was sold at auction is the world's first NFT.  *See* Am. Compl. ¶ 96.  Finally, Plaintiff alleges that these statements are materially false and misleading because the Namecoin-*Quantum* has not been "burned," "removed," or otherwise destroyed from the Namecoin blockchain, and is presently owned and controlled by Plaintiff. *See* Am. Compl. ¶¶ 141-148.   Accordingly, Plaintiff has stated a claim for commercial disparagement.

## VII.   Plaintiff Alleges a Cause of Action for Violation of Section 43(a) of the Lanham Act

McCoy argues that Plaintiff's false advertising claim under section 43(a) of the Lanham Act should be dismissed for two reasons: first, because Plaintiff failed to allege that McCoy made literally or impliedly false statements, and second, because Plaintiff has not viably pleaded causation of harm, given that it does not own what McCoy defines as the 2014 NFT. As argued below, both claims are incorrect.

### A.   Plaintiff Alleged that McCoy Made False and Misleading Statements

Defendant's assertion that Plaintiff failed to plead that Defendant's statements were literally or impliedly false requires a warped view of Plaintiff's allegations.  *See* Br. at 23.  For example, McCoy argues that "Plaintiff's conclusory pleading and 'mere subjective belief' about the impact on consumers is insufficient." Br. at 24. However, Plaintiff has pled sufficient detail for purposes of surviving Defendants' motions.

21

The falsity of advertising is an issue of fact. *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317-18 (2d Cir.1982) (followed in *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir. 1992). ("It is not for the judge to determine, based solely upon his or her own intuitive reaction, whether the advertisement is deceptive.") Instead, a determination of deceptiveness is made though an evidentiary hearing, consisting of expert testimony and consumer surveys . *See Johnson & Johnson,* at 297-98. Additionally, because Section 43(a) "is remedial and because its words are so clearly expansive it should, generally speaking, be broadly construed." *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 124 (2d Cir. 1984).

First, Plaintiff pled that Defendant asserted that Plaintiff's NFT had been "burned" or "removed" from the Namecoin blockchain. *See* Am. Compl. ¶¶ 72-75. Plaintiff also alleged that Defendant incorrectly asserted that his Ethereum-*Quantum* NFT was the world's first NFT, and "left a false impression on consumers, namely that the NFT sold in the Natively Digital Auction was the 'first-ever' NFT." Am. Compl. ¶¶ 152, 157. Plaintiff plainly alleged that both of these statements are false. *See id.*

Defendant focuses on the use of the word "burned," but completely ignores that Plaintiff similarly alleged (and Defendant additionally stated) that the Namecoin-*Quantum* had been "moved" from the Namecoin blockchain to the Ethereum blockchain. *See* Am. Compl. ¶ 66. The plain meaning of this statement was meant to convey that the Namecoin-*Quantum* had been removed from the Namecoin blockchain. This statement is literally false. *See* Am. Compl. ¶¶ 66-67.

Regardless, a Lanham claim for false advertising requires that Plaintiff plead a statement that is either literally or impliedly false. If not literally false, the thrust of Defendant's statements

that the Namecoin-*Quantum* had been "burned" or removed from the Namecoin blockchain, and that the Ethereum-*Quantum* was the world's first NFT, implied that the Namecoin-*Quantum* had been destroyed and that Defendant's Ethereum-*Quantum* had inherited the prestige and renown originally reserved for the Namecoin-*Quantum* as a highly valuable collectible and artistic work. Lastly, Defendant argues that "Plaintiff's failure to allege any facts supporting that consumers were actually or likely to be misled by such statements (such as through a survey) means that Plaintiff has not alleged implied falsity as a matter of law." Br. at 23.  Defendant is wrong.  Plaintiff plead allegations of actual consumer confusion when it asserted that the purchaser of Defendant's NFT stated that he had purchased the world's first NFT.  *See* Am. Compl. ¶ 86. This allegation of Defendant's false statements causing a single instance of actual consumer confusion is again sufficient for purposes of stating a claim. For example, in *Mobius Management Systems, Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005, 1020-21 (S.D.N.Y. 1994), the Court found that a single letter, addressed to a potential purchaser of plaintiff's software product was sufficient to meet the requirements of Section 43(a) since the relevant purchasing market was small.

Further, Plaintiff alleged instances of the news media adopting the false narrative propounded by Defendants. *See* Am. Compl. ¶ 95-97. At the motion to dismiss stage, it is premature for Plaintiff to present a consumer survey to the Court. To the extent this Court questions the veracity of those allegations, Plaintiff should be provided the opportunity to conduct further discovery on the misleading nature of Defendant's statements. *Gordon & Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521, 1532 (S.D.N.Y. 1994) *modified on other grounds*, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) denying motion to dismiss plaintiff's Lanham Act claim and noting that

plaintiff's allegations were "not so meritless on its face that we can dismiss it without giving [plaintiff] an opportunity to present extrinsic evidence of the articles' tendency to mislead.").

Thus, under the Court's "broad construction" of the Lanham Act, Plaintiff has pled facts in the Amended Complaint sufficient to allege that "the challenged advertisement is 'literally false,'" or at minimum that "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 152-53 (2d Cir. 2007).

B. Plaintiff Alleges Causation

Defendant argues that "any allegedly false statements about the 2014 NFT could not possibly cause any injury to Plaintiff" on the grounds that "Plaintiff has not viably pleaded that it owns . . . the 2014 NFT." Br. at 25. As explained above, Plaintiff has alleged that it owns the Namecoin-*Quantum*, and that this is the original NFT that Defendant minted in 2014. *See supra,* Section I. Plaintiff has additionally alleged that Defendant's false and misleading statements have caused damage to Plaintiff. *See* Am. Compl. ¶ 158. Lastly, as discussed *supra*, Defendant's dispute that Plaintiff does not own or control the 2014 NFT is a fact intensive dispute that requires discovery and expert testimony to resolve. Therefore, for purposes of this Motion, the Court is required to accept as true Plaintiff's pleading and, it would be inappropriate to resolve this question at the pleading stage.

**VIII. Plaintiff Has Alleged a Cause of Action for Declaratory Judgment**

For the reasons discussed above, Defendant's motion to dismiss Plaintiff's claim for declaratory relief should be denied. Plaintiff has alleged an "actual controversy" because it has plead allegations that it owns the Namecoin-*Quantum*, and that Defendant issued materially false and misleading statements about the Namecoin-*Quantum*, and the Ethereum-*Quantum*, so that Defendant could falsely promote and advertise his NFT at auction. Defendant's statements have

24

damaged Plaintiff and continue to do so as Defendant repeats his false and misleading narrative concerning Namecoin-*Quantum*.  Moreover, Plaintiff's allegations stand in stark contrast to Defendant's motion papers, and only further demonstrate a live controversy concerning Plaintiff's title and ownership to the Namecoin-*Quantum*.  Accordingly, Plaintiff has stated a claim for declaratory relief.

## CONCLUSION

For the foregoing reasons, Free Holdings respectfully requests that the Court deny Defendants', McCoy and Sotheby's motions to dismiss the Amended Complaint and that the Court award Free Holdings such other and further relief as deemed just and proper.

Dated: Rockville Centre, New York
      August 15, 2022

           Respectfully submitted,

           **FALCON RAPPAPORT & BERKMAN PLLC**

           By: */s/ Moish E. Peltz*
           Moish E. Peltz
           Kenneth J. Falcon
           Steven Berlowitz
           Jessica Moore
           265 Sunrise Highway, Suite 50
           Rockville Centre, New York 11570
           (516) 599-0888
           mpeltz@frblaw.com
           kfalcon@frblaw.com
           sberlowitz@frblaw.com
           jmoore@frblaw.com

           *Attorneys for Plaintiff*