UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREE HOLDINGS INC.,<br>*Plaintiff*,<br>-against-<br>KEVIN McCOY and SOTHEBY'S INC.,<br>*Defendants*. | ECF CASE<br>Case No.: 1:22-cv-00881-JLC |

**DEFENDANT SOTHEBY'S INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Theresa M. House
Marcus A. Asner
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: +1 212.836.8000
F: +1 212.836.8689
Theresa.House@arnoldporter.com
Marcus.Asner@arnoldporter.com

Evan M. Rothstein (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street | Suite 3100
Denver, CO 80202-2569
T: +1 303.863.2308
F: +1 303.863.1000
Evan.Rothstein@arnoldporter.com

*Attorneys for Defendant Sotheby's Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..... 1

I. THE FIRST AMENDMENT COUNSELS CAREFUL GATEKEEPING AT THE PLEADINGS STAGE ..... 1

II. PLAINTIFF ADMITS THAT THE WORDS AT ISSUE IN THE CHALLENGED STATEMENTS ARE AMBIGUOUS AND UNSETTLED, AND MISCONSTRUES BLACK LETTER LAW ON OPINION ..... 2

III. PLAINTIFF ARGUES THE WRONG STANDARD FOR FALSITY, AND ADMITS FACTUAL PREDICATES ..... 7

IV. PLAINTIFF'S ACTUAL MALICE ALLEGATIONS DO NOT SURVIVE PLAUSIBILITY SCRUTINY ..... 8

V. PLAINTIFF CANNOT MAINTAIN ITS UNJUST ENRICHMENT CLAIM ..... 9

VI. PLAINTIFF FAILS TO ALLEGE A "CONCRETE AND SUBSTANTIAL" CONTROVERSY, AS REQUIRED ..... 10

CONCLUSION ..... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*,
80 N.Y.2d 130 (1992) ....................5

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010)....................7

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
796 F. Supp. 2d 458 (S.D.N.Y. 2011)....................1

*Bensch v. Est. of Umar*,
2 F.4th 70 (2d Cir. 2021) ....................2

*Bilinski v. Keith Haring Found., Inc.*,
96 F. Supp. 3d 35 (S.D.N.Y. 2015) ....................2, 9

*Brian v. Richardson*,
87 N.Y.2d 46 (1995) ....................4, 5, 6

*Burton v. iYogi, Inc.*,
No. 13-CV-6926 DAB, 2015 WL 4385665 (S.D.N.Y. Mar 16, 2015)....................5

*In re Columbia Tuition Refund Action*,
523 F. Supp. 3d 414 (S.D.N.Y. 2021)....................10

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012) ....................10

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
551 F. Supp. 3d 320 (S.D.N.Y. 2021)....................1

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020)....................3

*Georgia Malone & Co. v. Rieder*,
19 N.Y.3d 511 (2012) ....................9

*Gross v. New York Times Co.*,
82 N.Y.2d 146 (1993) ....................5, 7

*Hengjun Chao v. Mount Sinai Hosp.*,
476 F. App'x 892 (2d Cir. 2012) ....................10

*Immuno AG. v. Moor-Jankowski*,
77 N.Y.2d 235 (1991) ....................4, 5, 6, 7

*Jacobus v. Trump*,
55 Misc. 3d 470 (Sup. Ct., N.Y. Cnty. 2017) ....................4, 5

*James v. Gannett Co*.,
40 N.Y.2d 415 (1976) ....................4

*Kipper v. NYP Holdings Co*.,
12 N.Y.3d 348 (2009) ....................8

*Mann v. Abel*,
10 N.Y.3d 271 (2008) ....................3

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020)....................3

*McKesson v. Pirro*,
No. 160992/2017, 2019 WL 1330910 (Sup. Ct., N.Y. Cnty. Mar. 25, 2019) ....................3

*Rakofsky v. Washington Post*,
39 Misc. 3d 1226(A) (Sup. Ct., N.Y. Cnty. 2013)....................7

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
86 A.D.3d 32 (1st Dep't 2011) ....................7

*Silverman v. Daily News, L.P.*,
129 A.D.3d 1054 (2d Dep't 2015)....................7

*Smartmatic USA Corp. v. Fox Corp*.,
No. 151136/2021, 2022 WL 685407 (Sup. Ct., N.Y. Cnty. Mar. 8, 2022) ....................9

*Soter Techs., LLC v. IP Video Corp.*,
523 F. Supp. 3d 389 (S.D.N.Y. 2021)....................2

*Steinhilber v. Alphonse*,
68 N.Y.2d 283 (1984) ....................7

*Suozzi v. Parente*,
202 A.D.2d 94 (1st Dep't 1994) ....................9

*Themed Restaurants, Inc. v. Zagat Surv.*, *LLC*,
21 A.D.3d 826 (1st Dep't 2005) ....................2

*U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*,
475 B.R. 347 (S.D.N.Y. 2012)....................10

*Valley Electronics AG v. Polis*,
No. 21-2108-cv, 2022 WL 893674 (2d. Cir. Mar. 28, 2022)....................................................6

Defendant Sotheby's[1] submits this reply in further support of its Motion to Dismiss and the McCoy Motion, and joins, adopts, and incorporates the reply by Defendant McCoy.

## PRELIMINARY STATEMENT

This case presents the precise slander of title/product disparagement case against which the First Amendment and the New York Constitution strongly guard. Plaintiff's Opposition ("Opp.") both distorts the factual allegations in the FAC and ignores controlling law. When the statements at issue are viewed in proper context, including by considering the materials Plaintiff itself submitted, and then juxtaposed against applicable legal guidance, the claims fail. The unjust enrichment and declaratory judgment claims likewise do not survive even the most liberal pleading standards, because Plaintiff did not plead any nexus with Sotheby's regarding the challenged conduct, nor any actual dispute between the parties. The FAC should be dismissed with prejudice.

### I. The First Amendment Counsels Careful Gatekeeping at the Pleadings Stage

Plaintiff's claims directly implicate Sotheby's free speech rights to participate in public debate. Because a lawsuit "may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *See, e.g.*, *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325-26 (S.D.N.Y. 2021), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) (citation omitted). These principles warrant gatekeeping for slander of title/product disparagement claims, which are held to an even higher degree of proof than traditional defamation claims and are routinely dismissed at the pleadings stage. *See, e.g.*, *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) (dismissing trade libel claim

---

[1] Defined terms used herein have the same meaning as those used in the Opening Brief ("Br.").

because statements were "non-actionable statements of opinion"); *Themed Restaurants, Inc. v. Zagat Surv., LLC*, 21 A.D.3d 826, 827 (1st Dep't 2005) (same); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) (same); *Soter Techs., LLC v. IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021) (dismissing product disparagement claim).[2]

## II. Plaintiff Admits that the Words at Issue in the Challenged Statements Are Ambiguous and Unsettled, and Misconstrues Black Letter Law on Opinion

Plaintiff does not offer any meaningful argument against Sotheby's showing that the Challenged Statements are protected opinion. Indeed, Plaintiff confirms several key components.

First, Plaintiff confirms that the Challenged Statements' references to "effectively burned," "removed" and "preserved" are not clearly defined[3]; i.e., that they are too loose, imprecise, and ambiguous in meaning to qualify as statements of fact. In opposing the McCoy Motion, Plaintiff admits that "this very issue—defining the legal import of control of digital assets on the Namecoin blockchain—**<u>is the subject of differing opinions</u>**," and even goes so far as to characterize the dispute before the Court as involving "**<u>emerging vocabulary</u>**." (ECF #66, at 1, 8.)

Plaintiff also cites and puts before the Court an article titled "Defining 'NFT' in Historical Context" (the "Defining NFT Article"), which eviscerates its own case. (ECF #66 at 8, n.5; ECF #66-1.) The central thesis of the Defining NFT Article is that NFT terminology is ambiguous:

> NFT is a weird three-letter acronym. Even the people who are involved in NFTs are not exactly sure how to define an NFT. No wonder the normie world is confused. Expanding the acronym just makes things worse: Non-Fungible Token is still ambiguous.

(ECF #66-1 at 11 (emphases added).) But the Defining NFT Article does not stop there. It further discusses exact terms that Plaintiff puts at issue—that is, "expire" and "burn"—in the specific

[2] Plaintiff urges the Court to apply the "no set of facts" standard to this Rule 12 motion, but this is the wrong standard. *See, e.g.*, *Bensch v. Est. of Umar*, 2 F.4th 70, 78-79 (2d Cir. 2021) (explaining that the Supreme Court in *Twombly* and *Iqbal* abrogated the "no set of facts" standard and replaced it with the "plausibility" standard).

[3] Plaintiff repeatedly claims that the Challenged Statements are false because they state that the Namecoin-*Quantum* does not "exist." (Opp. 5, 8-17.) None of the Challenged Statements make that claim, nor does the Auction Listing.

context of NFTs on the Namecoin blockchain. When answering the question, "*What happens to Namecoin domains when the domain name ownership* ***expires*** *and gets re-registered*," it states:

When a Namecoin domain expires, the colored coin becomes unspendable. In practice it can be called "burnt", because when the domain name is re-registered later, a new UTXO chain starts. This would mean that when a domain name expires, the chain of events where that domain was represented breaks. During the re-registration, the Namecoin protocol does not make a distinction between a never-used domain name and a previously expired domain name. This fact may support the argument that the expiration is philosophically burning the original token.

Ignoring blockchain technicals; if an artwork is created on Namecoin by a creator, then expires, and then gets re-registered by the same artist, philosophically speaking the provenance remains.

(*Id.* at 13-14 (same).) It further describes a debate over provenance of expired Namecoin assets:

This is fairly agreed on; but what if an artwork is created on Namecoin by a creator, then expires, and then gets re-registered by *someone else*? Here the camps are again split with different interpretations.

(*Id.* at 16 (same).) Thus, based on Plaintiff's own submissions,[4] it is clear that, in context, the terms "expire" and "burn" are ambiguous, with ill-defined and competing definitions, and the subject of ongoing "philosophical[]" debate and "emerging vocabulary."

Yet, Plaintiff inexplicably ignores its own authorities by pointing to "the words of the purchaser and contemporaneous media reports" which purportedly "demonstrate that these statements were broadly understood by the public as incorrect fact, not non-libelous opinion." (Opp. 5.) But it is *this Court* that decides the meaning of the Challenged Statements. *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (whether statement is "an opinion or an objective fact is a question of law"); *McKesson v. Pirro*, No. 160992/2017, 2019 WL 1330910, at *12 (Sup. Ct., N.Y. Cnty. Mar. 25, 2019) (statements are opinion as a matter of law; rejecting "argument that

[4] Plaintiff is wrong that publicly available materials that illustrate the context of the Challenged Statements cannot be considered. *See, e.g., Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 183-84 (S.D.N.Y. 2020).

numerous media articles 'understood [the] statements as defamatory'" as "unavailing"); *Jacobus v. Trump*, 55 Misc. 3d 470, 484 (Sup. Ct., N.Y. Cnty.) ("[T]hat others may infer a defamatory meaning from the statements does not render the inference reasonable under these circumstances."), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017).

In addressing the statements' immediate context, Plaintiff focuses on the Auction Listing having three subheadings, but this argument is misplaced. (Opp. 5-6.) The Challenged Statements come from all three sections of the Auction Listing. (*See* Br. 4 (First Challenged Statement in Condition Report; Second Challenged Statement in video posted in Catalogue Note; and Third Challenged Statement in Description).) Further, Plaintiff asks the Court to slice and dice the Auction Listing, but the cases make plain that the publication must be read in full. *E.g., Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991) (courts "begin[] by looking at the content of the whole communication, its tone and apparent purpose"). Plaintiff's attempt to dissect, for example, the Condition Report to read it in isolation from the other sections of the Auction Listing is contrary to the law. *Id.*; *James v. Gannett Co.*, 40 N.Y.2d 415, 419 (1976) ("[T]he court will not pick out and isolate particular phrases but will consider the publication as a whole.").

But Plaintiff engages in exactly this kind of selective reading. In addition to reading each subheading in a vacuum, Plaintiff points to individual statements about "storage security" and the like to argue that, because the Auction Listing contains other statements that are "factual in nature," the Challenged Statements also must be regarded as fact statements. (Opp. 7.) This approach is widely and expressly rejected. *E.g.*, *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) ("[R]ather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were

conveying facts…'"); *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 145 (1992); *Jacobus*, 55 Misc. 3d at 484 (dismissing where "a reasonable reader would recognize" statements "as opinion, even if some of the statements, viewed in isolation, could be found to convey facts").

Plaintiff also argues that the fact Sotheby's included content from "an NFT consultant and specialist" (in the Condition Report section of the Auction Listing) belies the law's strong protections for statements of opinion. Statements by experts are commonly regarded as opinion, particularly where (as here) the opinion is being offered by a party expressing a point of view in a debate. Both *Immuno* and *Brian*, for example, involved statements offered by experts who expressed protected opinions. *Immuno*, 77 N.Y.2d at 240 (statements by professor in a medical journal); *Brian*, 87 N.Y.2d at 53 (statements by attorney involved in case).

Plaintiff's citations to *Burton v. iYogi, Inc.*, No. 13-CV-6926 DAB, 2015 WL 4385665 (S.D.N.Y. Mar 16, 2015), and *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993), to avoid *Immuno* and *Brian* are unavailing. *iYogi* involved fraudulent inducement, which does not receive the same free speech protections. *See iYogi*, 2015 WL 4385665, at *8. Further, the plaintiff there alleged that the defendant's *statement that it offers "expert" advice* was false, because whether defendants "provides the services it claims … can be proven true or false." *Id.* But whether defendant's employees were accurately described as "tech experts" has no application here, where the *opinions* are alleged to be factual *because they are offered by an expert*. In *Gross*, the court found that a reader would not understand the statements as "rhetorical flourish" or part of a "debate," because the publication appeared to be the product of "thorough investigation" and did not appear in the "editorial" sections. *Gross*, 82 N.Y.2d at 155-56. The Challenged Statements here were published in an Auction Listing, which was legion with hyperbole and flourish[5] and had

[5] Indeed, Plaintiff admits that certain statements "lend a qualitative, *opinion-based* character to the Catalogue Note …" (*See, e.g.,* Opp. at 7-8 (emphasis added).)

an *express disclaimer* that the statements were "opinion." (Rothstein Decl., Ex. B, at 4.)

For this same reason, Plaintiff's further attempts to distinguish *Immuno* and *Brian* by arguing the Auction Listing is not a "letter to the editor" or an "Op Ed" article, are groundless – the Auction Listing's express disclaimer, particularly when combined with its overall context, tenor, and impression easily places it within the same ambit as similar editorial content. (Opp. 8.) Nor does Plaintiff offer any argument to rebut Sotheby's showing that the Challenged Statements were (as Plaintiff concedes) offered in the course of a public debate about the meaning of NFT terminology and expired Namecoin records, which further shows that the Challenged Statements are opinion. *See, e.g.*, *Valley Electronics AG v. Polis*, No. 21-2108-cv, 2022 WL 893674, *2 (2d. Cir. Mar. 28, 2022) (statements by expert understood as opinion, despite touting of "her scientific credentials," where offered as part of debate and readers are "put on alert that she is sharing her opinions by the statement at the top of the webpage").

Plaintiff also attempts to evade the doctrine of "pure opinion," by contending that Sotheby's disclosures that "the Quantum artwork originally had been minted on Namecoin" and the "data associated with that Namecoin entry had been 'preserved' and included in the Ethereum entry" are allegedly false. (Opp. 13.) Plaintiff argues that these statements are false because "the Namecoin-Quantum is extant on the Namecoin blockchain, and *requires no preservation*," claiming "[t]he process detailed by Defendant [Sotheby's] is *more properly characterized* as the creation of a reproduction of *Quantum* on the Ethereum blockchain, not the preservation of a now invalid or obsolete asset." (*Id.* (emphasis added.)) But the Namecoin data *was* included in the Ethereum entry; Plaintiff only quibbles with describing that fact as "preserv[ing]" that data. This wordsmithing merely reflects Plaintiff's differing view on the conclusion to be drawn – the hallmark of pure opinion.

Plaintiff also argues that Sotheby's did not "fully" disclose all relevant facts because it purportedly did not acknowledge "the present existence of the Namecoin-*Quantum* or Plaintiff's re-registration, possession, and control of the same." (*Id.* at 9.) To qualify as a pure opinion, however, the author need disclose only *the facts upon which its opinion is based* and not imply there are additional, defamatory facts that also support that opinion but which are not disclosed. *Gross*, 82 N.Y.2d at 153-54; *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (statement is nonactionable so long as there is "full disclosure *of the facts supporting [it]*." (emphasis added)). Plaintiff does not argue that the statements implied that there were additional, *undisclosed* facts that would support its opinion. And there is no requirement that the speaker disclose all facts that Plaintiff deems relevant to Sotheby's opinion.[6]

If Plaintiff feels that additional facts would refute Sotheby's conclusion, its solution is to take part in the debate – not to try to silence Sotheby's with a lawsuit. *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1984) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas"); *Immuno*, 77 N.Y.2d at 255 (allowing "some latitude" to express opinions "free of defamation litigation" serves the "oversight and informational values" served by protecting the "marketplace of ideas").

## III. Plaintiff Argues the Wrong Standard for Falsity, and Admits Factual Predicates

Plaintiff's assertion that the Challenged Statements are actionable because they are "literally untrue" applies the wrong standard. Plaintiff's reliance on *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) is, accordingly, inapposite.

---

[6] Sotheby's did disclose the existence of the Namecoin-*Quantum* by providing the address to the Namecoin listing. (Rothstein Decl., Ex. B ("Minted on 2nd May 2014 21:27:34, or more precisely **Namecoin Block 174923**, the NFT era quietly dawned.") (emphasis added); Opp. at 7 (screenshot with same).) Citations to source materials by references the materials or web addresses are a recitation of supporting facts. *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dep't 2011); *Rakofsky v. Washington Post*, 39 Misc. 3d 1226(A) at *12 (Sup. Ct., N.Y. Cnty. 2013).

The false advertising claim at issue in *Ackerman* concerned whether an actor made a "misleading" statement. *Id.* That is distinct from the First Amendment-mandated standard here, requiring Plaintiff to show that the Challenged Statements were not "substantially true." (Br. at 17-18.)

The Challenged Statements *are* substantially true, and Plaintiff's efforts to argue otherwise contradict its own briefing and FAC. Plaintiff asserts that "[Sotheby]'s claim that Plaintiff admits that the Namecoin-Quantum 'expired' is … incorrect," contending that Plaintiff alleged only that "*McCoy's ownership* of the Namecoin-*Quantum* blockchain record expired" and not the blockchain record itself. (Opp. 12.) Yet Plaintiff earlier states: "After creating Quantum, McCoy subsequently let **the Namecoin blockchain record** that housed Quantum **expire** … ." (*Id.* at 2 (emphasis added) (citing FAC ¶¶ 39-41); *see also* ECF # 66, at 3-4.) The FAC alleges that McCoy "let **the record for the Namecoin-*Quantum* expire** …." (FAC ¶ 3 (emphasis added).)

Because Plaintiff's preferred wording of "expire" would have no different effect on the mind of the reader than the text of the First Challenged Statement – "[The Namecoin-Quantum entry] was removed from the system after not being renewed, and was effectively burned from the chain" – the statement is substantially true and cannot support Plaintiff's claims. And because Plaintiff does not and cannot contest that data from the Namecoin entry was in fact copied into the Ethereum listing, it offers no serious argument that Sotheby's Second and Third Challenged Statements that data from the Namecoin entry was "preserv[ed]" are not substantially true.

## IV. Plaintiff's Actual Malice Allegations Do Not Survive Plausibility Scrutiny

Plaintiff alleges that it presented Sotheby's with supposedly contradictory evidence and that Sotheby's "continued" to rely on the nameless report, but only *after* the Auction Listing was published. (*See* FAC ¶¶ 76-82; Opp. 13.) Actual malice "focus[es] upon the state of mind of the publisher of the allegedly libelous statements at the time of publication," not afterwards. *Kipper*

*v. NYP Holdings Co.*, 12 N.Y.3d 348, 354-55 (2009).[7] Plaintiff also claims that Sotheby's ignored the Namecoin-*Quantum* blockchain entry, but as discussed in the McCoy Motion, a legal disagreement does not show actual malice either. (ECF #60 at 17.)

Plaintiff argues that "actual malice" can be shown where a libel defendant published "a litany of outrageous claims … so inherently improbable that it evinced a reckless disregard for the truth," citing *Smartmatic USA Corp. v. Fox Corp.*, No. 151136/2021, 2022 WL 685407 (Sup. Ct., N.Y. Cnty. Mar. 8, 2022). There is no indication, however, that nameless's report contained any claims that appeared "inherently improbable." In fact, Plaintiff's allegations that Sotheby's relied on nameless's research *negates* actual malice. *See, e.g., Suozzi v. Parente*, 202 A.D.2d 94, 102 (1st Dep't 1994) ("[I]n the absence of substantial reasons to question the accuracy of their work, a good faith reliance on the activities of others cannot give rise to a finding of actual malice.").[8]

## V. Plaintiff Cannot Maintain its Unjust Enrichment Claim

The alleged benefit to Sotheby's by "claim[ing] the identity, titles, and prestige associated with the Namecoin-*Quantum*," (Opp. 14), is too "indirect" and "hypothetical." *See Bilinski*, 96 F. Supp. 3d at 52. Plaintiff insists that "the question at issue [here] is not merely one of authenticity, as in *Bilinski*, but also of identity," (Opp. 15), but that makes no difference. The *Bilinski* court found that "the alleged increase in value of [defendants'] works … is not a benefit flowing directly to the defendants at plaintiffs' expense." 96 F. Supp. 3d at 52. The "indirect and hypothetical" nature of that benefit had nothing to do with whether the defendants challenged the authenticity or the identity of the works (if there is such a difference). *See id.* Plaintiff and Sotheby's "had no [alleged] dealings with each other," and the parties' alleged "relationship" is simply "too attenuated." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517-18 (2012).

---

[7] Even if Plaintiff had reached out before publication, mere denials are not enough to show actual malice. (Br. 19.)
[8] Plaintiff offers no rebuttal to Sotheby's showing that it was motivated by "perceived economic interests." (Br. 19.)

Plaintiff's unjust enrichment claim also should be dismissed as duplicative of its injurious falsehood claims. *See Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012). Nor can Plaintiff "plead" a duplicative unjust enrichment claim as an "alternative theor[y] of recovery." (Opp. 16.) *See In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012).

## VI. Plaintiff Fails to Allege a "Concrete and Substantial" Controversy, as Required

Plaintiff argues, citing no case law, that a substantial controversy exists because of alleged disputes regarding its ownership of the Namecoin-*Quantum* and the truth of Sotheby's statements. But "[t]he mere fact that there is a dispute over some question … is not dispositive"; "if it were, the Declaratory Judgment Act could be invoked to answer any and every hypothetical question." *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 359 (S.D.N.Y. 2012). Sotheby's is not adverse to Plaintiff's claim to own Namecoin-*Quantum*, and any determination of the alleged "falsity" of the Ethereum-*Quantum* would not result in relief for Plaintiff against Sotheby's. Plaintiff therefore poses "abstract, hypothetical or academic question[s]" that cannot support declaratory judgment. (*See* Br. at 21-22.)

## CONCLUSION

For these reasons and those in the McCoy Reply, Sotheby's Motion should be granted.

Dated: New York, New York
September 1, 2022

Respectfully submitted,
**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/ Evan Rothstein

Evan M. Rothstein (*pro hac vice*)
1144 Fifteenth Street | Suite 3100
Denver, CO 80202-2569
T: +1 303.863.2308
F: +1 303.863.1000
Evan.Rothstein@arnoldporter.com

Theresa M. House
Marcus A. Asner
250 West 55th Street
New York, NY 10019-9710
T: +1 212.836.8000
F: +1 212.836.8689
Theresa.House@arnoldporter.com
Marcus.Asner@arnoldporter.com

*Attorneys for Defendant Sotheby's Inc.*