UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREE HOLDINGS INC.,<br><br>           Plaintiff,<br><br>-against-<br><br>KEVIN McCOY and SOTHEBY'S INC.,<br><br>           Defendants. | ECF CASE<br><br>Case No.: 1:22-cv-00881 (LGS) (JLC) |

**DEFENDANT KEVIN McCOY'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF HIS MOTION TO DISMISS**

William L. Charron
Robert J. deBrauwere
Nicholas Saady
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel.: (212) 421-4100
Fax: (212) 798-6307

*Attorneys for Defendant Kevin McCoy*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .............................................................................................................................1

    I.      PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE .........................................1

          A.    Plaintiff Lacks Standing...........................................................................1

          B.    Plaintiff's Claims Are Not Ripe................................................................4

    II.     PLAINTIFF'S CLAIMS ARE NOT VALIDLY STATED ..............................5

          A.    Plaintiff Fails To State An Unjust Enrichment Claim ..............................5

               1.   Plaintiff Does Not Allege Enrichment
                   At Its "Expense" ...........................................................................5

               2.   Plaintiff Does Not Allege A "Sufficiently Close"
                   Relationship .................................................................................5

          B.    Plaintiff Fails To State A Slander Of Title Claim....................................6

               1.   Plaintiff Does Not Allege Malice .........................................................6

               2.   Plaintiff Does Not Allege Special Damages ......................................7

          C.    Plaintiff Fails To State A Claim Under NY GBL § 349...........................7

          D.    Plaintiff Fails To State A Commercial Disparagement Claim..................9

          E.    Plaintiff Fails To State A False Advertising Claim .................................9

               1.   Plaintiff Does Not Plausibly Allege Literal Falsity ............................9

               2.   Plaintiff Does Not Plausibly Allege Implied Falsity ..........................9

          F.    Plaintiff Fails To State A Declaratory Judgment Claim ..........................10

CONCLUSION.........................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                         **Page(s)**

*Engel v. CBS, Inc.*,
 93 N.Y.2d 195 (1999) ................................................................................................7

*Genesco Ent., Div. of Lymutt Indus., Inc. v. Koch*,
 593 F. Supp. 743 (S.D.N.Y. 1984) ............................................................................7

*Karlin v. IVF Am., Inc.*,
 93 N.Y.2d 282 (1999) ............................................................................................7, 8

*Lokai Holdings, LLC v. Twin Tiger USA LLC*,
 306 F. Supp. 3d 629 (S.D.N.Y. 2018) ...................................................................9, 10

*Mandarin Trading Ltd. v. Wildenstein*,
 16 N.Y.3d 173 (2011) ................................................................................................6

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
 880 F. Supp. 1005 (S.D.N.Y. 1994) ........................................................................10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
 85 N.Y.2d 20 (1995) ..................................................................................................8

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
 No. 14CV6294-LTS-HBP, 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015) ...............8

*Teller v. Bill Hayes, Ltd.*,
 213 A.D.2d 141 (2d Dep't 1995) ..............................................................................8

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
 857 F.2d 55 (2d Cir. 1988) .........................................................................................4

*Vossbrinck v. Eckert Seamans Cherin, and Mellott, LLC*,
 301 F. Supp. 3d 381 (D. Conn. 2018) ....................................................................3, 4

**STATUTES AND RULES**

Fed. R. Civ. P. 11(b)(3) ....................................................................................................4

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ...............................................................................1

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014) ..........................................................................3

Rhea Myers, "Regarding Quantum," *rhea art: Essays*
 (https://rhea.art/regarding-quantum) (last accessed on September 1, 2022) ..............4

Defendant Kevin McCoy ("McCoy") respectfully submits this reply memorandum of law in further support of his motion to dismiss the Amended Complaint (ECF No. 47) of plaintiff Free Holdings Inc. ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff's opposition to McCoy's motion to dismiss is deliberately obtuse and misleading. The opposition is primarily designed to obscure both Plaintiff's lack of standing as well as the fact that there is nothing more at hand here than blatant attempted piracy or forgery.

Namecoin's rules of operation form the foundation of Plaintiff's claims. But Plaintiff now argues that Namecoin's rules should be only selectively followed. In so doing, Plaintiff effectively acknowledges that its claims against McCoy are invalid because Namecoin's rules unambiguously state that use of a name does not grant ownership of the associated NFTs. Plaintiff's response that a Namecoin name "is" the NFT is also flatly refuted by Namecoin's rules.

Plaintiff has not plausibly stated that it holds title to McCoy's 2014 NFT. Nor has Plaintiff stated ripe claims. Plaintiff also fails to plead necessary claim elements. Dismissal is warranted.

## ARGUMENT

**I.  PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE**

**A.  Plaintiff Lacks Standing**

Plaintiff's ownership theory is wholly based upon the FAQ's rules requiring a Namecoin user "to periodically update the [namespace] record every 35,999 blocks" or "approximately 200-250 days." (ECF No. 47 ¶ 39.) Plaintiff did not invent that requirement – it comes directly from the Namecoin FAQ. (ECF No. 61 Ex. A at p.3/35.) Plaintiff points to *no* other source. Plaintiff alleges that it "claimed" McCoy's 2014 NFT because McCoy did not update his namespace record

---

[1] Defined terms have the same meanings ascribed in McCoy's June 30, 2022 brief (ECF No. 60).

1

within the time prescribed by Namecoin. (ECF No. 47 ¶¶ 41-42.)

Plaintiff's theory fails because it conveniently ignores other elements of Namecoin's rules. In particular, the FAQ also establishes that only "registered names" and "namespaces" (*i.e.*, the "arbitrary binary blobs"), not the NFTs associated with those names and namespaces, are what can expire and be claimed by others if not periodically updated. (ECF No. 61 Ex. A at pp.3/35, 6/35.)

Plaintiff does not deny this, but it now asserts that a Namecoin name "*is* the 'non-fungible token' at issue." (ECF No. 66 at 5 (emphasis supplied).) Namecoin's FAQ, in plain English, debunks this position as well. The Namecoin FAQ distinguishes between "names" and the tokens that control them (referred to as "special coins" measured in Namecoin values of "NMC"):

> *Names* and values are *attached to special coins* with a value of 0.01 NMC.  Updates are performed by creating a transaction with the *name's* previous *coin* as input.

(ECF No. 61 Ex. A at p.6/35 (emphases supplied).)

"Names" are not "coins." Names are "*attached to*" coins (tokens). Plaintiff's assertion that its right to a Namecoin "name" gives it title to and control over all of the coins/non-fungible tokens that were ever associated with that name or namespace is implausible. If Plaintiff were correct, then McCoy's creation of a Namecoin name in 2014 could not have been the "first NFT ever created," as Plaintiff alleges; *the first Namecoin user would have created the first ever NFT under Plaintiff's theory*, and Plaintiff does not allege that McCoy was Namecoin's first user (Namecoin was introduced in 2011). (ECF No. 47 ¶ 37; https://en.bitcoinwiki.org/wiki/Namecoin.)

Plaintiff relies on McCoy's language that the 2014 NFT's "[t]itle transfers to whoever controls this blockchain entry." (ECF No. 47 ¶ 38.) McCoy did *not* state that title transfers to whoever controls this "name" or "namespace." As McCoy previously explained, Namecoin is a digital public ledger that records unique and sequentially distinct transactions, with each NFT including a unique transaction identification number and unique date and time stamp. (ECF No.

2

60 at 3-4.) Plaintiff conveniently skips over the fact that the NFT it allegedly created, the 2021 NFT, includes an identification number and date and time stamp that are *distinct* from those of McCoy's 2014 NFT. (ECF No. 61 Ex. B.) Plaintiff merely claimed and copied the same "name" that McCoy had attached to his 2014 NFT. The name, however, is *not* the NFT/special coin.

Plaintiff's attempt to distance itself from the Namespace Report, upon which Plaintiff's pleading specifically relies, is also disingenuous. (ECF No. 47 ¶ 38 n.3; ECF No. 66 at 7.) That report confirms that Plaintiff created its own, "NEW" special coin (the 2021 NFT), distinct from the special coin that McCoy had created, with unique data but copying, verbatim, the same metadata that McCoy had used seven years earlier. (ECF No. 61 Ex. B.)

The Namespace Report also identifies *two* "FIRSTUPDATE" operations – one in connection with McCoy's 2014 NFT, and another seven years later in connection with Plaintiff's 2021 NFT. (*Id.*) As previously explained, there could not have been two "FIRST" updates to the same NFT. (ECF No. 60 at 6-7.) And as Plaintiff admits, "no two NFTs are the same." (ECF No. 47 at ¶ 30.) Plaintiff is conspicuously silent on this salient point.

Plaintiff is similarly silent in response to McCoy's previous point that Plaintiff fails to allege that it *ever* had – let alone has today – the ability to control McCoy's 2014 NFT as its purported titleholder. (ECF No. 60 at 5.) Plaintiff relies on McCoy's language that the 2014 NFT's "[t]itle transfers to whoever controls this blockchain entry." (ECF No. 47 ¶ 38.) Plaintiff must plausibly allege that it "controls" the *blockchain entry* constituting the 2014 NFT, not merely the associated name. The absence of the basic and essential allegation that Plaintiff has the ability to control *the data constituting the 2014 NFT itself* renders Plaintiff's title claim to the 2014 NFT implausible. *See* Ownership, *Black's Law Dictionary* (10th ed. 2014) (defining "ownership" as "[t]he bundle of rights allowing one to use, manage, and enjoy property"); *cf. Vossbrinck v. Eckert*

3

*Seamans Cherin, and Mellott, LLC*, 301 F. Supp. 3d 381, 390-91 (D. Conn. 2018) (dismissing conversion claim because "[t]he Complaint does not provide a plausible basis to conclude [the defendant] ever had control or exercised *its* right of ownership over [the plaintiff's property]. For example, there is no indication [the defendant] … controlled the [property].").[2]

Plaintiff's claims should accordingly be dismissed for lack of standing.

### B. Plaintiff's Claims Are Not Ripe

Plaintiff correctly states that, "[i]f the injury is certainly impending, that is enough" to establish ripeness. (ECF No. 66 at 11 (citations omitted).) But Plaintiff has not pleaded facts to show that any injury upon it is "certainly impending."

In *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 63-64 (2d Cir. 1988), upon which Plaintiff relies, the court found an antitrust claim concerning a proposed but unadopted rule to be ripe because the plaintiff had alleged the proposed rule was already "having a present anti-competitive effect." Plaintiff alleges no such injury. As previously submitted, Plaintiff does not allege even an attempted sale of its NFT, let alone allege that it would "certainly" be unable to successfully market and sell its NFT due to McCoy's sale of his *Quantum* NFT.

Instead of addressing that point, Plaintiff tries to paint its claim as ripe because it had, through "a Tweet," unsuccessfully "invited McCoy" to co-sell his *Quantum* NFT with Plaintiff. (ECF No. 66 at 11.) That is a *non sequitur*. McCoy's decision not to respond to Plaintiff's "Tweet" does not validate a claim of "certainly impending" market-based injury. Plaintiff has not alleged

---

[2] Plaintiff fails to allege that it can control the 2014 NFT because Plaintiff knows it does not possess the cryptographic "private key" needed to control the NFT (*McCoy* possesses it). *See* Rhea Myers, https://rhea.art/regarding-quantum (discussing creation of McCoy's 2014 NFT and explaining that, "[i]n order to successfully create such a transaction, *you must be able to sign it with the private cryptographic key for the nameCoin address* …. Any recreation of the same name and metadata key/value pair on NameCoin will *not* be the same special coin …. It will therefore not be the same blockchain entry referred to by the text of Quantum."). *See also* Fed. R. Civ. P. 11(b)(3).

anything beyond conclusory speculation that it will be unable to market and sell its 2021 NFT.[3]

## II. PLAINTIFF'S CLAIMS ARE NOT VALIDLY STATED

### A. Plaintiff Fails To State An Unjust Enrichment Claim

#### 1. Plaintiff Does Not Allege Enrichment At Its "Expense"

As McCoy previously explained, Plaintiff alleges no facts to show that McCoy was enriched by the sale of the *Quantum* NFT at Plaintiff's "expense." Plaintiff alleges no involvement in McCoy's creation and sale of the *Quantum* NFT; on the contrary, Plaintiff alleges that its "Tweeted" request to McCoy to participate in that sale was not answered. (ECF No. 47 ¶¶ 48, 51.) Nor does Plaintiff allege that it was involved in McCoy's creation of the 2014 NFT.

Plaintiff also fails to allege why the value of its 2021 NFT – which does no more than forge metadata from McCoy's 2014 NFT – should be deemed of equal value to the *Quantum* NFT, which, unlike Plaintiff's NFT, is authentically by McCoy and authentically ties to McCoy's *Quantum* artwork. Plaintiff's conclusory and speculative response that its NFT *passively* suffered a "diminution in value" because of the sale of the *Quantum* NFT does not establish that the *Quantum* NFT was sold at Plaintiff's "expense." (ECF No. 66 at 14.) On the contrary, Plaintiff's theory is that McCoy "enriched himself by appropriating the renown, prestige and pedigree" of *McCoy's own prior work* that *he* expended to create the 2014 NFT. (*Id.*)

#### 2. Plaintiff Does Not Allege A "Sufficiently Close" Relationship

As also previously shown, Plaintiff must allege a non-attenuated connection between itself and McCoy sufficient to have caused Plaintiff's detrimental reliance. (ECF No. 60 at 15 (citations

---

[3] As previously explained, Plaintiff used its time between its two pleadings to engineer Nameless's publicized retraction of its condition report concerning McCoy's *Quantum* NFT. (ECF No. 60 at 8 & n.6.) Yet, despite including allegations about Nameless's retraction, (ECF No. 47 ¶ 88), Plaintiff fails to allege why it has suffered a concrete injury *despite* that retraction. Plaintiff is notably silent on this point now as well.

omitted)).  Plaintiff does not deny that it is a stranger to McCoy, whose only connection has been to troll McCoy through "Tweets," from an anonymous account, which McCoy "never" answered. (ECF No. 47 ¶¶ 44-51.)  There is *no* connection between Plaintiff and McCoy.

Plaintiff's assertion that it has the requisite "sufficiently close" connection to McCoy because it alleges that McCoy "issued statements" over a public platform (Namecoin) when McCoy created the 2014 NFT is baseless.  (ECF No. 66 at 14-15.)  Plaintiff does not allege that any statement by McCoy was directed *at Plaintiff* (who was a stranger to McCoy).  Plaintiff would have this Court announce new and disturbing law that anytime a defendant makes a public statement, and a stranger to the defendant purports to rely on that statement, then the defendant may be liable to that stranger for unjust enrichment.  That is not, and should not be, the law.  *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182-83 (2011) ("[U]nder the facts alleged, there are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement…. [T]he mere existence of a letter that happens to find a path to a prospective purchaser does not render this transaction one of equitable injustice requiring a remedy to balance a wrong.").[4]

### B.     Plaintiff Fails To State A Slander Of Title Claim

#### 1.     Plaintiff Does Not Allege Malice

Having failed to actually allege "malice" by McCoy, Plaintiff now contends that it pleaded sufficient facts to support a plausible inference of malice because it alleges that McCoy was aware of Plaintiff's (spurious) claim to own the 2014 NFT.  (ECF No. 66 at 15-16.)  This argument

---

[4] Plaintiff's cited authorities are inapposite and concern manufacturers who are unjustly enriched by false descriptions of their products that induce ultimate, indirect purchasers to buy those products, thereby resulting in profits to the manufacturers.  (ECF No. 66 at 14 (citations omitted).) Plaintiff does not allege that it paid McCoy anything, either directly or indirectly.

6

merely alleges a legal disagreement between McCoy and Plaintiff.  Plaintiff fails to address, let alone rebut, the law previously cited by McCoy that a legal dispute between parties does not establish "malice" or "reckless disregard for the truth."  (ECF No. 60 at 17 (citations omitted).)

Plaintiff likewise fails to address the point that McCoy's use of the same word, "burned," that Nameless had used in its *independent* condition report, does not establish a plausible basis to infer malice or reckless disregard for the truth.  (*Id.*)

### 2.    Plaintiff Does Not Allege Special Damages

Plaintiff completely misapprehends the meaning of "special damages."  Plaintiff inaptly relies on cases concerning the "special injury" pleading requirement in malicious prosecution cases.  (ECF No. 66 at 17 (citation omitted).)  A malicious prosecution plaintiff who successfully defeated an earlier lawsuit as a defendant must, to state a viable malicious prosecution claim under New York law, allege a "special injury" beyond the financial, physical and psychological costs of its prior successful defense.  *E.g.*, *Engel v. CBS, Inc.*, 93 N.Y.2d 195, 205 (1999).  That doctrine has nothing to do with the "special damages" pleading requirement for a slander of title claim (or for a commercial disparagement claim, as Plaintiff also invalidly asserts).  Plaintiff fails to address any of McCoy's previously cited authorities concerning the meaning of "special damages."

### C.    Plaintiff Fails To State A Claim Under NY GBL § 349

Plaintiff's GBL § 349 claim is invalid because Plaintiff has pleaded only a one-off dispute concerning a one-time sale of a single item, which was conducted between sophisticated parties through a complex arrangement involving an outside consultant's condition report and opinion.  All of the authorities cited by both sides hold that "single-shot transactions" that are complex and sophisticated are not the stuff of GBL § 349.  *Genesco Ent., Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984); *accord Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 294 (1999)

("[V]ictims of deception in a single transaction in which the only parties truly affected by the alleged misrepresentations were plaintiffs and defendants" do not implicate § 349); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (same); *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 147 (2d Dep't 1995) ("[C]learly not cognizable under the statute, are large, private, single-shot contractual transactions.").

Plaintiff's assertion that it has not alleged such a localized dispute, and that it has alleged generalized consumer misconduct, is meritless. (ECF No. 66 at 18.) Plaintiff's claim is that McCoy's and Sotheby's sale of the *Quantum* NFT, aided by Nameless's independent condition report, supposedly fooled one particular buyer, "Sillytuna," into thinking that the *Quantum* NFT was the same as McCoy's 2014 NFT. Even assuming Plaintiff's speculation about what Sillytuna believed were correct, that sale is consummated (and Sillytuna has not complained). This case is thus unlike the situations in *Karlin* and *Oswego*, relied upon by Plaintiff, where defendants offered their services (for *in vitro* fertilization and banking, respectively) to numerous and broad ranges of customers for continuing periods, including well after the specific transactions at issue in those cases. *Karlin*, 93 N.Y.2d at 294; *Oswego*, 85 N.Y.2d at 25; *accord RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294-LTS-HBP, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (§ 349 conduct "has 'significant ramifications for the public at large'").

Plaintiff's contention that the sale of the *Quantum* NFT "help[ed] establish and polish Defendant's 'brand' within the emerging NFT marketplace" is misguided. (ECF No. 66 at 20.) Again, regardless of whether or not that vague and speculative characterization is true, Plaintiff does not allege that McCoy and/or Sotheby's are trying to re-sell the *Quantum* NFT. Plaintiff cites no law that it may bootstrap its § 349 claim in this case, concerning the sale of the *Quantum* NFT, on alleged possible, and *different*, NFT activities by McCoy and/or Sotheby's in the future.

### D.    Plaintiff Fails To State A Commercial Disparagement Claim

Plaintiff's commercial disparagement claim should be dismissed for the same reasons that Plaintiff's slander of title claim should be dismissed:  Plaintiff fails to allege malice or special damages.  This claim should also be dismissed because Plaintiff does not allege any statements directed "at" Plaintiff or its 2021 NFT.  (ECF No. 60 at 22.)  McCoy's statement about *the 2014 NFT* being "burned" is unrelated to Plaintiff's *2021 NFT*, which, once more, is a sequentially distinct NFT with unique data.  (*Supra* pp.2-3.)  Plaintiff cannot deny that fact in good faith.

### E.    Plaintiff Fails To State A False Advertising Claim

#### 1.    Plaintiff Does Not Plausibly Allege Literal Falsity

McCoy previously demonstrated that his use of the term, "burned," was not literally false.  (ECF No. 60 at 24-25.)  Plaintiff does not contest this point.  (*See* ECF No. 66 at 22.)

McCoy never referred to the 2014 NFT as having been "removed" from the Namecoin blockchain, either.  (ECF No. 60 at 24.)  That statement was made by Nameless, whom Plaintiff voluntarily dismissed from the case.  (ECF No. 47 ¶¶ 65-66.)  Plaintiff tries to 'massage' this point by now contending that McCoy's use of the term "moved" was literally false.  (ECF No. 66 at 22.)  Nevertheless, as alleged in the Amended Complaint, McCoy did not say that the 2014 NFT was "moved" from Namecoin to Ethereum; he stated that he "moved the original *on chain data* from the burned Namecoin token" to the *Quantum* NFT.  (ECF No. 47 ¶ 66 (emphasis supplied).)  Because McCoy's use of the term, "burned," was not literally false, his corollary description of *data* being "moved" from his burned Namecoin token to his Ethereum token is not literally false.

#### 2.    Plaintiff Does Not Plausibly Allege Implied Falsity

"At the pleading stage," to actionably demonstrate implied falsity, "the plaintiff must allege that consumers or retailers were misled or confused by the challenged advertisement and offer

facts to support that claim." *Lokai Holdings, LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018). Plaintiff's response that "falsity of advertising is a question of fact" is another *non sequitur*: Plaintiff must still *allege sufficient facts* in the first place to support a plausible inference of implied falsity. (ECF No. 66 at 22-23.)

Plaintiff alleges *no* facts to support its conclusory and speculative allegation that McCoy and Sotheby's made impliedly false statements that confused consumers. Plaintiff's assertion that it alleges confusion by Sillytuna, the single buyer of the *Quantum* NFT, is immaterial because, contrary to Plaintiff's suggestion, no law holds that implied falsity may be inferred because of the alleged confusion of a single customer. Plaintiff's reliance solely on *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1021-22 (S.D.N.Y. 1994), is misplaced, as that case concerned a claim of *literal falsity*, not implied falsity. The court in *Mobius* made clear that, when implied falsity is at issue, "deception is usually shown with consumer surveys and other such evidence," but "when the misrepresentation is 'literally or explicitly false,' as in this case, 'the court may grant relief without reference to the advertisement's impact on the buying public.'"

### F. Plaintiff Fails To State A Declaratory Judgment Claim

As previously explained, there is no actual controversy here. Plaintiff's 2021 NFT is not the same as the 2014 NFT. Plaintiff's request to have this Court "declare" *Namecoin's* rules in a way that would transmogrify Plaintiff's 2021 NFT into the 2014 NFT is wholly inappropriate.

## CONCLUSION

After two, lengthy attempts by Plaintiff to contrive claims, this case should be dismissed. For the foregoing reasons, and all the reasons previously submitted, and all of the reasons further submitted by Sotheby's in support of its motion to dismiss (fully incorporated herein), McCoy

respectfully requests that all of Plaintiff's claims be dismissed with prejudice, and that McCoy be awarded such other and further relief as deemed just and proper.

Dated: New York, New York
September 1, 2022

PRYOR CASHMAN LLP

By: _____
William L. Charron
wcharron@pryorcashman.com
Robert J. deBrauwere
rdebrauwere@pryorcashman.com
Nicholas Saady
nsaady@pryorcashman.com
7 Times Square
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant Kevin McCoy*

11